Karl Barth
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
karlb@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*Dr. Charles Huang*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| ANGELA LEWIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>Defendants. | No. 3:21-cv-05190-BHS<br><br><u>CLASS ACTION</u><br><br>**DR. CHARLES HUANG'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL**<br><br>NOTE ON MOTION CALENDAR: Friday, June 4, 2021<br><br>ORAL ARGUMENT REQUESTED |
| JAMEY CHRIS GOODWIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>Defendants. | No. 3:21-cv-05260-MLP<br><br><u>CLASS ACTION</u> |

MOT. FOR CONSOL. & APPOINTMENT
Nos. 3:21-cv-05190-BHS; 3:21-cv-05260-MLP - 1

Dr. Charles Huang ("Movant") hereby moves this Court for an Order: (a) consolidating the Actions; (b) appointing him as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (c) approving his selection of Levi & Korsinsky LLP ("Levi & Korsinsky") as Lead Counsel and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Liaison Counsel; and (d) granting such other and further relief as the Court may deem just and proper. In support of this Motion, Movant submits herewith the Declaration of Karl Barth, dated May 17, 2021.

## PRELIMINARY STATEMENT

Presently pending before the Court are two securities class action lawsuits (the "Actions") brought on behalf of all persons who purchased or otherwise acquired CytoDyn, Inc. ("CytoDyn" or the "Company") common stock between March 27, 2020, and March 9, 2021, inclusive (the "Class Period").[1] Plaintiffs in the Actions allege violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Chief Executive Officer Nader Z. Pourhassan ("Pourhassan"), and Chief Financial Officer Michael Mulholland ("Mulholland").[2] As a result of the alleged fraud during the Class Period, Movant lost approximately $192,606.18.

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Movant satisfies both requirements.

---

[1] The Actions are entitled *Lewis v. CytoDyn, Inc., et al.,* No. 3:21-cv-05190-BHS (the "*Lewis* Action") and, *Goodwin v. CytoDyn, Inc., et al.,* No. 3:21-cv-05260-MLP (the "*Goodwin* Action").

[2] Specifically, plaintiffs in the Actions allege that defendants violated Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

MOT. FOR CONSOL. & APPOINTMENT
Nos. 3:21-cv-05190-BHS; 3:21-cv-05260-MLP - 1

Movant believes that he has the largest financial interest in the outcome of the case.[3]  As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff.  Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[4]

Accordingly, Movant respectfully submits that he should be appointed lead plaintiff.  Additionally, Movant's selection of Levi & Korsinsky as Lead Counsel and Hagens Berman as Liaison Counsel for plaintiff and the proposed class should be approved by this Court.

## STATEMENT OF FACTS

CytoDyn is a publicly-traded biotechnology company that is headquartered in Vancouver, Washington, and incorporated in Delaware.  ¶ 2.[5]  The Company is focused on the development and commercialization of a drug named "Leronlimab" which has long been promoted as a potential therapy for HIV patients.  *Id.*  However, CytoDyn has made an about-face and has begun to aggressively tout Leronlimab as a treatment for COVID-19 since the beginning of the global COVID-19 pandemic.  ¶ 3.

As a result, CytoDyn's stock price rose exponentially after their pivot to hyping Leronlimab as a treatment for COVID-19.  ¶ 4.  CytoDyn's stock traded for less than $1.00 per share throughout 2019.  *Id.*  Upon the pivot to hyping Leronlimab as a COVID-19 treatment,

---

[3] Movant's chart detailing his losses is attached to the Declaration of Karl Barth ("Barth Decl.") dated May 17, 2021, as Exhibit ("Ex.") B.

[4] The "Class" is comprised of all persons who purchased or otherwise acquired CytoDyn common stock during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

[5] Citations to "¶_" are to paragraphs of the Class Action Complaint for Violations of the Federal Securities Laws (the "*Lewis* Complaint") filed in the *Lewis* Action.  The facts set forth in the *Lewis* Complaint are incorporated herein by reference.

