The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| ANGELA LEWIS, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>                                    Defendants. | Case No. 3:21-cv-05190-BHS<br><br>**DR. SMILA KODALI'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>NOTE ON MOTION CALENDAR: June 4, 2021<br><br>**ORAL ARGUMENT REQUESTED** |
| JAMEY CHRIS GOODWIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>                                    Defendants. | Case No. 3:21-cv-05260-MLP |

## I.   PRELIMINARY STATEMENT

Dr. Kodali respectfully submits this omnibus memorandum of law in opposition to the two remaining motions for appointment as lead plaintiff.[1] As set forth herein, unlike the two other motions, Dr. Kodali possesses the largest loss, and she also otherwise satisfies the adequacy and typicality requirements of FED. R. CIV. P. 23. *See* § III.A, *infra*. Accordingly, Dr. Kodali's motion should be granted, and the other two pending lead plaintiff motions should be denied. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

Mr. Courter's motion should be denied because he did not suffer ***any*** cognizable loss. Instead, based on the data submitted by his counsel, he apparently ***gained*** from his transactions in CytoDyn, Inc. ("CytoDyn" or the "Company") securities during the Class Period. Mr. Courter's claimed Class Period loss appears primarily attributable to a failure to offset more than $560,000 in ***gains*** that he enjoyed during the Class Period. *See* § III.B, *infra*; *Ferreira v. Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *18 (C.D. Cal. 2020) (rejecting movant's "claim to the largest financial interest [as] beset with flaws . . . The greatest error is likely [that movant's] failure to offset its claimed loss with gains for securities purchased before the Class Period and sold during the Class Period.").

That fact, compounded by Mr. Courter's counsel's unwillingness to disclose the cost basis (*i.e.*, purchase price) for Mr. Courter's significant pre-Class Period holdings of CytoDyn securities, renders his true financial interest here (if any) murky at best. *See Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *13 (S.D. Fla. 2018) ("[i]t wastes the Court's time when proposed lead plaintiffs . . . simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares or, at minimum, carefully accounting for each of those shares."). Ultimately (and relatedly), however, it is undisputed that Mr. Courter ***sold*** 47,192 ***more shares*** of

---

[1]   On May 28, 2021, movants Michael O'Donnell and Ho Chun abandoned their respective lead plaintiff motions. *See* ECF 41-42, respectively. On June 1, 2021, movant Dr. Charles Huang and movants Kenneth Kirschenbaum and Candra Evans also filed statements of non-opposition. *See* ECF 43 *and* 44, respectively.

For quoted materials, all emphasis has been added and internal citations have been omitted unless otherwise indicated.

DR. SMILA KODALI'S OMNIBUS OPPOSITION TO
ALL OTHER MOTIONS FOR LEAD PLAINTIFF
CASE NO. 3:21-cv-5190-BHS

1

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

CytoDyn common stock *than he purchased* during the Class Period. *Id*. As a "net seller" of CytoDyn securities, this Court should find Mr. Courter "totally out of the running for designation as lead plaintiff." *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945-46 (N.D. Ill. 2001) (criticizing proposed lead plaintiff who "derive[d] unwitting benefits rather than true losses from the alleged securities fraud."). While her loss *can* be verified, Ms. Lewis's motion should be denied because she suffered a loss of only about $156—far less than Dr. Kodali's $260,000 loss. *Cf.* ECF 13-3 *with* ECF 24-2. Accordingly, and for all the reasons set forth herein, Dr. Kodali should be appointed lead plaintiff and the two other remaining lead plaintiff motions should be denied.

## II.    LEGAL STANDARDS

While the PSLRA "contains a number of requirements, it is neither overly complex nor ambiguous[.]" *Cavanaugh*, 306 F.3d at 729. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), "[t]he 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as [s]he meets the requirements of Rule 23." *Id*. "[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit" and "must then focus its attention on *that* plaintiff and determine, based on the information [s]he has provided in h[er] pleadings and declarations, whether [s]he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. at 730 (emphasis original). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, [s]he becomes the presumptively most adequate plaintiff." *Id*.

