The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| ANGELA LEWIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>Defendants. | Case No. 3:21-cv-05190-BHS<br><br>**DR. SMILA KODALI'S REPLY IN SUPPORT OF HER MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>NOTE ON MOTION CALENDAR: June 4, 2021<br><br>**ORAL ARGUMENT REQUESTED** |
| JAMEY CHRIS GOODWIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>Defendants. | Case No. 3:21-cv-05260-MLP |

## I.    PRELIMINARY STATEMENT

Dr. Kodali respectfully submits this reply memorandum in further support of her lead plaintiff motion. *See* ECF 22. Angela Lewis did not file a responsive brief. *See* W.D. Wash. LCR 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."); *W. Boxed Meats Distribs. v. Parker*, 2017 U.S. Dist. LEXIS 141226, at *4 (W.D. Wash. 2017) ("The lack of any opposition to such motion is properly construed as an admission of merit.") (Settle, J.). Accordingly, only two motions remain. As set forth in Dr. Kodali's omnibus opposition (ECF 45), her motion should be granted and Mr. Courter's should be denied because Dr. Kodali possesses the largest financial interest in the relief sought by the class and otherwise satisfies the applicable requirements of FED. R. CIV. P. 23 ("Rule 23"). Mr. Courter, by contrast, likely incurred an overall gain on his investment in CytoDyn securities during the Class Period.[1]

## II.    ARGUMENT

Mr. Courter's opposition did not raise any issues either with respect to Dr. Kodali's losses or her Rule 23 qualifications. *See generally* ECF 47. Dr. Kodali's claimed loss of approximately $260,000 is therefore uncontested. *See* ECF 22; ECF 45. She also retained the largest number of net shares purchased (*i.e.*, 40,000 shares) through the end of the Class Period. *See* ECF 24-2; ECF 45 at 2. Mr. Courter's claimed purported loss, on the other hand: (i) failed to disclose the cost basis (*i.e.* purchase price) for his pre-Class Period holdings (rendering his actual loss, if any, uncertain); and (ii) excluded over a half-million dollars in gains from his calculated losses. *See* ECF 45 at 5-8. Moreover, he sold 47,192 more shares than he purchased during the Class Period—resulting in negative net shares purchased. *See* ECF 46-1; *Arciaga v. Barrett Bus. Servs.*, 2015 U.S. Dist. LEXIS 22879, at *8 (W.D. Wash. 2015) (listing "net shares purchased" among factors considered); *Schonfield v. Dendreon Corp.*, 2007 U.S. Dist. LEXIS 76816, at *9 (W.D. Wash. 2007) (same); *Deering v. Galena Biopharma, Inc.*, 2014 U.S. Dist. LEXIS 140766, at *34 (D. Or. 2014) ("[C]ourts around the country consistently have

---

[1]    All emphasis added and internal citations omitted unless otherwise indicated.

SMILA KODALI'S REPLY ISO MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE COUNSEL
CASE NO. 3:21-cv-5190-BHS

1

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial."); *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("[T]he number of net shares purchased during the class period is determinative.") (citing *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999)).

By contrast, Dr. Kodali unquestionably satisfies the adequacy and typicality requirements of Rule 23, which Mr. Courter concedes. Nor has Mr. Courter contested that she will not adequately represent the putative class. While Mr. Courter's response continues to claim that he sustained losses of $489,006 on his investment in CytoDyn securities, Dr. Kodali has submitted irrefutable proof that Mr. Courter sold **220,874** shares from his pre-Class Period holdings in CytoDyn's stock while the Company's shares were trading at artificially inflated prices. *See* ECF 46-3. He therefore likely profited by approximately $560,000. *See id.*; *Ferreira v. Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *18 (C.D. Cal. 2020) (rejecting movant's "claim to the largest financial interest [as] beset with flaws . . . . The greatest error is likely [that movant's] failure to offset its claimed loss with gains for [the Company's] securities purchased **before** the Class Period and sold **during** the Class Period.") (emphasis in original).

Dr. Kodali further established that Mr. Courter withheld the cost basis for his pre-Class Period shares, making it impossible for the Court to determine his financial interest. *Id.*; *see* ECF 45 at 4-5; *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *13 (S.D. Fla. 2018) (criticizing lead plaintiff applicant for not "disclosing the net gain on the sale of those shares or, at minimum, carefully accounting for each of those shares."). Mr. Courter cannot deny that he was a net seller of CytoDyn securities during the Class Period, having sold 47,192 more shares than he purchased. *See* ECF 45 at 5-6. Accordingly, the primary issue becomes whether a net seller can ignore windfall gains during the Class Period. Courts almost uniformly hold that they cannot. *See Cambridge Ret. Sys.*, 2018 U.S. Dist. LEXIS 207064, at *15-16 ("[T]he amount of net gain to [Courter] from the sales of [his] prior-purchased shares should be subtracted from the $[489,007] in losses claimed . . . ."); *Ferreira*, 2020 U.S. Dist. LEXIS 106515, at *18; *Ruland v. InfoSonics Corp.*, 2006 U.S. Dist.

