The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| ANGELA LEWIS, Individually and On Behalf of All Others Similarly Situated, ) ) ) | Case No. 3:21-cv-05190-BHS |
| Plaintiff, ) ) | **DR. SMILA KODALI'S SURREPLY PURSUANT TO LCR 7(g)** |
| v. ) ) | |
| CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND, ) ) ) ) | |
| Defendants. ) ) | |

| | |
|---|---|
| JAMEY CHRIS GOODWIN, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Case No. 3:21-cv-05260-MLP |
| Plaintiff, ) ) | |
| v. ) ) | |
| CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND, ) ) ) ) | |
| Defendants. ) ) | |

KODALI'S SURREPLY
CASE NO. 3:21-cv-5190-BHS

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

Dr. Kodali respectfully submits this surreply pursuant to LCR 7(g) seeking to strike footnote six of Courter's reply brief [ECF 51 at 4] ("Courter Reply") and Exhibit D to the Reply Declaration of Bradley S. Keller [ECF 52 at 22] as both include new arguments raised for the first time on reply.[1] *See ThermaPure, Inc. v. Water Out Or., Inc.*, 2013 U.S. Dist. LEXIS 6762, at *2-3 (W.D. Wash. 2013) (Settle, J.).

On May 17, 2021, Courter filed a motion for lead plaintiff claiming that he "suffered losses of approximately $489,007." ECF 26 at 7. That assertion was false. His true loss, as his reply reluctantly now admits [ECF 52 at 20] is ***$196,449*** – less than Dr. Kodali's loss of $260,000. Courter's opposition further claimed that he had "the largest financial interest" because "[c]ourts in the Ninth Circuit and across the country primarily look to the movant's asserted losses . . . when assessing financial interest under the PSLRA." ECF 47 at 2, 4-5. Then, confronted with Dr. Kodali's assertion that his claimed loss was overstated, the Courter Reply for the first time argued that a "movant's asserted losses" is just but one of four factors courts consider in selecting lead plaintiffs. *See* ECF 51 at 4, n.6. In other words, after Dr. Kodali challenged his losses, Courter transitioned from claiming the "***largest loss***" to claiming merely a "***significant loss***" on reply and asking the Court to consider new arguments unrelated to his smaller losses. *Id*.

In doing so, moreover, the Courter Reply concedes that he is a "net seller," having purchased ***negative*** 47,192 shares during the Class Period compared to Dr. Kodali's 40,000 net shares purchased. *See id.* at 5-6; *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) ("North Yorkshire is a net seller and although it nevertheless may have sustained a small loss (or, depending on the accounting method chosen, a gain) it does not adequately represent the proposed class of purchasers."); *Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *27 (N.D. Cal. 2002) ("Aside from the infirmity of Detroit's loss calculation, the Court notes that Detroit purchased 64,100 shares of Calpine stock, ***but sold almost twice that amount*** – 152,000 shares – during the Class Period. This fact undermines Detroit's contention that it has the largest financial interest in this case . . . .")

---

[1] All emphasis added and internal citations omitted unless otherwise indicated.

KODALI'S SURREPLY
CASE NO. 3:21-cv-5190-BHS

1

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

(emphasis in original); *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("[T]he number of net shares purchased during the class period is determinative.").

Ultimately, Courter was compelled to disclose his actual loss on reply in a footnote only after Dr. Kodali's opposition pointed out that he had ignored gains from selling his 220,874 pre-Class Period holdings of CytoDyn stock at artificially inflated prices during the Class Period. ECF 45 at 6-8. Courts have previously criticized such maneuverings by proposed lead plaintiffs under identical facts, reasoning that "[i]t wastes the Court's time when proposed lead plaintiffs . . . simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares . . . ." *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *13 (S.D. Fla. 2018). Indeed, by failing to simply disclose the cost basis for his pre-Class Period holdings until his reply, Courter "needlessly complicated" these proceedings thereby necessitating this filing. *Ferreira v. Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *19 (C.D. Cal. 2020).

