The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

ANGELA LEWIS, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,

Defendants.

No. 3:21-cv-05190-BHS

**SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER**

NOTED ON MOTION CALENDAR: July 30, 2021

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

Brian Joe Courter and Courter and Sons LLC (collectively, "Courter") respectfully submit this surreply in response to the Court's July 22, 2021 order requesting briefing "as to whether [Courter's] losses are proximately caused by CytoDyn's misrepresentations as required by *Dura* [*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)]." ECF No. 56 (the "Order").[1] The Order was entered after Dr. Kodali raised *Dura*-based arguments "for the first time in reply." *Id.* at 3.

Despite repeatedly citing to *Dura*, Dr. Kodali never actually argues that her *Dura*-compliant losses are greater than Courter's *Dura*-compliant losses. Instead, Dr. Kodali engages in misdirection by arguing that losses from ***pre-Class Period*** purchases sold during the Class Period before any corrective disclosures are not recoverable under *Dura*. *See* ECF No. 50 at 3. This argument is a red herring because Courter's filings clearly show that sales of pre-Class Period shares were ***not*** included in Courter's claimed losses. Moreover, regardless of the propriety of applying *Dura* to ***Class Period*** shares at the lead plaintiff stage given the fluctuating fraud premium alleged here, Courter's *Dura*-compliant losses of $471,201 are almost double Dr. Kodali's *Dura*-compliant losses of $261,080. Courter's presumptive lead plaintiff status under the PSLRA remains unrebutted.

## I.    COURTER <u>EXCLUDED</u> SALES OF PRE-CLASS PERIOD SHARES

Dr. Kodali's reply belatedly claims that "Courter . . . cannot demonstrate any recoverable damages in connection with the ***sales*** of [their] ***pre-Class Period holdings*** because they were incurred before any negative disclosures related to the alleged misrepresentations." ECF No. 50 at 3. This argument is another attempted misdirection designed to distract from the undisputed fact that Courter possess the largest financial interest under the preferred LIFO loss calculation methodology (as well as under *Dura*, *see infra* at Section III).[2] Courter ***never claimed*** that they suffered recoverable damages in connection with the sale of pre-Class Period shares. As set forth

---

[1] Unless otherwise noted, all references to "ECF No. __" are to docket entries in *Lewis*, all emphasis is added, all internal citations and quotation marks are omitted, and all capitalized terms are defined in Courter's opening, opposition, and reply briefs (ECF Nos. 26, 47, & 51).

[2] *See also, e.g.*, ECF No. 51 at 5-6 (discussing Dr. Kodali's misleading conflation of "net sellers" and "net gainers").

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

1

in the loss chart accompanying Courter's motion, **all** sales of pre-Class Period holdings were expressly **excluded** under Courter's $489,007 LIFO loss calculation.  *See* ECF No. 27 at 11-12.[3] Courter's calculation properly applies the LIFO methodology given that "sales matched with **pre-class period** purchases are **not included** in the calculation of class period losses."  ECF No. 51 at 1 (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011)); *see also* ECF No. 51 at 3-4 (demonstrating that Dr. Kodali's counsel has previously applied LIFO in an identical matter to Courter's application of LIFO here).[4]  As such, Dr. Kodali's speculative claim that "*[e]ven if* Mr. Courter somehow did suffer a loss on the sale of his massive pre-Class Period holdings . . . those losses are not and cannot be recoverable under the Supreme Court's *Dura* decision," ECF No. 50 at 4 (emphasis in original), is much ado about nothing.  *See also In re Mersho*, No. 20-73819, 2021 WL 3121385, at *6 (9th Cir. July 23, 2021) (explaining that unsupported speculation "does not comport with the burden-shifting process Congress established in the PSLRA" under which "competing movants must point to evidence").

## II.  APPLICATION OF *DURA* TO CLASS PERIOD TRANSACTIONS IS UNWARRANTED AT THIS STAGE GIVEN THE FACTS HERE

In *Dura*, the Supreme Court held that plaintiffs "need to *prove* proximate causation and economic loss" in order to prevail under Section 10(b) of the Securities Exchange Act of 1934. 544 U.S. at 346 (emphasis in original).  Accordingly, "any losses resulting from sales of shares before a company's misconduct is revealed . . . cannot be proximately linked to the misconduct at

---

[3] Specifically excluded were the sales of: 30,000 pre-Class Period shares on June 19, 2020, in the "Brian Joe Courter Roth IRA" account; 30,000 pre-Class Period shares on June 19, 2020, in the "Brian Joe Courter IRA" account; 874 pre-Class Period shares on July 20, 2020, in the "Brian Joe Courter" account; and 100,000 shares on March 27, 2020, and 60,000 shares on June 19, 2020, in the "Courter and Sons LLC" account.  ECF No. 27 at 11-12.

