The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| BRIAN JOE COURTER, *et al*., | No. 3:21-cv-05190-BHS |
| Plaintiff, | **RECONSIDERATION DECLARATION OF BRADLEY S. KELLER** |
| v. | |
| CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND, | NOTED ON MOTION CALENDAR: September 10, 2021 |
| Defendants. | |

RECONSIDERATION DECLARATION OF BRADLEY S. KELLER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

I, Bradley S. Keller, declare as follows:

1.  I am a member in good standing of the bar of the State of Washington and of this Court. I am a partner at the law firm Byrnes Keller Cromwell LLP. I submit this Reconsideration Declaration in support of Lead Plaintiff Brian Joe Courter and Courter and Sons LLC's Response in Opposition to Dr. Smila Kodali's Motion to Reconsider Order Appointing Lead Plaintiff. Unless otherwise indicated, I have personal knowledge of the facts stated in this Declaration, and if called upon to do so, could and would competently testify thereto.

2.  Attached hereto is a true and correct copy of the following exhibit:

Exhibit A:  Supplemental Declaration of Kenneth N. Kotz.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 7th day of September 2021, at Seattle, Washington.

By: *s/ Bradley S. Keller*
Bradley S. Keller, WSBA #10665
**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206), 622-2522
Email: bkeller@byrneskeller.com

RECONSIDERATION DECLARATION OF BRADLEY S. KELLER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

1

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 7th day of September 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

*s/ Bradley S. Keller*
Bradley S. Keller, WSBA #10665
**BYRNES KELLER CROMWELL LLP**
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206), 622-2522
Email: bkeller@byrneskeller.com

RECONSIDERATION DECLARATION OF BRADLEY S. KELLER

CASE NO. 3:21-CV-05190-BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

2

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| ANGELA LEWIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CYTODYN, INC., NADER Z. POURHASSAN, and MICHAEL MULHOLLAND,<br><br>Defendants. | No. 3:21-cv-05190-BHS |

**SUPPLEMENTAL DECLARATION OF KENNETH N. KOTZ**

I, Kenneth N. Kotz, declare as follows:

1.      I have been retained by Kessler Topaz Meltzer & Check, LLP ("Counsel"). Previously in this action, I submitted a Declaration on July 29, 2021 (the "Kotz Declaration") in which I calculated the approximate market losses during the Class Period (defined herein) for two movants: (i) Brian Joe Courter and Courter and Sons LLC (collectively, "Courter"); and Dr. Smila Kodali ("Dr. Kodali").[1]

2.      For this Supplemental Declaration, Counsel has asked me to calculate Courter's market loss using Last-In-First-Out ("LIFO") share matching and the approach that I used in *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10 Civ. 2835(NRB) (S.D.N.Y.) ("*City of Monroe*").  As noted below, I have calculated that Courter's loss under the LIFO share matching methodology (applying the analysis I used in *City of Monroe*) is $489,007.

3.      My qualifications, compensation and materials reviewed are contained in the Kotz Declaration.  Any additional materials are cited in the text of this Supplemental Declaration.

4.      In my June 28, 2010 Declaration in *City of Monroe* (the "*City of Monroe* Declaration"), attached hereto as Exhibit A, I matched purchases and sales under LIFO (and calculated profits/losses) and discussed another Movant's contention regarding the use of the LIFO share matching methodology.[2]

---

[1] For this calculation, I was asked to exclude market losses (or profits) from in-and-out transactions that were not held over any of the dates on which there are pled stock price declines due to alleged corrective disclosures, consistent with the methodology I used in *In re Comverse Tech., Inc. Securities Litigation*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ("*Comverse*").  The calculated market losses were for the various movants' purchases of the common stock of CytoDyn, Inc. ("CytoDyn") during the period March 27, 2020 through March 9, 2021 (the "Class Period").  *See* Kotz Declaration, ¶1.

[2] *City of Monroe* Declaration, ¶¶1-2.

1

5.    Here, counsel has requested that I provide the same calculation of profits/losses as in the *City of Monroe* Declaration for Courter for all Class Period purchases under LIFO.

6.    In the *City of Monroe* Declaration, the only profit/losses considered are sales matched to Class Period purchases, not to pre-Class Period holdings.  As stated in the *City of Monroe* Declaration (in noting the difference between FIFO and LIFO share matching methodologies):

> Sales matched to pre-Class Period holdings are generally excluded from the loss calculations because pre-Class Period holdings are not eligible to recover damages.  If pre-Class Period matches are excluded from the analysis, FIFO will always exclude at least as many Class Period sales as the LIFO methodology given the existence of pre-Class Period holdings.  Under both methods, though, sales made during the Class Period that occur before any Class Period purchases will necessarily match to pre-Class Period holdings.[3]

7.    Exhibit 3 to the *City of Monroe* Declaration provides the market profit/losses under LIFO and excludes sales matched to pre-Class Period holdings from the calculation.  The difference between the methodology in the *City of Monroe* Declaration and the Kotz Declaration is that for the Kotz Declaration I was asked to apply the *Comverse* methodology that excludes sales matched to purchases that are not held over alleged disclosure dates.[4]

8.    In the Kotz Declaration, I also provided the market profit/losses under LIFO for all Class Period purchases (and consistent with the *City of Monroe* Declaration, excluded sales matched to pre-Class Period holdings).  Specifically, in the table on page 7 of the Kotz

---

[3] *City of Monroe* Declaration, footnote 4.

[4] The *City of Monroe* Declaration specifically noted that I was not asked to provide the market profit/loss using the *Comverse* method: "This calculation is one method of determining approximate loss. I have not been asked to, nor have I attempted to provide, a calculation of approximate loss assuming that shares must be held over an alleged corrective disclosure." *City of Monroe* Declaration, footnote 3.

2

Declaration entitled Summary of Market Losses/(Profits), it not only shows the $471,201 market loss for Courter for shares held over a corrective disclosure (*i.e.*, the *Comverse* method) , but also provides the additional loss (or profit) for all other Class Period purchases (*i.e.*, including the "in-and-out" transactions).  The total market loss for Courter for all Class Period purchases under the *City of Monroe* method (which uses LIFO share matching) is $489,007.[5]  I have included the same table below.

| | Summary of Market Losses/(Profits) | | |
| Movant | Held Over a Corrective Disclosure | In-and-Out | Total with In-and-Out |
|---|---|---|---|
| *Courter* | | | |
| Brian Joe Courter Roth IRA | ($43,628) | $6,047 | ($37,581) |
| Brian Joe Courter IRA | ($241,560) | ($41,534) | ($283,093) |
| Brian Joe Courter | ($2,490) | ($18) | ($2,508) |
| Courter and Sons LLC | ($183,524) | $17,700 | ($165,824) |
| *TOTAL* | *($471,201)* | *($17,805)* | *($489,007)* |
| | | | |
| *Dr. Kodali* | ($261,080) | $100 | ($260,980) |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of September 2021
at Rochester, New York

Kenneth N. Kotz

---

[5] Dr. Kodali has a loss of $260,980 for all Class Period purchases compared to a loss of $261,080 for purchases that were held over a corrective disclosure.