MOT. FOR CONSOL. & APPOINTMENT
Nos. 3:21-cv-05190-BHS; 3:21-cv-05260-MLP - 2

however, CytoDyn's stock price skyrocketed. *Id.* The hype hit its peak on June 30, 2020 when CytoDyn shares reached over $10 per share. *Id.*

Indeed, while CytoDyn's stock price was sufficiently pumped with the COVID-19 cure hype, long-term shareholders, including Defendants Pourhassan and Mulholland, dumped millions of shares. ¶ 6. For example, on April 30, 2020, after exercising options to purchase millions of CytoDyn shares at prices less than $1.00 per share, Defendant Pourhassan sold over 4.8 million shares of CytoDyn stock, for over $15.7 million in total proceeds. *Id.* Defendant Pourhassan's sale was approximately 85% of his total holdings of CytoDyn stock. *Id.* Furthermore, Defendant Mullholland sold over 1.1 million shares on December 21, 2020 for over $5.8 million in total proceeds. *Id.* Thereafter, Defendant Mullholland sold over 711,000 shares on December 28, 2020 for over $4.4 million in total proceeds. *Id.*

In addition to overstating the viability of Leronlimab as a COVID-19 treatment, CytoDyn also engaged in a wrongful scheme with its lender, Iliad Research and Trading L.P. ("Iliad"), and its principal John Fife ("Fife"), whereby Iliad and other Fife entities operated as an unregistered securities dealer for CytoDyn. ¶ 7. In connection with Iliad lending funds to CytoDyn, Iliad obtained a convertible promissory note from CytoDyn and converted the note into newly issued shares of CytoDyn and sold those shares into the public market at a profit, in violation of the dealer registration requirements of the federal securities laws. *Id.*

On August 26, 2020 the truth began to emerge regarding Defendants' scheme when *The Wall Street Journal* reported that CytoDyn was not being considered for Operation Warp Speed. ¶ 39. According to a senior administration official interviewed by *The Wall Street Journal*, "CytoDyn had only completed a preliminary qualification for being included in the initiative." *Id.* The official said that CytoDyn had submitted information through a so-called CoronaWatch, a program run by the Biomedical Advanced Research and Development Authority, or BARDA, to assess the viability of drugs and therapeutics that might be effective against COVID-19. *Id.* Technical experts reviewed the submission and opted not to proceed further at this time, the official confirmed. *Id.*

Following the publication of this article, CytoDyn shares dropped over 17% to $3.15 over the next two trading days, from its August 25, 2020 close of $3.81 per share. ¶ 41.

On September 3, 2020, the SEC filed suit against Iliad, its principal John Fife ("Fife"), and related entities, Chicago Venture Partners L.P., St. George Investments LLC, Tonaquint, Inc., and Typenex Co-Investment, LLC. ¶ 42. Calling Fife a "recidivist violator of the federal securities laws," the SEC alleged that these entities violated the mandatory dealer registration requirements of the federal securities laws. *Id.* The SEC alleged that Iliad and its related entities, by buying convertible promissory notes, converting the notes into newly issued shares of stock, then rapidly selling those shares into the public at a profit, operated as unregistered securities dealers in violation of the federal securities laws. *Id.*

Through Iliad's actions with respect to CytoDyn, including entering into the convertible promissory note and its amendments, converting the note to newly issued shares of CytoDyn stock, and settling those shares into the market at a profit, Iliad operated as an unregistered securities dealer and generated substantial profits. ¶ 43.

On September 16, 2020, Defendant Pourhassan was forced to admit that no formal EUA request was actually made with the FDA, despite the Company claiming for weeks that it had done so. ¶ 44. Instead, Pourhassan stated that CytoDyn had asked only for the FDA's opinion, stating "we did not submit a formal letter to FDA saying we want to get Emergency Use Authorization. We asked them for their opinion and they were not positive about it. Their reasoning made a lot of sense to us." *Id.*

On September 17, 2020, CytoDyn was sued in the 11th Judicial Circuit for Miami-Dade County, Florida by stock promoter Shift Media Lab for alleged failure to pay for its stock promotion services. ¶ 45. Shift Media Lab vaguely alleged in its complaint that it was providing "services" for CytoDyn for three months at $25,000 per month. *Id.* Shift Media Lab was previously listed by CytoDyn in a disclosure statement to the OTCQB Venture Market as providing "Brand Awareness" for CytoDyn. *Id.*

On November 10, 2020, CytoDyn entered into an amended $28.5 million Secured Convertible Promissory Note with Fife's company, Streeterville Capital LLC, a related entity that was not specifically named in the SEC action against Iliad and Fife. ¶ 46.