## III.    ARGUMENT

### A.    Dr. Kodali is the "Most Adequate Plaintiff"

Under *Cavanaugh*, Dr. Kodali is the presumptive lead plaintiff because she has the largest financial interest in the relief sought by the class—a significant, verifiable loss of about $260,000— and otherwise satisfies the requirements of Rule 23. ECF 24-2. It is also undisputed that Dr. Kodali purchased and retained 40,000 shares of CytoDyn common stock during the Class Period, sustaining

an unquestionable *Dura*-compliant loss of nearly $260,000. *See id*.; *Ruland v. InfoSonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *13-15 (S.D. Cal. 2006) (at lead plaintiff stage, applying *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005)). No other movant before the Court possesses a larger financial interest. *See Cavanaugh*, 306 F.3d at 730 n.4, 732 (using "accounting methods that are both rational and consistently applied" the PSLRA "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case").

While courts have sometimes used supplementary methods to assess financial interest, courts almost always attribute the most significance to losses, particularly where (as here) multiple partial disclosures are alleged to have caused the fraud premium to fluctuate throughout the Class Period. *See* ECF 1 at ¶¶ 39-51; *In re Watchguard Secs. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *10-12 (W.D. Wash. 2005) ("Alone among the four [factors], this factor yields an estimated financial stake that is independent of the fraud premium, constant or not."); *id.* at *16 (collecting cases); *see also In re Coinstar Secs. Litig.*, 2011 U.S. Dist. LEXIS 168518, at *8 (W.D. Wash. 2011) (equating greatest loss with the largest financial interest); *Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *18-19 (N.D. Cal. 2013) ("The weight of authority puts the most emphasis on the competing movants' estimated losses . . ."). The only two movants still before the Court who suffered verifiable losses are Dr. Kodali (with a loss of $260,000) and Ms. Lewis (with a loss of $156).

The analysis thus focuses on "[Dr. Kodali] alone and [is] limited to determining whether [s]he satisfies the other statutory [adequacy and typicality] requirements." *Id.* at 732. "This inquiry 'is not a relative one.'" *Andrade v. Am. Apparel, Inc.*, 2011 U.S. Dist. LEXIS 79795, at *40-41 (C.D. Cal. 2011); *see Cavanaugh*, 306 F.3d at 732 n.10 ("Once the presumption is triggered . . . the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."). Her opening memorandum, Certification, and Declaration establish Dr. Kodali's adequacy and typicality. *See* ECF 22, 24-1, *and* 24-3; *see also In re Century Aluminum Co. Sec. Litig.*, 2009 U.S. Dist. LEXIS 81205, at *14-15 (N.D. Cal. 2009) ("To make this [adequacy and typicality] determination, the Court reviews [Dr. Kodali's] sworn certification and declaration[ ]."); *Cavanaugh*,

DR. SMILA KODALI'S OMNIBUS OPPOSITION TO
ALL OTHER MOTIONS FOR LEAD PLAINTIFF
CASE NO. 3:21-cv-5190-BHS

3

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

306 F.3d at 732.

Dr. Kodali is typical because her claims "arise from the very same events and alleged course of conduct as the claims of the other putative class members—*i.e.*, the alleged artificial inflation and consequent market correction of the price of [CytoDyn] securities caused by Defendants' alleged fraudulent public statements and omissions . . . [and] are also founded on the same legal theories as the other putative class members." *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011). Like other putative class members, she: (i) purchased or otherwise acquired CytoDyn securities during the Class Period; (ii) did so in reliance upon Defendants' allegedly materially false and misleading statements; and (iii) suffered damages from purchasing artificially inflated securities, and then harm when the truth was revealed.

Dr. Kodali is also adequate because her interests are aligned with other class members, there is no antagonism between them, and she has selected a qualified and experienced counsel to conduct this litigation. *Schonfield v. Dendreon Corp.*, 2007 U.S. Dist. LEXIS 76816, at *11 (W.D. Wash. 2007). Her PSLRA Certification and Declaration describe her personal and professional background, attesting, *inter alia*, as follows: (i) her understanding that "[a] Lead Plaintiff's obligation under the PSLRA is to act as a fiduciary for the class . . ."; (ii) "I will direct Lead Counsel to prosecute this action in an efficient, cost-effective manner while obtaining the best possible result for the Class . . ."; and (iii) "I will supervise Lead Counsel and actively oversee the prosecution of this action for the benefit of the Class . . . ." ECF 24-3 at ¶¶ 4-7; *see Cavanaugh*, 306 F.3d at 732 n.10. Absent "proof" to the contrary, Dr. Kodali should be appointed as lead plaintiff. *Century Aluminum*, 2009 U.S. Dist. LEXIS 81205, at *16; *see also Andrade*, 2011 U.S. Dist. LEXIS 79795, at *40-41 ("'speculative assertions are insufficient to rebut the presumption' regarding most adequate plaintiff.")