LEXIS 79144, at *16 n.1 (S.D. Cal. 2006). As the court explained in *Perlmutter v. Intuitive Surgical, Inc.*, net sellers are often rejected as lead plaintiffs because it signals that "a party potentially benefitted from the fraud." 2011 U.S. Dist. LEXIS 16813, at *29 (N.D. Cal. 2011); *see Borochoff v. Glaxosmithkline Pub. Ltd. Co.*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) ("[Movant] is a net seller and although it nevertheless may have sustained a small loss (or, depending on the accounting method chosen, a gain) it does not adequately represent the proposed class of purchasers.").

Given that he did not do so in his motion or opposition, Mr. Courter may now belatedly reveal the cost basis for his opening position in CytoDyn securities on reply to claim specific losses on the sale of his pre-Class Period holdings. Were he to do so, however, his efforts would be futile because those losses, if any, are not recoverable under Supreme Court precedent. *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at *13-15 ("[i]f the purchaser sells the shares before the truth becomes known, the misrepresentation will not have led to any loss.").

As Dr. Kodali previously noted in her opposition, to be recoverable, losses must comply with the United States Supreme Court's loss causation ruling in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). *See* ECF 45 at 2-3. Mr. Courter, however, cannot demonstrate any recoverable damages in connection with the sales of his pre-Class Period holdings because they were incurred before *any* negative disclosures related to the alleged misrepresentations here. *See Dura*, 544 U.S. at 345 (holding that the federal securities laws were designed "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause."). Indeed, the *first* pled negative disclosure related to the Company's prior alleged misrepresentations occurred on August 26, 2020, when the *Wall Street Journal* reported that CytoDyn was not being considered for the government's COVID-19 vaccine development program dubbed "Operation Warp Speed." *See* ECF 1 at ¶ 39.

Mr. Courter, however, sold a total of 220,874 shares *prior* to this disclosure: 100,000 shares on March 27, 2020; 120,000 shares on June 19, 2020; and 874 shares on July 20, 2020. *See* ECF 45 at 6. Accordingly, any losses potentially derived from those specific sales are not recoverable under

SMILA KODALI'S REPLY ISO MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE COUNSEL
CASE NO. 3:21-cv-5190-BHS

3

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

*Dura. See* ECF 45 at 2-3; ECF 46-3. *Ruland* is instructive. *See* 2006 U.S. Dist. LEXIS 79144, at \*13-15. There, relying on *Dura*, the district court declined at the lead plaintiff stage to consider any losses stemming from transactions occurring before the truth was revealed to the market. *Id*. at \*13-15 (citing *Dura*, 544 U.S. at 343). It correctly noted that "[i]f the purchaser sells the shares ***before the truth becomes known***, the misrepresentation will not have led to any loss." *Id*.[2]

Consistent with *Ruland*, at the lead plaintiff stage, courts invariably first determine whether a proposed lead plaintiff's claimed losses are *Dura*-compliant. *See*, *e.g.*, *Africa v. Jianpu Tech., Inc.*, 2021 U.S. Dist. LEXIS 95246, at \*4 (S.D.N.Y. 2021) (finding that any losses incurred "where an investor buys stock and sells it during the class period but before any disclosures — should ***not*** be considered."); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 U.S. Dist. LEXIS 21607, at \*17 (S.D.N.Y. 2021) (where most of movant's losses were incurred prior to the first disclosure, his "overall (*i.e.* non-*Dura*) LIFO losses during the class period ***are not a persuasive indicator*** that [he] would be the appropriate lead plaintiff."). ***Even if*** Mr. Courter somehow did suffer a loss on the sale of his massive pre-Class Period holdings while CytoDyn's shares were artificially inflated, those losses are not and cannot be recoverable under the Supreme Court's *Dura* decision. *See In re CTI BioPharma Corp. Secs. Litig.*, 2016 U.S. Dist. LEXIS 119301, at \*10 (W.D. Wash. 2016) ("Under *Dura* [], losses suffered prior to corrective disclosures in a case brought under Section 10(b) of the Securities Exchange Act are ***not compensable*** because the losses were incurred while the stock price remained artificially inflated."). Accordingly, Mr. Courter's motion should be denied.

## III.   CONCLUSION

For the foregoing reasons, Dr. Kodali respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint her as Lead Plaintiff; and (iii) approve her selection of KSF as Lead Counsel and Breskin Johnson & Townsend, PLLC as Liaison Counsel for the putative Class.

---

[2] The *Ruland* opinion further noted that if shares were, as with Mr. Courter here, "purchased [] before the class period and sold [] for a profit during the class period, such windfall gains would be deducted from [claimed] losses." *Id.* at \*16 n.1.

Dated: June 4, 2021

Respectfully submitted,

**BRESKIN JOHNSON & TOWNSEND, PLLC**

By:___*s/ Roger M. Townsend*_____
    Roger M. Townsend
    1000 Second Avenue, Suite 3670
    Seattle, Washington 98104
    Telephone: (206) 652-8660
    Facsimile: (206) 652-8290
    rtownsend@bjtlegal.com

*Proposed Liaison Counsel for Movant,*
*Dr. Smila Kodali*

          -and-

Ramzi Abadou (admitted *pro hac vice*)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel*
*for Movant, Dr. Smila Kodali*

SMILA KODALI'S REPLY ISO MOTION TO CONSOLIDATE, APPOINT LP, AND APPROVE COUNSEL
CASE NO. 3:21-cv-5190-BHS

5

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290