The Courter Reply's suggestion that this is the "Dr. Kodali rule" is inaccurate. Courts in this Circuit and across the country routinely offset windfall gains realized on the sale of pre-class period purchases when evaluating a movant's losses pursuant to the PSLRA. *See* ECF 45 at 7-8; ECF 50 at 2 (citing *Ferreira*, 2020 U.S. Dist. LEXIS 106515, at *18; *Mednax*, 2018 U.S. Dist. LEXIS 207064, at *13; *see also Ruland v. InfoSonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *16 n.1 (S.D. Cal. 2006)). Securities law precedents have long recognized the common-sense accounting rule that a plaintiff's losses must "be netted against their profits attributable to the same fraud." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010) (collecting cases).[2] *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262 (S.D.N.Y. 2009) is instructive. There, at the lead plaintiff

---

[2] Courter speciously argues that "just as gains from the sale of pre-class period shares are excluded under LIFO, so too are losses." ECF 51 at 3; n.4. As discussed above, gains are offset against pre-class period purchase prices to account for the windfall a plaintiff enjoys due to fraud-inflated prices. *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16 n.1 ("Had [movant] purchased stock before the class period and sold it for a profit during the class period, such windfall gains would be deducted from [his] losses."). In contrast, **losses** on pre-class period stock purchases are not recoverable because they **cannot** be attributed to the alleged fraudulent conduct. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263 (2014) ("Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock.").

stage, Judge Koeltl explained that "[t]he most accurate and realistic way to account for the gain realized from [a Class Period] sale is to subtract the purchase price of the shares sold from the proceeds of their sale, and to **offset the resulting gain** against [movant's] class period losses." *Id.* at 266; *see also id.* at 266 n.4 (applying gains to LIFO losses).

Ultimately, it was only after Dr. Kodali identified this issue for the Court that the Courter Reply **finally** disclosed that his losses were actually **$196,450** – less than Dr. Kodali's now still uncontroverted $260,000 loss. *See* ECF 51 at 4, n. 5. In doing so, the Courter Reply inappropriately presented new, previously undisclosed facts to claims for the first time that he possesses the largest financial interest on factors unrelated to losses. Those arguments should be stricken. *Id.* at n. 6; ECF 52 at 22 (Exhibit D). In any event, the new factors he now cites contradict his earlier argument equating financial interest solely with losses as "courts almost always attribute the most significance to losses, particularly where (as here) multiple partial disclosures are alleged to have caused the fraud premium to fluctuate throughout the Class Period." ECF 45 at 3 (citing *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *10-12 (W.D. Wash. 2005)). And, in any event, the most important of those three other factors (net shares purchased) also favors Dr. Kodali. *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16 (applying "greatest number of net shares purchased" method to determine financial interest).

For the foregoing reasons, Dr. Kodali respectfully requests that the Court strike footnote six of the Courter Reply and Exhibit D to the Reply Declaration of Bradley S. Keller [ECF 52 at 22].

Dated: June 9, 2021

Respectfully submitted,

**BRESKIN JOHNSON & TOWNSEND, PLLC**

By:   *s/ Roger M. Townsend*
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, Washington 98104
Telephone: (206) 652-8660
Facsimile: (206) 652-8290
rtownsend@bjtlegal.com

*Proposed Liaison Counsel for Movant,*

KODALI'S SURREPLY
CASE NO. 3:21-cv-5190-BHS

3

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290

*Dr. Smila Kodali*

    -and-

Ramzi Abadou (admitted *pro hac vice*)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel*
*for Movant, Dr. Smila Kodali*

KODALI'S SURREPLY
CASE NO. 3:21-cv-5190-BHS

4

BRESKIN JOHNSON & TOWNSEND, PLLC
1000 SECOND AVENUE, SUITE 3670
SEATTLE, WA 98104
T: (206) 652-8290