[4] The exclusion of gains and losses from the sale of pre-Class Period shares is also consistent with the settlement plan of allocation approved by this Court in *In re Barrett Business Services Securities Litigation*, No. 14-cv-5884-BHS (W.D. Wash.).  *See* Surreply Declaration of Bradley S. Keller ("Surreply Decl."), Ex. A at 14, n.6 ("the proceeds of those sales [of pre-class period purchases] will not be considered for purposes of calculating market gains *or losses*").

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

issue." *Micholle v. Ophthotech Corp.*, Nos. 17-CV-210 (VSB), *et al.*, 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018).

However, courts have recognized that "the appropriateness of employing [a] *Dura* analysis at the lead plaintiff stage is subject to considerable dispute" given the fact-intensive nature of the analysis (*i.e.*, determining when defendants' misrepresentations were publicly corrected and caused losses on class period transactions) and that the lead plaintiff selection process occurs without the benefits of discovery, adversarial briefing with defendants, and expert testimony. *Cook v. Allergan PLC*, Nos. 18 Civ. 12089 (CM), *et al.*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019). As explained by the Honorable James L. Robart, "[*Dura*] recognized . . . that numerous factors may affect the price of a security [but] did not suggest that a court should guess about the effect of these as-yet unknown factors in selecting a lead plaintiff." *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6 (W.D. Wash. July 13, 2005) (rejecting application of *Dura* at lead plaintiff stage); *see also id.* at *15 ("The PSLRA contemplates a quick selection of a lead plaintiff . . . without opportunity for discovery on likely damages or losses.").

Applying *Dura*'s principles to Class Period purchases at the lead plaintiff stage is particularly unwarranted here given that this case includes multiple partial disclosures (which varied the fraud premium) during the Class Period. *See, e.g.*, *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020) ("we reject at this phase the application of <u>Dura</u> to loss calculation when the complaint alleges multiple partial disclosures"); *see also* ECF No. 1, ¶¶ 39-51 (alleging multiple corrective disclosures beginning on August 26, 2020, and continuing through the end of the Class Period).[5] In fact, Dr. Kodali noted that "courts almost always attribute the most significance to losses,

---

[5] In addition to stock drops in August 2020 and March 2021, the operative complaint alleges additional corrective information emerged in September 2020 and November 2020. *See* ECF No. 1, ¶¶ 42-47. While no stock drops are pled in connection with these additional revelations, it is possible that the further development of the class's claims may result in allegations of recoverable losses—further highlighting the problematic nature of applying *Dura* at the lead plaintiff stage of this litigation. *See Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6.

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

3

particularly where (*as here*) multiple partial disclosures are alleged to have caused the fraud premium to fluctuate throughout the Class Period." ECF No. 45 at 3 (citing *Watchguard* which, as noted above, rejected the application of *Dura* at the lead plaintiff stage). Assessing losses under *Dura* is not warranted here. *See Di Scala*, 2020 WL 7698321, at \*3.

### III.   COURTER ASSERT THE LARGEST *DURA*-COMPLIANT LOSSES

Even if the Court were to apply *Dura* and exclude gains and losses from Class Period shares that were sold prior to pled corrective disclosures (so-called "in-and-out transaction"), Courter would still have the largest financial interest in this litigation:

| **Movant** | **LIFO Losses** | ***Dura*-Compliant Losses**[6] |
|---|---|---|
| *Courter* | *$489,007* | *$471,201* |
| Dr. Kodali | $260,980 | $261,080[7] |

Courter's calculations are confirmed by Kenneth N. Kotz ("Mr. Kotz") who was relied upon by the court in *In re Comverse Technology, Inc. Securities Litigation*—a seminal opinion analyzing *Dura*'s application to lead plaintiff movants' financial interest. No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at \*8 (E.D.N.Y. Mar. 2, 2007) (relying on Mr. Kotz's analysis—which "clearly delineates the losses that [the movants] each suffered, if in-and-out transactions are excluded"— to assess the movants' financial interests under *Dura*). In calculating the movants' *Dura*-compliant losses, Mr. Kotz first matched all Class Period transactions under the LIFO accounting methodology and then removed all "in-and-out transactions" in which shares were purchased and sold: (1) prior to the first corrective event on August 26, 2020; and (2) between the first corrective event on August 26, 2020, and the corrective events on March 8, 2021, and March 9, 2021. *See* Surreply Decl., Ex. B, ¶¶ 2-3.[8] As a result, the only transactions included in the *Dura*-compliant

---

[6] *See* Surreply Decl., Ex. B.