3

# **APPENDIX A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Electronically Filed |
| | Civil Action No. 10 cv 2835 (NRB) |
| Plaintiff, | Hon. Naomi R. Buchwald |
| vs. | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., RAMANI AYER, THOMAS M. MARRA, DAVID M. JOHNSON and LIZABETH H. ZLATKUS, | |
| Defendants. | |

**DECLARATION OF KENNETH N. KOTZ**

I, Kenneth N. Kotz, declare as follows:

1.      I have been retained by Labaton Sucharow LLP and Nix, Patterson and Roach, LLP (collectively, "Counsel"), on behalf of lead plaintiff movant Arkansas Teacher Retirement System ("Arkansas Teacher") to match its purchase and sale transactions in The Hartford Financial Services Group, Inc. ("Hartford") common stock from December 10, 2007 through February 5, 2009, inclusive (the "Class Period").[1]  I have also been asked to match the purchase and sale transactions of lead plaintiff movants Stichting Philips Pensioenfonds ("Stichting") and State Universities Retirement System of Illinois ("Illinois SURS"), and to discuss Stichting and Illinois SURS' contention that the Last-In-First-Out ("LIFO") share-matching methodology cannot be rationally applied to the transactions made by the movants.

2.      The results of the share-matching enable one to calculate "approximate loss suffered during the Class Period," a commonly used measure of financial interest for purposes of lead plaintiff appointment.[2]  In the share-matching results, I have, for informational purposes, calculated profits/losses for Class Period purchases based on the matching sale transactions.[3]

3.      In order to match the purchases and sale transactions of the movants, I have used the "Last-In-First-Out" ("LIFO") and "First-In-First-Out" ("FIFO") share-matching methodologies.  Although the choice of matching methodology is a legal determination, FIFO

---

[1] Counsel has requested that I consider this date range the Class Period.  I also match any transactions made after the end of the Class Period that were provided in the data.

[2] I have not been asked to calculate all four of the "Olsten-Lax" factors.  See, for example, *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); and *In re Comverse Technology Inc. Securities Litigation*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (the "*Comverse* Order").

[3] This calculation is one method of determining approximate loss.  I have not been asked to, nor have I attempted to provide, a calculation of approximate loss assuming that shares must be held over an alleged corrective disclosure.

- 1 -

will generally exclude a greater number of Class Period sales transactions (that occurred at allegedly inflated prices) from a loss analysis for investors with pre-Class Period holdings.[4] Therefore, LIFO will generally yield a loss calculation that includes more Class Period sales transactions that have occurred at allegedly inflated prices.

### QUALIFICATIONS, COMPENSATION, AND MATERIALS REVIEWED

4.      I am a Vice President of Forensic Economics, Inc., located in Rochester, New York. I have been employed by Forensic Economics since 1999.  I have consulted on issues pertaining to financial valuations, financial-economic analysis, and the analysis of stock price reactions to public information in securities fraud lawsuits during this time period.  Forensic Economics has been retained by both plaintiffs and defendants in such securities cases.

5.      I hold an M.S. in Applied Economics (1999) from the University of Rochester's William E. Simon Graduate School of Business Administration.  I hold an M.B.A. in Finance (1996) from the Loyola University Chicago Graduate School of Business, where I also received an Outstanding Student award.  I have co-taught a corporate finance class and served as a research and teaching assistant at the University of Rochester.  I have served as a research assistant to the finance faculty of the Loyola University Chicago Graduate School of Business.  I was awarded the CFA® Charter and the right to use the Chartered Financial Analyst (CFA)® designation as authorized by the CFA Institute in 2006.  My resume is attached to this Declaration as Exhibit 1.

---

[4] Sales matched to pre-Class Period holdings are generally excluded from the loss calculations because pre-Class Period holdings are not eligible to recover damages.  If pre-Class Period matches are excluded from the analysis, FIFO will always exclude at least as many Class Period sales as the LIFO methodology given the existence of pre-Class Period holdings.  Under both methods, though, sales made during the Class Period that occur before any Class Period purchases will necessarily match to pre-Class Period holdings.

6.   My compensation is based on the number of hours worked plus out-of-pocket expenses.  My hourly rate is $275.  I was assisted by employees of Forensic Economics, who worked under my supervision and direction in connection with this assignment.  Forensic Economics, Inc.'s hourly rates for employees range from $145 to $475.

7.   In the course of this assignment, I reviewed, among other things, the certifications and loss charts of Arkansas Teacher, Stichting and Illinois SURS provided by Counsel.  I have attempted to cite in the text of this Declaration or Exhibits specific documents and information on which I relied in my analysis.

## ANALYSIS

**Data**

8.   I first detail the source of the transaction data I used and assumptions that I made in order to perform the analysis.  I reserve the right to amend my analysis pending revisions in either the data or assumptions underlying the analysis.

9.   In general, the data was obtained from each movant's certification, supplied by Counsel.[5]  I rounded all transaction per-share prices to four decimal places, which may create rounding differences with results presented by others.[6]

10.   Exhibit 2 contains the transaction data that I used for my calculations in this Declaration.  I also checked whether the transaction prices listed were within the low and high

---

[5] In addition, a sale made by Stichting after the Class Period in April 2009 was obtained from its loss chart (two-decimal place price used).

[6] Stichting and Illinois SURS presented prices to two decimal places.  Arkansas Teacher presented both prices and transaction amounts to two decimal prices.  For Arkansas Teacher, I used prices based on dividing the transaction amount by the number of shares (rounded to four decimal places).

prices for Hartford's common stock on the trading day. The transaction prices were all within the ranges.

**Share-Matching Analysis**

11. The two most commonly applied share-matching methodologies in lead plaintiff certifications are the LIFO and FIFO methods.

*LIFO Analysis*

12. Under the LIFO method, a sale is matched to the most <u>recent</u> purchase of shares (occurring prior to the sale). For example, if an investor purchased 100 shares at time 1 and again at time 2 (for a total of 200 shares purchased), and subsequently sold 100 shares at time 3, the shares sold at time 3 would be matched to the most recent purchase of shares at time 2. The remaining time 1 purchased shares would be matched to the next sale if no intervening purchase occurs, but if another purchase occurs at time 4, any subsequent sales after time 4 will first be matched to this purchase at time 4, because this new purchase at time 4 will now become the most recent purchase.[7] Purchases unmatched to sales are considered held. Sales are only matched to purchases occurring prior to the sale, *i.e.*, a purchase can only be matched to a subsequent sale – you cannot sell what you have not already bought.[8]

---

[7] As more purchases are made, they will, in turn, become the most recent purchase to be matched against the next sale.