On November 10, 2020, the day of CytoDyn's further agreement with the Fife entity Streeterville Capital LLC, CytoDyn shares closed at $2.02 per share, representing an approximate 80% decline from the Class Period high. ¶ 47.

Beginning on a Friday after the close of trading on March 5, 2021, and continuing over the weekend, CytoDyn issued a flurry of press releases describing the results of Phase IIb/III data on Leronlimab. ¶ 49. Hidden in press releases with titles like "Cytodyn to File Accelerated Rolling Review with MHRA and Interim Order (IO) with Health Canada for COVID-19" and "Cytodyn's Phase 3 Trial Demonstrates Safety, a 24% Reduction in Mortality and Faster Hospital Discharge for Mechanically Ventilated Critically Ill COVID-19 Patients Treated with Leronlimab," however, was a disclosure that the primary endpoint of the study—lowering all-cause mortality at Day 28— was not statistically significant. *Id.*

Following the flurry of press releases, CytoDyn was accused of "massaging the data" and squeezing good news out of a failed study, the results of which CytoDyn reportedly sat on pending regulatory discussions. ¶ 50. CytoDyn also focused in on a subgroup that accounted for 62 out of 384 patients enrolled in the CD12 trial and declared a survival benefit. *Id.* While the trial involved severe to critically ill patients, the company touted that mechanically ventilated, critically ill patients saw a 24% reduction in all cause-mortality between the Leronlimab and placebo arms, without breaking down the number of deaths in either group. *Id.*

In the trading days that followed the release of the data, the price of CytoDyn shares plummeted. ¶ 51. After closing at $4.05 on March 5, 2021, CytoDyn shares dropped over 28% to close at $2.91 on March 8, 2021. *Id.* On March 9, 2021, CytoDyn shares dropped an additional 19% to close at $2.35. *Id.*

**PROCEDURAL HISTORY**

Pending before this Court are the above-captioned Actions against the Defendants. Plaintiff Angela Lewis ("Lewis") commenced the first-filed action on March 17, 2021. On the following day, counsel acting on Lewis' behalf published a notice on *Globe Newswire* (the "Notice") announcing that a securities class action had been initiated against the Defendants. *See* Barth Decl., Ex. C ("Press Release").

On April 9, 2021, the *Goodwin* Action was filed against the Defendants in this Court. Movant has requested consolidation of the *Lewis* and *Goodwin* Actions.

**ARGUMENT**

## I.   THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B) (ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999); *see also Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation." (quoting *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading

statements. *See, e.g.*, *Weisz v. Calpine Corp.*, No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831, *7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions).

The Actions present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. The Actions name the same parties as defendants. Because both arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42 (a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Here, a prompt determination is reasonable and warranted under Rule 42(a), given the common questions of fact and law presented by the Actions now pending in this District.

## II.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.    The Procedure Required by the PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)    has either filed the complaint or made a motion in response to a

MOT. FOR CONSOL. & APPOINTMENT
Nos. 3:21-cv-05190-BHS; 3:21-cv-05260-MLP - 7

notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that the defendants could raise against him.  Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

### 1.   Movant Is Willing to Serve As Class Representative

On March 18, 2021, counsel in the *Lewis* Action caused the Notice to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against CytoDyn and the defendants, and advised putative class members that they had until May 17, 2021 to file a motion to seek appointment as a lead plaintiff in the action.[6]  Movant has reviewed a complaint filed in the pending Actions and has timely filed his motion pursuant to the Notice.