**B.      Mr. Courter is Not the "Most Adequate Plaintiff"**

Not only did Mr. Courter not suffer *any* cognizable loss during the Class Period, he instead likely enjoyed a gain. Unfortunately, the Court cannot actually determine his true financial interest as required by the Ninth Circuit here because his counsel did not disclose the cost basis for his large *pre-*

DR. SMILA KODALI'S OMNIBUS OPPOSITION TO
ALL OTHER MOTIONS FOR LEAD PLAINTIFF
CASE NO. 3:21-cv-5190-BHS

4

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

Class Period position in CytoDyn securities—the entirety of which he sold at artificially inflated prices during the Class Period. *See Cavanaugh*, 306 F.3d at 730 n.4 (holding that "the ***district court must calculate*** each potential lead plaintiff's financial interest in the litigation."). When manipulative accounting methods such as these are used to inflate a proposed lead plaintiff's claimed loss, courts typically outright reject such applicants as lead plaintiffs and this Court should too. *See Comdisco*, 150 F. Supp. 2d at 945-46 (rejecting proposed lead plaintiff who impermissibly used an accounting method to conceal that he sold more shares than purchased, and when properly matched, his "Class Period sales at inflated prices caused it to derive unwitting benefits rather than true losses from the alleged securities fraud"). Mr. Courter may nevertheless continue to try to claim he has the largest financial interest, which would be unavailing for two reasons: (i) he is a net seller who sold far ***more*** shares of CytoDyn common stock than he purchased during the Class Period; and (ii) his claimed losses were grossly overstated by his counsel's failure to account for more than half a million dollars in proceeds from his calculated losses.[2]

***First***, during the Class Period, Mr. Courter purchased 330,761 shares of CytoDyn common stock and sold 377,953 shares, thereby ***selling 47,192 more shares than he purchased***. *See* Second Declaration of Roger Townsend in Opposition to All Other Motions for Lead Plaintiff ("Second Townsend Decl."), at Ex. A (Mr. Courter's Schedule A, including total purchases and sales). Accordingly, he is a "net seller" of CytoDyn securities, which courts routinely hold renders him "totally out of the running for designation as lead plaintiff." *Comdisco*, 150 F. Supp. 2d at 946-47

---

[2]    Mr. Courter seeks to bring claims and assert losses on behalf of himself and a limited liability company. Mr. Courter, however, executed his PSLRA Certification on his own behalf and as "Owner" of Courter & Sons, LLC. *See* ECF 27 at 7, ¶ 4; *see also signature lines at* ECF 27 at 8; *id.* at 16. Elsewhere, Mr. Courter represents that he "co-owns" Courter & Sons LLC. *See* ECF 26 at 9; *see also* ECF 27 at 14, ¶ 2. It is unclear how many other co-owners exist (whether family or otherwise) and whether he is acting as an investment advisor on behalf of his co-owners. If he is acting as an investment advisor on their behalf, this could raise serious Article III standing issues, which Mr. Courter has compounded by variously representing he is somehow simultaneously the full owner (ECF 27 at 7, ¶ 4) and/or the "co-owner" of the LLC (ECF 26 at 9 ("Brian Joe Courter is the operator and ***co-owner*** of Courter and Sons LLC . . . .")) *with W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.*, 549 F.3d 100, 108-11 (2d Cir. 2008); *In re Herley Indus. Secs. Litig.*, 2009 U.S. Dist. LEXIS 91600, at \*14 (E.D. Pa. 2009); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009), *rev'd on other grounds*, 615 F.3d 1106 (9th Cir. 2010); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 346 (C.D. Cal. 2015).