[7] Dr. Kodali's claimed "*Dura*-compliant" losses, ECF No. 45 at 2-3, ***failed to exclude*** her own "in-and-out transactions" on June 29, 2020. *See* ECF No. 24-2 (including purchase and sale of 1,000 shares on June 29, 2020 in total claimed losses).

[8] The movants' *Dura*-compliant losses are identical under the LIFO and (less favored) first-in-first-out ("FIFO") accounting methodologies. *See* Surreply Decl., Ex. B at 1, n.2.

Surreply in Response to July 22, 2021 Order

Case No. 3:21-cv-05190-BHS

Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

4

loss calculations are transactions in which shares purchased during the Class Period were held across a pled corrective disclosure. This approach has been utilized by numerous courts when calculating *Dura*-compliant losses at the lead plaintiff stage. *See, e.g.*, *Ophthotech*, 2018 WL 1307285, at \*5 (excluding in-and-out trades); *Africa v. Jianpu Tech. Inc.*, No. 21-CV-1419 (JMF), 2021 WL 1999467, at \*2 (S.D.N.Y. May 19, 2021) (same). Mr. Kotz's methodology is also consistent with how Dr. Kodali's counsel has previously calculated *Dura*-compliant losses in other cases.[9] The reason why Dr. Kodali never presented Courter's *Dura*-compliant losses here— despite possessing all of the relevant information to easily do so—is clear: Courter possesses the largest financial interest even were the Court to apply *Dura* to Class Period purchases. *See* Surreply Decl., Ex. B, ¶¶ 4, 16 (calculating Courter's and Dr. Kodali's *Dura*-compliant losses). There is no contrary evidence before the Court. *See Mersho*, 2021 WL 3121385, at \*6 (stating that "evidence" is required to rebut movant's status under the PSLRA).

In the end, Dr. Kodali's speculative musing and attempted misdirection are devoid of any actual evidence undermining Courter's dominant financial interest under LIFO and *Dura*. *See id.* To the contrary, the only evidence before the Court confirms that Courter suffered significantly larger losses than Dr. Kodali even if *Dura* is applied to the movants' Class Period transactions. *See* Surreply Decl., Ex. B, ¶¶ 4, 16. Accordingly, Courter respectfully request that the Court grant their motion and deny Dr. Kodali's motion.

Dated: July 30, 2021                                        Respectfully submitted,

                                                            **BYRNES KELLER CROMWELL LLP**

                                                            By: *s/ Bradley S. Keller*
                                                            Bradley S. Keller, WSBA #10665

---

[9] *See, e.g.*, *In re PG&E Corp. Sec. Litig.*, No. 18-cv-3509 (N.D. Cal. filed Aug. 13, 2018), ECF No. 26-2, attached as Exhibit C to the Surreply Decl. (calculating losses using LIFO and excluding gains and losses from in-and-out transactions); *Vigorito v. Health Ins. Innovations, Inc.*, No. 17-cv-6962 (S.D.N.Y. filed Nov. 13, 2017), ECF No. 12-2, attached as Exhibit D to the Surreply Decl. (same); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, No. 17-cv-5761 (S.D.N.Y. filed Sept. 29, 2017), ECF No. 17-2, attached as Exhibit E to the Surreply Decl. (same); *Nguyen v. NewLink Genetics Corp.*, No. 16-cv-3545 (S.D.N.Y. filed July 11, 2016), ECF No. 19-2, attached as Exhibit F to the Surreply Decl. (same).

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206), 622-2522
Email: bkeller@byrneskeller.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
NAUMON A. AMJED (*Pro Hac Vice*)
RYAN T. DEGNAN (*Pro Hac Vice*)
KARISSA J. SAUDER (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Emails: namjed@ktmc.com
            rdegnan@ktmc.com
            ksauder@ktmc.com

*Attorneys for Brian Joe Courter and Courter and
Sons LLC, and Proposed Lead Counsel for the
Class*

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

6

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on the 30th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Bradley S. Keller
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

SURREPLY IN RESPONSE TO JULY 22, 2021 ORDER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

7