[8] See the *Comverse* Order at *8: "It appears that P & P's new [LIFO] calculation inexplicably matches sales of shares from 2001 with purchases of shares that occurred years later in 2006." Economically, sales should only be matched to purchases occurring later in time if the sale is a "short sale." A short sale is one in which an investor borrows a share from a current share owner, sells that share on the open market, and promises to return the share to the current owner. The short seller therefore first sells a share and then later purchases the share (called "covering the short").

13.     The transaction-by-transaction LIFO matching results for the movants are contained in Exhibit 3.[9]  Exhibit 3 also contains profits/losses for each matched transaction for Class Period purchases.  To calculate losses or gains for shares still held (*i.e.*, based on the data provided they have not yet been sold), I have been asked by Counsel to assume a per-share selling price of approximately $9.11, which is the average closing price of Hartford common stock obtained from Bloomberg over the period February 6, 2009 through May 7, 2009.[10]

*FIFO Analysis*

14.     FIFO is an inventory method wherein a sale is matched to the earliest purchase of shares (occurring prior to the sale).  For example, if an investor purchased 100 shares at time 1 and again at time 2 (for a total of 200 shares purchased), and subsequently sold 100 shares at time 3, the shares sold at time 3 would be matched to the earliest purchase of shares at time 1.  The remaining time 2 purchased shares would be matched to the next sale, because it will now become the earliest purchase, even if more purchases are subsequently made.  Purchases unmatched to sales are considered held.  As with LIFO, sales are only matched to purchases occurring prior to the sale, *i.e.*, a purchase can only be matched to a subsequent sale.

15.     Because FIFO first matches sales to pre-Class Period holdings regardless of whether any purchase has previously occurred during the Class Period, FIFO will generally remove more, but never less, Class Period sales from an analysis that excludes sales matched to pre-Class Period holdings.  When a party has pre-Class Period holdings, the effect of utilizing

---

[9] Because a single sale transaction will not necessarily equal a single purchase transaction, the individual purchase and sale transactions are divided according to the LIFO methodology.  Therefore, a single row in Exhibit 3 will not necessarily match an exact transaction listed in Exhibit 2.  This holds for all share-matching results.

[10] Counsel has requested that I not round this average price.  If rounded, results may be slightly different.

the FIFO method, as opposed to LIFO, will be to possibly exclude from the calculation more shares sold during the Class Period at allegedly inflated prices, and the inflated proceeds from these sales.

16. The transaction-by-transaction FIFO matching results for the movants are contained in Exhibit 4. Exhibit 4 also contains profits/losses for each matched transaction for Class Period purchases. To calculate losses or gains for shares still held (*i.e.*, based on the data provided they have not yet been sold), I have been asked by Counsel to assume a per-share selling price of approximately $9.11, which is the average closing price of Hartford common stock obtained from Bloomberg over the period February 6, 2009 through May 7, 2009.[11]

*Discussion of Stichting and Illinois SURS' Contention that LIFO Cannot Be Rationally Applied*

17. In a letter to the Court dated June 18, 2010 from Stichting and Illinois SURS' Counsel and in a Memorandum of Law filed June 18, 2010, Stichting and Illinois SURS contend that applying LIFO would be "wholly irrational" or "impossible to rationally reconcile" because it would match purchases made at the end of the Class Period with sales made at the start of the Class Period.[12] Stichting and Illinois SURS state: "For example, a pure application of LIFO would require that Arkansas Teachers' most recent purchases on *October 17, 2008* … be offset

---

[11] Counsel has requested that I not round this average price. If rounded, results may be slightly different.

[12] Letter to The Honorable Naomi Reice Buchwald from David A. Rosenfeld, June 18, 2010, p. 2; Memorandum of Law in Further Support of the Motion of Stichting Philips Pensioenfonds and State Universities Retirement System of Illinois for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel and in Opposition to the Competing Motions, June 18, 2010, p. 5.

by its first sales on *March 12, 2008* …. But shares cannot rationally be treated as sold *seven months before they were even purchased*."[13]

18. As described previously, under LIFO, sales should only be matched to the most recent available purchase made prior to the sale. Stichting and Illinois SURS, however, incorrectly apply LIFO and this misapplication leads to their irrational result of sales matching to purchases made after the sale. Under an appropriate application of LIFO, as I provided above, sales are only matched to purchases occurring prior to the sale (absent short selling).

19. A simple analogy may assist in understanding the theory behind the matching algorithms of LIFO and FIFO. Assume that as share purchases are made they are put at the bottom of a vertical conveyor belt. As new purchases are made, the previous purchases move toward the top of the belt.

20. When a sale occurs, it is necessary to match it to a purchase. Under LIFO, one would match to the purchase that is currently at the bottom of the conveyor belt (*i.e.*, the most recent unmatched purchase – the "last-in"). If any shares of this purchase are still not matched, then these remaining purchased shares remain at the bottom of the conveyor belt. If all shares of this purchase are matched, then the purchase directly preceding this purchase is now at the bottom of the conveyor belt. When a new purchase is made, it becomes the purchase at the bottom of the conveyor belt and will get matched first if the next transaction is a sale.

21. The analogy holds for FIFO as well, with the difference being that, under FIFO, when a sale is made it is matched to the purchase at the top of the belt (*i.e.*, the earliest unmatched purchase – the "first-in"). The next oldest purchase than moves to the top of the belt.

---

[13] June 18, 2010 Memorandum, pp. 5-6 (emphasis in original). A similar statement is found in the June 18, 2010 Letter on p. 2.

22. The conveyor belt analogy can also show the fallacy in Stichting and Illinois SURS' misapplication of LIFO, which does not consider the chronological order of all transactions as a group. Instead, Stichting and Illinois SURS' misapplication treats purchases and sales as different groups of transactions, by sorting each group and then matching the earliest of the sale group with the latest of the purchase group. Stichting and Illinois SURS' misapplication first puts all purchases on the conveyor belt, whether or not any sale has occurred between the purchases, and then matches the first sale to the last purchase put on the belt (which purchase could have been made after the sale). Stichting and Illinois SURS' misapplication can thus yield irrational results because it does not account for the chronological order of all transactions, both purchases and sales. The proper application of LIFO (or FIFO) accounts for the chronological order of all transactions and thus yields rational share-matching results.

23. Exhibit 5 contains an illustrative example of the misapplication of LIFO made by Stichting and Illinois SURS. In the example, there are purchases at time 1 and 2, a sale at time 3 and a purchase at time 4. Assume that all transactions are for 1 share. Under FIFO, the sale is matched with the purchase at time 1, the earliest purchase prior to the sale. Under LIFO, the sale is matched with the purchase at time 2, the most recent purchase prior to the sale.

24. Stichting and Illinois SURS misapplication, however, ignores the actual chronological order of all the transactions and matches the sale at time 3 with the purchase at time 4 because it is the last of all the purchases made. This misapplication ignores the fact that the purchase at time 4 would not have been known at the time of sale. If the sale at time 3 had been matched to a purchase when the sale actually occurred, then the only available choices for matching would be the purchases at time 1 and time 2. Thus, what is "irrational" about Stichting

- 8 -

and Illinois SURS' misapplication of LIFO is that it ignores the chronological order of all the transactions, which unsurprisingly creates incorrect and illogical results.