### 2.   Movant Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, Movant purchased CytoDyn common stock in reliance upon the materially false and misleading statements issued by the defendants and was injured thereby.  In

---

[6] The *Lewis* Action was filed in this Court on March 17, 2021.  On March 18, 2021, plaintiff's counsel in the *Lewis* Action caused the Notice to be published over *Globe Newswire*, a widely-circulated national business-oriented wire service.  *See* Barth Decl., Ex. C.

addition, Movant suffered a substantial loss of $192,606.18.  *See* Barth Decl., Ex. B ("Loss Chart").  Movant thus has a significant financial interest in the outcome of this case.  To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as Lead Plaintiff that have a larger financial interest and also satisfy Rule 23.

**B.      Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage.  *See Cavanaugh,* 306 F.3d at 730, n.5, 732.  Furthermore, only a "preliminary showing" of typicality and adequacy is required.  *See Takeda,* 67 F. Supp. 2d at 1136.  Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *See Cavanaugh,* 306 F.3d at 732; *see also Haung v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

**1.   Movant's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class."  The typicality requirement of Rule 23(a)(3) is satisfied

when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *Schonfield v. Dendreon Corp.*, Nos. C07-800MJP, 2007 WL 2916533, at *4 (W.D. Wash. Oct. 4, 2007). The requirement that a proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, (9th Cir. 1998); *Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant and all of the Class members purchased Cytodyn common stock and suffered damages as a result of these purchases due to the defendants' misrepresentations and omissions. Therefore, Movant's claims and injuries "stem from the same course of conduct" from which the other class members' claims and injuries arise. *Schonfield*, 2007 WL 2916533, at *4. Movant is not subject to any unique or special defenses. Therefore, Movant meets the typicality requirement of Rule 23 because his claims are the same as the claims of the other Class members.

### 2. Movant Will Adequately Represent The Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *Schonfield*, 2007 WL 2916533, at *4.

Movant's interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between Movant and the other Class members, but Movant has a significant, compelling interest in prosecuting the action to a successful conclusion based upon the very large financial losses he has suffered as a result of the wrongful conduct alleged in these action. This motivation, combined with Movant's identical interest with the members of the Class,

demonstrates that Movant will vigorously pursue the interests of the Class.  In addition, Movant has selected law firms to represent him and the Class that are highly experienced in prosecuting securities class actions.

Moreover, Movant is an adequate representative for the Class.  Movant considers himself to be a sophisticated investor, having been investing in the stock market for 5 years.  He resides in Los Angeles, California, and possesses a Bachelors Degree in Pharmacology from the University of California and Doctor of Dental Surgery Degree from NYU.  Movant is a Dentist and the owner of his dental practice, River Dentistry, located in Downtown Los Angeles.  *See* Barth Decl., Ex. A ("Movant Certification").  Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

In sum, because of Movant's common interests with the Class members, his clear motivation and ability to vigorously pursue the action, and his competent counsel, the adequacy requirements of Rule 23(a)(3) and (4) are met.  Therefore, because Movant not only meets both the typicality and adequacy requirements of Rule 23(a) and has sustained the largest amount of losses from the defendants' alleged wrongdoing, Movant is the presumptive Lead Plaintiff in accordance with 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Actions.

### III.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel, and Hagens Berman as Liaison Counsel for the Class.  The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these, and are well-qualified to represent the Class.  *See* Barth Decl., Ex. D (the firm resume of Levi &

Korsinsky). Hagens Berman also possesses substantial complex litigation experience. *See* Barth Decl. Ex. E (the firm resume of Hagens Berman).

### CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff for the Class in the Actions; and (3) approve Levi & Korsinsky as Lead Counsel and Hagens Berman as Liaison Counsel for the Class.

//

Dated: May 17, 2021 Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Karl Barth*
Karl Barth
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
karlb@hbsslaw.com

LEVI & KORSINSKY, LLP
Shannon L. Hopkins
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
shopkins@zlk.com
*Pro hac vice* application forthcoming

*Attorneys for Dr. Huang and [Proposed] Lead Counsel for the Class*