DR. SMILA KODALI'S OMNIBUS OPPOSITION TO            5
ALL OTHER MOTIONS FOR LEAD PLAINTIFF
CASE NO. 3:21-cv-5190-BHS

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

(rejecting movant who sold 218,400 shares and purchased only 213,800 shares). Net sellers, who have arguably profited more from the fraud than they have been injured, have a reduced incentive to litigate, which weighs heavily against their appointment as lead plaintiff:

> A net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed. By contrast a net seller has arguably profited more from the fraud than it has been injured, possibly reducing its incentive to litigate. While such profits may not bar recovery, they are one relevant factor in identifying the plaintiff with the greatest financial interest in the litigation.

*In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999). Net sellers are also vulnerable to unique defenses regarding damages such that "courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial." *Deering v. Galena Biopharma, Inc.*, 2014 U.S. Dist. LEXIS 140766, at *34-35 (D. Or. 2014) (collecting cases).

Such is the case here because, in the year preceding the Class Period, the average closing price of CytoDyn's common stock was $0.57 per share. *See* Second Townsend Decl., Ex. B (historical trading data for CytoDyn common stock). Mr. Courter held at least 220,874 shares prior to the Class Period. On March 27, 2020—*the very first day of the Class Period*, when shares of the Company's common stock were artificially inflated—Mr. Courter sold 100,000 of his pre-Class Period holdings at $1.05 per share. ECF 27 at 12. On June 19, 2020, he sold an additional 120,000 shares from his pre-Class Period holdings at $3.75 per share. ECF 27 at 11-12. Then on July 20, 2020, he sold 874 more shares from his pre-Class Period holdings at $5.78 per share. ECF 27 at 12.

Given the comparatively low trading price of CytoDyn common stock before the Class Period commenced, it is a virtual certainty that Mr. Courter is also a "net gainer" on his Class Period transactions and that is presumably why his counsel did not reveal the cost basis for his pre-Class Period CytoDyn holdings. *See Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *13 ("It wastes the Court's time when proposed lead plaintiffs . . . simply note that shares held prior to the Class Period were sold, *without disclosing the net gain on the sale of those shares* or, at minimum, carefully

accounting for each of those shares."); *Born v. Quad/Graphics, Inc.*, 2020 U.S. Dist. LEXIS 35534, at *6 (S.D.N.Y. 2020); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *27 (N.D. Cal. 2011).

Further, Mr. Courter's claimed losses of $489,006.64 across four accounts, Second Townsend Decl., Ex. C (excerpted from Mr. Courter loss chart at ECF 27 at 11-12), are grossly inflated because his counsel has selectively omitted more than $560,000 in gains from sales matched against his opening pre-Class Period position. *See Mednax*, 2018 U.S. Dist. LEXIS 207064, at *13; *see also Funko*, 2020 U.S. Dist. LEXIS 106515, at *18 (rejecting movant's "claim to the largest financial interest [as] beset with flaws . . . . The greatest error is likely [that movant's] failure to offset its claimed loss with gains for [the Company's] securities purchased *before* the Class Period and sold *during* the Class Period.") (emphasis original).

Worse, Mr. Courter's counsel's loss chart feigns transparency by presenting the proceeds from those transactions without then adding them to his calculated loss. Second Townsend Decl., Ex. C. More specifically:

- Mr. Courter's "Roth IRA" account claims a cost basis of $568,761.02 and class period sales proceeds of $531,179.90, calculating a loss on that account of -$37,581.12 ($531,179.90 minus $568,761.02 yields -$37,581.12). *See* Second Townsend Decl., Ex. C. However, he excludes the sales proceeds of ***$112,500.00*** from selling 30,000 shares from his opening balance. *See id.* (highlighted).

- Mr. Courter's "IRA" account claims a cost basis of $905,200.90 and class period sales proceeds of $622,107.56, calculating a loss on that account of -$283,093.34 ($622,107.56 minus $905,200.90 yields -$283,093.34). *See* Second Townsend Decl., Ex. C. He excludes sales proceeds of ***$112,500.00*** from selling 30,000 shares from his opening balance. *See id.* (highlighted).