25.    If applied correctly, LIFO will yield rational results.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed this **28** <sup>th</sup> day of June, 2010
at Rochester, New York

_____
Kenneth N. Kotz

# Exhibit 1

Exhibit 1                                                              June 2010

## KENNETH N. KOTZ, CFA

| Business Address: | Home Address: |
|---|---|
| Forensic Economics, Inc. | 85 Coral Way |
| 95 Allens Creek Road | Rochester, New York 14618 |
| Building 2, Suite 303 | (585) 241-3230 |
| Rochester, New York 14618 | |
| (585) 385-7440 | |
| (585) 385-7441 FAX | |
| ken@forensiceconomics.com | |

### Employment and Education

8/99-present    **Forensic Economics, Inc.**, Rochester, NY.
Vice President.  Consulting in financial-economic analysis in securities litigation and business disputes.

6/96-12/99    **M.S. in Applied Economics, Finance and Accounting**, William E. Simon Graduate School of Business Administration, University of Rochester, Rochester, NY.

9/97-12/99    **William E. Simon Graduate School of Business Administration, University of Rochester, Rochester, NY.**
Instructor and Teaching Assistant.

1994-1996    **M.B.A., Finance**, Loyola University Chicago, Chicago, IL.

1994-1996    **Loyola University Chicago**, Chicago, IL.
Research Assistant, Finance Department.

1995-1996    **Financial and Economics Strategies Corporation**, Chicago IL.
Research Assistant.

1991-1994    **Midwest European Publications, Inc.**, Evanston, IL.
Assistant Manager.

1986-1989    **B.A., History**, University of Pennsylvania, Philadelphia, PA.

**Exhibit 1**                                                         **June 2010**

## Publications

Automation versus intermediation: Evidence from treasuries going off the run (with M. Barclay and T. Hendershott), *The Journal of Finance*, vol. 61 no. 5, October 2006, 2395-2414.

## Working Papers

Stock price effects of changes in the accounting procedure set, October 1999.

IPO underpricing, information asymmetry, and dividend policy, June 1999.

Determinants of payout policy choice: Stock repurchases versus dividend initiations, October 1998.

The stock price reaction to shareholder proposals, June 1998.

The investment opportunity set and the stock price reaction to dividend changes, January 1998.

## Awards

Awarded the CFA® Charter and the right to use the Chartered Financial Analyst (CFA)® designation as authorized by the CFA Institute (2006).

Fellowship, William E. Simon Graduate School of Business Administration, University of Rochester (1996-1999).

Outstanding Student Award, Loyola University Chicago (1996).

Phi Beta Kappa, Loyola University Chicago (1996).

Graduate Scholarship, Loyola University Chicago (1994-1996).

## Testimonial and Expert Report Experience

Declaration of Kenneth N. Kotz in <u>Harry Stackhouse et al. vs. Toyota Motor Corporation et al., Tom Mustric et al. vs. Toyota Motor Corporation et al., Kathryn A. Squires et al. vs. Toyota Motor Corporation et al., Robert M. Moss et al. vs. Toyota Motor Corporation et al., Philip Gelenberg et al. vs. Toyota Motor Corporation et al. and L. Patricia Sampoli et al. vs. Toyota Motor Corporation et al.</u> in United States District Court Central District of California, Nos. 2:10-cv-00922-DSF-AJW, 2:10-cv-01429-DSF-AJW, 2:10-cv-01452-DSF-AJW, 2:10-cv-01911-DSF-AJW, 2:10-cv-02196-DSF-AJW, and 2:10-cv-02253-DSF-AJW (April 19, 2010).

**Exhibit 1**                                                    **June 2010**

Affidavit of Kenneth N. Kotz in <u>EBC I, Inc. f/k/a eToys, Inc., by the Post-Effective Date Committee against Goldman, Sachs & Co.</u> in the Supreme Court of the State of New York, County of New York , Index No. 601805/02 (April 14, 2010).

Expert Rebuttal Report of Kenneth N. Kotz in <u>EBC I, Inc. f/k/a eToys, Inc., by the Post-Effective Date Committee against Goldman, Sachs & Co.</u> in the Supreme Court of the State of New York, County of New York , Index No. 601805/02 (February 8, 2010).

Deposition of Kenneth N. Kotz in <u>EBC I, Inc. f/k/a eToys, Inc., by the Post-Effective Date Committee against Goldman, Sachs & Co.</u> in the Supreme Court of the State of New York, County of New York , Index No. 601805/02 (January 7, 2010).

Expert Report of Kenneth N. Kotz in <u>EBC I, Inc. f/k/a eToys, Inc., by the Post-Effective Date Committee against Goldman, Sachs & Co.</u> in the Supreme Court of the State of New York, County of New York , Index No. 601805/02 (October 27, 2009).

Declaration of Kenneth N. Kotz in <u>Aekta Ben Patel et al. vs. Satyam Computer Services Ltd. et al., Hossein Momenzadeh et al. vs. Satyam Computer Services Ltd. et al., Cynthia Freeman vs. Satyam Computer Services Ltd. et al., Naveen Chander Jepu vs. Satyam Computer Services Ltd. et al., Bert H. Sturgis, II et al. vs. Satyam Computer Services Ltd. et al., Larry R. Pennington et al. vs. Satyam Computer Services Ltd. et al., James Hamblin et al. vs. Satyam Computer Services Ltd. et al., Hillel Raymon et al. vs. Satyam Computer Services Ltd. et al., Brian Faber et al. vs. Satyam Computer Services Ltd. et al, Taylor Jamrok et al. vs. Satyam Computer Services Ltd. et al., William M. Hebert et al. vs. Satyam Computer Services Ltd. et al, and Ashit M. Mehta et al., vs Satyam Computer Services Ltd. et al.</u> in the United States District Court Southern District of New York, Civil Action Nos. 1:09-cv-00093-BSJ-DFE, 1:09-cv-00161-CM, 1:09-cv-00330-BSJ, 1:09-cv-00337-BSJ, 1:09-cv-08353-BSJ, 1:09-cv-08488-BSJ, 1:09-cv-08491-VM, 1:09-cv-00512-BSJ, 1:09-cv-00569-LTS, 1:09-cv-00655-BSJ, 1:09-cv-01124-UA, and 1:09-cv-01789-UA (March 26, 2009).

Declaration of Kenneth N. Kotz in <u>Jacksonville Police and Fire Pension Fund et al. v. American International Group, Inc. et al., James Connolly v. American International Group, Inc. et al., Maine Public Employees Retirement System et al. v. American International Group, Inc. et al., and Ontario Teachers' Pension Plan Board et al. v. American International Group, Inc. et al.</u> in the United States District Court Southern District of New York, Civil Action Nos. 08 Civ. 4772 (RJS), 08 Civ. 5072 (RJS), 08 Civ. 5464 (RJS), and 08 Civ. 5560 (RJS) (August 18, 2008).