- Mr. Courter's third account claims a cost basis of $5,660.88 and class period sales proceeds of $3,152.58, calculating a loss of -$2,508.30 on this account ($3,152.58 minus $5,660.88 equals -$2,508.30). *See* Second Townsend Decl., Ex. C. He excludes sales proceeds of ***$5,051.72*** from selling on his opening balance. *See id* (highlighted).

- Most egregiously, the "Courter and Sons LLC" account claims a cost basis of $389,136.00 and class period sales proceeds of $223,312.11, with a loss of -$165,823.89 on this account ($223,312.11 minus $389,136.00 equals -$165,823.89). *See* Second Townsend Decl., Ex. C. He excludes sales proceeds of ***$330,000.00*** from selling

160,000 shares from his opening balance. *See id* (highlighted).

Combined, Mr. Courter has failed to account for ***more than $560,000*** in gains from his Class Period sales of CytoDyn securities he held before the Class Period—a sum larger than his claimed loss. Courts, of course, routinely reject such applicants as lead plaintiffs. *See Richardson v. TVIA*, *Inc.*, 2007 U.S. Dist. LEXIS 28406, at *12 (N.D. Cal. 2007) (rejecting net gainer as lead plaintiff); *Hodges v. Immersion Corp.*, 2009 U.S. Dist. LEXIS 122565, at *6 (N.D. Cal. 2009) (same); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("[C]ourts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages.").

Mr. Courter's counsel may try to belatedly provide the cost basis for his pre-Class Period holdings; if attempted, this would be unavailing.[3] At the outset, his $560,000 in gains from selling his pre-Class Period holdings are so large that they will greatly reduce his claimed losses far below Dr. Kodali's loss. Next, Mr. Courter's counsel should have provided the cost basis for his pre-Class Period holdings in the first instance because the Ninth Circuit has held since 2002 that, to "make this [loss] comparison, the ***district court must calculate*** each potential lead plaintiff's financial interest in the litigation." *Cavanaugh*, 306 F.3d at 730 n.4. Here, the Court has been foreclosed from making that statutory determination because Mr. Courter's counsel chose not to reveal the cost basis for the Class Period shares of CytoDyn stock he sold during the Class Period. *See id*. Their effort to muddy the Court's independent loss determination has "needlessly complicated" these proceedings by virtue of "their failure to disclose all relevant information[.]" *Funko*, 2020 U.S. Dist. LEXIS 106515, at *19, quoting *Mednax*, 2018 U.S. Dist. LEXIS 207064, at *13.

This further weighs against any finding that Mr. Courter can or will adequately represent the Class. *See id*.

### C.    Ms. Lewis's Motion Should Be Denied

Finally, because her $156 loss is vastly smaller than Dr. Kodali's loss of $260,000, Ms. Lewis's

---

[3]    Should Courter do so on reply, then the other movants should be permitted to respond to any revised calculations.

motion should also be denied. *See Cavanaugh*, 306 F.3d at 732 ("[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical").

## IV.    CONCLUSION

For the foregoing reasons, Dr. Kodali respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint her as Lead Plaintiff; and (iii) approve her selection of KSF as Lead Counsel and Breskin Johnson & Townsend, PLLC as Liaison Counsel for the putative Class.

Dated: June 1, 2021                                        Respectfully submitted,

                                                           **BRESKIN JOHNSON & TOWNSEND, PLLC**

                                                           By:    *s/ Roger M. Townsend*
                                                                  Roger M. Townsend
                                                                  1000 Second Avenue, Suite 3670
                                                                  Seattle, Washington 98104
                                                                  Telephone: (206) 652-8660
                                                                  Facsimile: (206) 652-8290
                                                                  rtownsend@bjtlegal.com

                                                           *Proposed Liaison Counsel for Movant,*
                                                           *Dr. Smila Kodali*

                                                                     -and-

                                                           Ramzi Abadou (admitted *pro hac vice*)
                                                           KAHN SWICK & FOTI, LLP
                                                           912 Cole Street, # 251
                                                           San Francisco, California 94117
                                                           Telephone: (415) 459-6900
                                                           Facsimile: (504) 455-1498
                                                           ramzi.abadou@ksfcounsel.com

                                                           *Proposed Lead Counsel and Counsel*
                                                           *for Movant, Dr. Smila Kodali*