Supplemental Declaration of Kenneth N. Kotz in <u>Plumbers and Pipefitters Local 51 Pension Fund et al. vs. Darden Restaurants, Inc. et al. and Robert Kalkstein et al. vs. Darden Restaurants, Inc. et al.</u> in the United States District Court Middle District of Florida, Orlando Division, Case Nos. 6:08-CV-00388-PCF-DAB and 6:08-CV-00507-GAP-DAB (June 27, 2008).

**Exhibit 1**                                                      **June 2010**

Declaration of Kenneth N. Kotz in <u>Plumbers and Pipefitters Local 51 Pension Fund et al. vs. Darden Restaurants, Inc. et al. and Robert Kalkstein et al. vs. Darden Restaurants, Inc. et al.</u> in the United States District Court Middle District of Florida, Orlando Division, Case Nos. 6:08-CV-00388-PCF-DAB and 6:08-CV-00507-GAP-DAB (June 19, 2008).

Declaration of Kenneth N. Kotz in <u>Life Enrichment Foundation et al. against Merrill Lynch & Co., Inc. et al., Michael J. Savena et al. against Merrill Lynch & Co., Inc. et al., Gary Kosseff et al. against Merrill Lynch & Co., Inc. et al., Robert R. Garber et al. against Merrill Lynch & Co., Inc. et al., and James Conn et al. against Merrill Lynch & Co., Inc. et al.</u> in the United States District Court Southern District of New York, Civil Action Nos. 07 Civ. 09633 (LBS), 07 Civ. 09837 (LBS), 07 Civ. 10984 (LBS), 07 Civ. 11080 (LBS), and 07 Civ. 11626 (LBS) (January 17, 2008).

Supplemental Declaration of Kenneth N. Kotz in <u>Eugene Kratz vs. Beazer Homes USA, Inc. et al., New Jersey Building Laborers Pension Fund vs. Beazer Homes USA, Inc. et al., and IBEW Local 1579 Pension Plan vs. Beazer Homes USA, Inc. et al.</u> in the United States District Court Southern District of Georgia, Civil Action Nos. 1:07-CV-00725, 1:07-CV-1139 and 1:07-CV-1151 (July 2, 2007).

Declaration of Kenneth N. Kotz in <u>Eugene Kratz vs. Beazer Homes USA, Inc., et al., New Jersey Building Laborers Pension Fund vs. Beazer Homes USA, Inc. et al., and IBEW Local 1579 Pension Plan vs. Beazer Homes USA, Inc., et al.</u> in the United States District Court Southern District of Georgia, Civil Action Nos. 1:07-CV-00725, 1:07-CV-1139 and 1:07-CV-1151 (June 15, 2007).

Declaration of Kenneth N. Kotz in <u>Tully Nadel et al. against Comverse Technology, Inc. et al., David Thomas et al. against Comverse Technology, Inc. et al., and Lance Moore et al. against Comverse Technology, Inc. et al.</u> in the United States District Court Southern District of New York, Civil Action Nos. 06 Civ. 3190 (LAK), 06 Civ. 3445 (LAK) and 06 Civ. 4418 (LAK) (July 6, 2006).

Declaration of Kenneth N. Kotz in <u>Anthony Caiafa et al. against Comverse Technology, Inc. et al. and James M. Gorman et al. against Comverse Technology, Inc. et al.</u> in the United States District Court Eastern District of New York, Civil Action Nos. 06 CV 1825 (NGG) and 06 CV2738 (NGG) (July 6, 2006).

Exhibit 2

**Exhibit 2**
**Transaction Data**

| Movant | Trade Date | Transaction Type | Shares | Share Balance | Price per Share | (Costs)/ Proceeds | Low | High | In Range? |
|---|---|---|---|---|---|---|---|---|---|
| *Arkansas Teacher Retirement System* | | | | | | | | | |
| | Open | Open | 51,000 | 51,000 | | | | | |
| | 12/27/2007 | Purchase | 32,000 | 83,000 | $88.6163 | ($2,835,721.60) | $87.46 | $89.35 | Y |
| | 3/12/2008 | Sale | 12,200 | 70,800 | $70.4626 | $859,643.72 | $69.63 | $71.57 | Y |
| | 3/12/2008 | Sale | 100 | 70,700 | $69.8700 | $6,987.00 | $69.63 | $71.57 | Y |
| | 6/25/2008 | Sale | 51,000 | 19,700 | $69.4004 | $3,539,420.40 | $68.41 | $70.00 | Y |
| | 9/12/2008 | Purchase | 11,238 | 30,938 | $60.7009 | ($682,156.71) | $59.63 | $61.79 | Y |
| | 9/12/2008 | Purchase | 40,162 | 71,100 | $60.9578 | ($2,448,187.16) | $59.63 | $61.79 | Y |
| | 9/19/2008 | Purchase | 5,214 | 76,314 | $61.3356 | ($319,803.82) | $59.84 | $72.29 | Y |
| | 9/19/2008 | Purchase | 46,186 | 122,500 | $61.2475 | ($2,828,777.04) | $59.84 | $72.29 | Y |
| | 9/30/2008 | Purchase | 54,477 | 176,977 | $37.3286 | ($2,033,550.14) | $31.26 | $51.25 | Y |
| | 9/30/2008 | Purchase | 3,768 | 180,745 | $37.8590 | ($142,652.71) | $31.26 | $51.25 | Y |
| | 9/30/2008 | Purchase | 11,110 | 191,855 | $38.9766 | ($433,030.03) | $31.26 | $51.25 | Y |
| | 10/1/2008 | Purchase | 1,845 | 193,700 | $36.0034 | ($66,426.28) | $34.72 | $40.01 | Y |
| | 10/9/2008 | Sale | 15,900 | 177,800 | $22.8960 | $364,046.40 | $20.11 | $27.81 | Y |
| | 10/17/2008 | Purchase | 5,969 | 183,769 | $28.4850 | ($170,026.97) | $26.00 | $31.83 | Y |
| | 10/17/2008 | Purchase | 39,031 | 222,800 | $29.6670 | ($1,157,932.68) | $26.00 | $31.83 | Y |
| | 4/20/2009 | Sale | 50,700 | 172,100 | $9.3299 | $473,025.93 | $9.10 | $10.99 | Y |
| | 4/21/2009 | Sale | 36,576 | 135,524 | $9.9243 | $362,991.20 | $8.56 | $10.30 | Y |
| | 4/22/2009 | Sale | 40,538 | 94,986 | $9.9505 | $403,373.37 | $9.39 | $10.26 | Y |
| | 4/23/2009 | Sale | 75,286 | 19,700 | $9.7217 | $731,907.91 | $9.34 | $10.25 | Y |
| | Held | Held | 19,700 | 0 | | | | | |
| | | | | | | | | | |
| *State Universities Retirement System of Illinois* | | | | | | | | | |
| | Open | Open | 67,945 | 67,945 | | | | | |
| | 12/12/2007 | Purchase | 3,520 | 71,465 | $89.6600 | ($315,603.20) | $88.79 | $93.23 | Y |
| | 12/21/2007 | Purchase | 110 | 71,575 | $88.3000 | ($9,713.00) | $87.76 | $89.59 | Y |
| | 1/29/2008 | Purchase | 600 | 72,175 | $79.1100 | ($47,466.00) | $78.01 | $79.65 | Y |
| | 2/1/2008 | Purchase | 4,500 | 76,675 | $80.7700 | ($363,465.00) | $80.53 | $82.24 | Y |
| | 2/1/2008 | Purchase | 12,600 | 89,275 | $80.7700 | ($1,017,702.00) | $80.53 | $82.24 | Y |
| | 2/5/2008 | Sale | 17,100 | 72,175 | $78.4700 | $1,341,837.00 | $77.34 | $79.42 | Y |
| | 2/8/2008 | Purchase | 32,200 | 104,375 | $74.3900 | ($2,395,358.00) | $73.90 | $76.54 | Y |
| | 3/10/2008 | Purchase | 3,060 | 107,435 | $66.5700 | ($203,704.20) | $66.42 | $68.54 | Y |
| | 3/14/2008 | Purchase | 100 | 107,535 | $67.1300 | ($6,713.00) | $66.35 | $69.88 | Y |
| | 3/14/2008 | Purchase | 2,100 | 109,635 | $67.1000 | ($140,910.00) | $66.35 | $69.88 | Y |
| | 3/17/2008 | Purchase | 300 | 109,935 | $66.2100 | ($19,863.00) | $63.98 | $67.25 | Y |
| | 3/31/2008 | Purchase | 2,000 | 111,935 | $75.5100 | ($151,020.00) | $74.10 | $76.20 | Y |
| | 4/1/2008 | Purchase | 400 | 112,335 | $78.0300 | ($31,212.00) | $76.93 | $79.17 | Y |
| | 5/7/2008 | Purchase | 100 | 112,435 | $70.8000 | ($7,080.00) | $69.67 | $72.75 | Y |
| | 7/28/2008 | Sale | 1,600 | 110,835 | $60.5600 | $96,896.00 | $58.10 | $61.75 | Y |
| | 8/20/2008 | Sale | 6,500 | 104,335 | $61.1500 | $397,475.00 | $59.55 | $61.43 | Y |
| | 9/17/2008 | Purchase | 880 | 105,215 | $56.1100 | ($49,376.80) | $51.36 | $57.65 | Y |
| | 9/19/2008 | Sale | 1,400 | 103,815 | $63.1500 | $88,410.00 | $59.84 | $72.29 | Y |
| | 9/24/2008 | Sale | 1,800 | 102,015 | $52.5600 | $94,608.00 | $51.22 | $56.45 | In |
| | 9/25/2008 | Sale | 1,700 | 100,315 | $52.7100 | $89,607.00 | $50.70 | $56.62 | Y |
| | 9/30/2008 | Purchase | 500 | 100,815 | $34.9500 | ($17,475.00) | $31.26 | $51.25 | Y |
| | 10/30/2008 | Sale | 3,260 | 97,555 | $9.2600 | $30,187.60 | $8.23 | $17.79 | Y |
| | 11/3/2008 | Purchase | 6,989 | 104,544 | $14.6000 | ($102,039.40) | $11.30 | $16.84 | Y |
| | 11/20/2008 | Purchase | 4,400 | 108,944 | $5.6600 | ($24,904.00) | $5.50 | $6.82 | Y |
| | 1/5/2009 | Purchase | 5,294 | 114,238 | $17.2400 | ($91,268.56) | $16.22 | $18.12 | Y |
| | 1/6/2009 | Purchase | 10 | 114,248 | $18.3000 | ($183.00) | $17.51 | $19.91 | Y |
| | 2/3/2009 | Purchase | 2,700 | 116,948 | $14.7800 | ($39,906.00) | $14.29 | $15.84 | Y |
| | Held | Held | 116,948 | 0 | | | | | |
| | | | | | | | | | |
| *Stichting Philips Pensioenfonds* | | | | | | | | | |
| | Open | Open | 40,000 | 40,000 | | | | | |
| | 6/12/2008 | Purchase | 21,600 | 61,600 | $72.4600 | ($1,565,136.00) | $70.87 | $73.51 | Y |
| | 6/24/2008 | Purchase | 43,400 | 105,000 | $69.0000 | ($2,994,600.00) | $68.41 | $69.89 | Y |
| | 7/31/2008 | Purchase | 38,500 | 143,500 | $63.4000 | ($2,440,900.00) | $62.24 | $64.18 | Y |
| | 8/21/2008 | Purchase | 1,600 | 145,100 | $60.1500 | ($96,240.00) | $59.28 | $60.44 | Y |
| | 8/21/2008 | Purchase | 37,900 | 183,000 | $59.8600 | ($2,268,694.00) | $59.28 | $60.44 | Y |
| | 9/10/2008 | Sale | 44,900 | 138,100 | $61.4700 | $2,760,003.00 | $61.30 | $63.49 | Y |
| | 4/9/2009 | Sale | 55,900 | 82,200 | $10.4200 | $582,478.00 | $9.92 | $10.81 | Y |
| | Held | Held | 82,200 | 0 | | | | | |

**Notes:**

Transaction data sources: movant lead plaintiff certifications and loss charts.

Low and High are low price and high price on date obtained from Bloomberg LLP

In Range? is "Y" if Price per Share is within Low and High price range, otherwise "NO."

FORENSIC ECONOMICS, INC.

# Exhibit 3

**Exhibit 3**
**LIFO Matching Results**

| Movant | Purchase Date | Purchase Price | Sale Date | Sale Price | Shares | (Loss)/ Profit |
|---|---|---|---|---|---|---|
| *Arkansas Teacher Retirement System* | | | | | | |
| | OPEN | --- | 6/25/2008 | $69.4004 | 31,300 | --- |
| | OPEN | --- | HELD | $9.1086 | 19,700 | --- |
| | 12/27/2007 | $88.6163 | 3/12/2008 | $70.4626 | 12,200 | ($221,475.14) |
| | 12/27/2007 | $88.6163 | 3/12/2008 | $69.8700 | 100 | ($1,874.63) |
| | 12/27/2007 | $88.6163 | 6/25/2008 | $69.4004 | 19,700 | ($378,553.23) |
| | 9/12/2008 | $60.7009 | 4/23/2009 | $9.7217 | 11,238 | ($572,904.25) |
| | 9/12/2008 | $60.9578 | 4/23/2009 | $9.7217 | 40,162 | ($2,057,744.25) |
| | 9/19/2008 | $61.2475 | 4/22/2009 | $9.9505 | 27,514 | ($1,411,385.66) |
| | 9/19/2008 | $61.3356 | 4/23/2009 | $9.7217 | 5,214 | ($269,114.87) |
| | 9/19/2008 | $61.2475 | 4/23/2009 | $9.7217 | 18,672 | ($962,089.74) |
| | 9/30/2008 | $37.8590 | 10/9/2008 | $22.8960 | 2,945 | ($44,066.04) |
| | 9/30/2008 | $38.9766 | 10/9/2008 | $22.8960 | 11,110 | ($178,655.47) |
| | 9/30/2008 | $37.3286 | 4/20/2009 | $9.3299 | 4,877 | ($136,549.66) |
| | 9/30/2008 | $37.8590 | 4/20/2009 | $9.3299 | 823 | ($23,479.45) |
| | 9/30/2008 | $37.3286 | 4/21/2009 | $9.9243 | 36,576 | ($1,002,339.68) |
| | 9/30/2008 | $37.3286 | 4/22/2009 | $9.9505 | 13,024 | ($356,572.37) |
| | 10/1/2008 | $36.0034 | 10/9/2008 | $22.8960 | 1,845 | ($24,183.16) |
| | 10/17/2008 | $28.4850 | 4/20/2009 | $9.3299 | 5,969 | ($114,336.80) |
| | 10/17/2008 | $29.6670 | 4/20/2009 | $9.3299 | 39,031 | ($793,777.35) |
| TOTAL | | | | | | ($8,549,101.74) |
| | | | | | | |
| *State Universities Retirement System of Illinois* | | | | | | |
| | OPEN | --- | HELD | $9.1086 | 67,945 | --- |
| | 12/12/2007 | $89.6600 | HELD | $9.1086 | 3,520 | ($283,541.03) |
| | 12/21/2007 | $88.3000 | HELD | $9.1086 | 110 | ($8,711.06) |
| | 1/29/2008 | $79.1100 | HELD | $9.1086 | 600 | ($42,000.86) |
| | 2/1/2008 | $80.7700 | 2/5/2008 | $78.4700 | 4,500 | ($10,350.00) |
| | 2/1/2008 | $80.7700 | 2/5/2008 | $78.4700 | 12,600 | ($28,980.00) |
| | 2/8/2008 | $74.3900 | 8/20/2008 | $61.1500 | 40 | ($529.60) |
| | 2/8/2008 | $74.3900 | 9/19/2008 | $63.1500 | 520 | ($5,844.80) |
| | 2/8/2008 | $74.3900 | 9/24/2008 | $52.5600 | 1,800 | ($39,294.00) |
| | 2/8/2008 | $74.3900 | 9/25/2008 | $52.7100 | 1,700 | ($36,856.00) |
| | 2/8/2008 | $74.3900 | 10/30/2008 | $9.2600 | 2,760 | ($179,758.80) |
| | 2/8/2008 | $74.3900 | HELD | $9.1086 | 25,380 | ($1,656,842.66) |
| | 3/10/2008 | $66.5700 | 8/20/2008 | $61.1500 | 3,060 | ($16,585.20) |
| | 3/14/2008 | $67.1300 | 8/20/2008 | $61.1500 | 100 | ($598.00) |
| | 3/14/2008 | $67.1000 | 8/20/2008 | $61.1500 | 2,100 | ($12,495.00) |
| | 3/17/2008 | $66.2100 | 8/20/2008 | $61.1500 | 300 | ($1,518.00) |
| | 3/31/2008 | $75.5100 | 7/28/2008 | $60.5600 | 1,100 | ($16,445.00) |
| | 3/31/2008 | $75.5100 | 8/20/2008 | $61.1500 | 900 | ($12,924.00) |
| | 4/1/2008 | $78.0300 | 7/28/2008 | $60.5600 | 400 | ($6,988.00) |
| | 5/7/2008 | $70.8000 | 7/28/2008 | $60.5600 | 100 | ($1,024.00) |
| | 9/17/2008 | $56.1100 | 9/19/2008 | $63.1500 | 880 | $6,195.20 |
| | 9/30/2008 | $34.9500 | 10/30/2008 | $9.2600 | 500 | ($12,845.00) |
| | 11/3/2008 | $14.6000 | HELD | $9.1086 | 6,989 | ($38,379.59) |
| | 11/20/2008 | $5.6600 | HELD | $9.1086 | 4,400 | $15,173.71 |
| | 1/5/2009 | $17.2400 | HELD | $9.1086 | 5,294 | ($43,047.78) |
| | 1/6/2009 | $18.3000 | HELD | $9.1086 | 10 | ($91.91) |
| | 2/3/2009 | $14.7800 | HELD | $9.1086 | 2,700 | ($15,312.86) |
| TOTAL | | | | | | ($2,449,594.23) |
| | | | | | | |
| *Stichting Philips Pensioenfonds* | | | | | | |
| | OPEN | --- | HELD | $9.1086 | 40,000 | --- |
| | 6/12/2008 | $72.4600 | HELD | $9.1086 | 21,600 | ($1,368,390.86) |
| | 6/24/2008 | $69.0000 | 4/9/2009 | $10.4200 | 22,800 | ($1,335,624.00) |
| | 6/24/2008 | $69.0000 | HELD | $9.1086 | 20,600 | ($1,233,763.43) |
| | 7/31/2008 | $63.4000 | 9/10/2008 | $61.4700 | 5,400 | ($10,422.00) |
| | 7/31/2008 | $63.4000 | 4/9/2009 | $10.4200 | 33,100 | ($1,753,638.00) |
| | 8/21/2008 | $60.1500 | 9/10/2008 | $61.4700 | 1,600 | $2,112.00 |
| | 8/21/2008 | $59.8600 | 9/10/2008 | $61.4700 | 37,900 | $61,019.00 |
| TOTAL | | | | | | ($5,638,707.29) |
| | | | | | | |
| *State Universities Retirement System of Illinois & Stichting Philips Pensioenfonds* | | | | | | |
| TOTAL | | | | | | ($8,088,301.52) |

**Notes:**

Results of the Last-In-First-Out ("LIFO") matching of the transactions in Exhibit 2.

(Loss)/Profit not calculated on opening balances.

Shares held treated as selling at approximately $9.1086 per share.

   (average of closing prices over period 2/6/09-5/7/09 obtained from Bloomberg LLP).

Exhibit 4

**Exhibit 4**
**FIFO Matching Results**

| Movant | Purchase Date | Purchase Price | Sale Date | Sale Price | Shares | (Loss)/ Profit |
|---|---|---|---|---|---|---|
| *Arkansas Teacher Retirement System* | | | | | | |
| | OPEN | --- | 3/12/2008 | $70.4626 | 12,200 | --- |
| | OPEN | --- | 3/12/2008 | $69.8700 | 100 | --- |
| | OPEN | --- | 6/25/2008 | $69.4004 | 38,700 | --- |
| | 12/27/2007 | $88.6163 | 6/25/2008 | $69.4004 | 12,300 | ($236,355.57) |
| | 12/27/2007 | $88.6163 | 10/9/2008 | $22.8960 | 15,900 | ($1,044,952.77) |
| | 12/27/2007 | $88.6163 | 4/20/2009 | $9.3299 | 3,800 | ($301,288.32) |
| | 9/12/2008 | $60.7009 | 4/20/2009 | $9.3299 | 11,238 | ($577,307.30) |
| | 9/12/2008 | $60.9578 | 4/20/2009 | $9.3299 | 35,662 | ($1,841,154.17) |
| | 9/12/2008 | $60.9578 | 4/21/2009 | $9.9243 | 4,500 | ($229,650.75) |
| | 9/19/2008 | $61.3356 | 4/21/2009 | $9.9243 | 5,214 | ($268,058.52) |
| | 9/19/2008 | $61.2475 | 4/21/2009 | $9.9243 | 26,862 | ($1,378,643.80) |
| | 9/19/2008 | $61.2475 | 4/22/2009 | $9.9505 | 19,324 | ($991,263.23) |
| | 9/30/2008 | $37.3286 | 4/22/2009 | $9.9505 | 21,214 | ($580,799.01) |
| | 9/30/2008 | $37.3286 | 4/23/2009 | $9.7217 | 33,263 | ($918,288.31) |
| | 9/30/2008 | $37.8590 | 4/23/2009 | $9.7217 | 3,768 | ($106,021.35) |
| | 9/30/2008 | $38.9766 | 4/23/2009 | $9.7217 | 11,110 | ($325,021.94) |
| | 10/1/2008 | $36.0034 | 4/23/2009 | $9.7217 | 1,845 | ($48,489.74) |
| | 10/17/2008 | $28.4850 | 4/23/2009 | $9.7217 | 5,969 | ($111,998.14) |
| | 10/17/2008 | $29.6670 | 4/23/2009 | $9.7217 | 19,331 | ($385,562.59) |
| | 10/17/2008 | $29.6670 | HELD | $9.1086 | 19,700 | ($405,001.04) |
| TOTAL | | | | | | ($9,749,856.56) |
| | | | | | | |
| *State Universities Retirement System of Illinois* | | | | | | |
| | OPEN | --- | 2/5/2008 | $78.4700 | 17,100 | --- |
| | OPEN | --- | 7/28/2008 | $60.5600 | 1,600 | --- |
| | OPEN | --- | 8/20/2008 | $61.1500 | 6,500 | --- |
| | OPEN | --- | 9/19/2008 | $63.1500 | 1,400 | --- |
| | OPEN | --- | 9/24/2008 | $52.5600 | 1,800 | --- |
| | OPEN | --- | 9/25/2008 | $52.7100 | 1,700 | --- |
| | OPEN | --- | 10/30/2008 | $9.2600 | 3,260 | --- |
| | OPEN | --- | HELD | $9.1086 | 34,585 | --- |
| | 12/12/2007 | $89.6600 | HELD | $9.1086 | 3,520 | ($283,541.03) |
| | 12/21/2007 | $88.3000 | HELD | $9.1086 | 110 | ($8,711.06) |
| | 1/29/2008 | $79.1100 | HELD | $9.1086 | 600 | ($42,000.86) |
| | 2/1/2008 | $80.7700 | HELD | $9.1086 | 4,500 | ($322,476.43) |
| | 2/1/2008 | $80.7700 | HELD | $9.1086 | 12,600 | ($902,934.00) |
| | 2/8/2008 | $74.3900 | HELD | $9.1086 | 32,200 | ($2,102,062.00) |
| | 3/10/2008 | $66.5700 | HELD | $9.1086 | 3,060 | ($175,831.97) |
| | 3/14/2008 | $67.1300 | HELD | $9.1086 | 100 | ($5,802.14) |
| | 3/14/2008 | $67.1000 | HELD | $9.1086 | 2,100 | ($121,782.00) |
| | 3/17/2008 | $66.2100 | HELD | $9.1086 | 300 | ($17,130.43) |
| | 3/31/2008 | $75.5100 | HELD | $9.1086 | 2,000 | ($132,802.86) |
| | 4/1/2008 | $78.0300 | HELD | $9.1086 | 400 | ($27,568.57) |
| | 5/7/2008 | $70.8000 | HELD | $9.1086 | 100 | ($6,169.14) |
| | 9/17/2008 | $56.1100 | HELD | $9.1086 | 880 | ($41,361.26) |
| | 9/30/2008 | $34.9500 | HELD | $9.1086 | 500 | ($12,920.71) |
| | 11/3/2008 | $14.6000 | HELD | $9.1086 | 6,989 | ($38,379.59) |
| | 11/20/2008 | $5.6600 | HELD | $9.1086 | 4,400 | $15,173.71 |
| | 1/5/2009 | $17.2400 | HELD | $9.1086 | 5,294 | ($43,047.78) |
| | 1/6/2009 | $18.3000 | HELD | $9.1086 | 10 | ($91.91) |
| | 2/3/2009 | $14.7800 | HELD | $9.1086 | 2,700 | ($15,312.86) |
| TOTAL | | | | | | ($4,284,752.89) |
| | | | | | | |
| *Stichting Philips Pensioenfonds* | | | | | | |
| | OPEN | --- | 9/10/2008 | $61.4700 | 40,000 | --- |
| | 6/12/2008 | $72.4600 | 9/10/2008 | $61.4700 | 4,900 | ($53,851.00) |
| | 6/12/2008 | $72.4600 | 4/9/2009 | $10.4200 | 16,700 | ($1,036,068.00) |
| | 6/24/2008 | $69.0000 | 4/9/2009 | $10.4200 | 39,200 | ($2,296,336.00) |
| | 6/24/2008 | $69.0000 | HELD | $9.1086 | 4,200 | ($251,544.00) |
| | 7/31/2008 | $63.4000 | HELD | $9.1086 | 38,500 | ($2,090,220.00) |
| | 8/21/2008 | $60.1500 | HELD | $9.1086 | 1,600 | ($81,666.29) |
| | 8/21/2008 | $59.8600 | HELD | $9.1086 | 37,900 | ($1,923,479.14) |
| TOTAL | | | | | | ($7,733,164.43) |

*State Universities Retirement System of Illinois & Stichting Philips Pensioenfonds*

| | | | | | | |
|---|---|---|---|---|---|---|
| TOTAL | | | | | | ($12,017,917.32) |

**Notes:**

Results of the First-In-First-Out ("FIFO") matching of the transactions in Exhibit 2.

(Loss)/Profit not calculated on opening balances.

Shares held treated as selling at approximately $9.1086 per share.

  (average of closing prices over period 2/6/09-5/7/09 obtained from Bloomberg LLP).

FORENSIC ECONOMICS, INC.

# Exhibit 5

**Exhibit 5**
**Example of Share-Matching Methodologies**



Assume each transaction is for 1 share.

Under FIFO, the sale is matched to the earliest unmatched purchase.

Under LIFO, the sale is matched to the most recent unmatched purchase
    made prior to the sale.

Under Stichting/Illinois SURS' misapplication of LIFO, the sale is matched to
    the latest purchase, regardless of whether it occurred before or after the sale.

FORENSIC ECONOMICS, INC.