The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

BRIAN JOE COURTER, et al.,

                       Plaintiff,

          v.

CYTODYN, INC, et al.

                    Defendants.

Case No. C21-cv-05190-BHS

**DR. KODALI'S REPLY IN FURTHER SUPPORT OF HER MOTION TO RECONSIDER ORDER APPOINTING LEAD PLAINTIFF**

NOTE ON MOTION CALENDAR: **September 10, 2021**

KODALI REPLY IFSO MTN TO RECONSIDER
CASE NO. C21-cv-5190-BHS

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

On August 26, 2021, the Court requested responsive briefing on Dr. Kodali's Motion for Reconsideration pursuant to W.D. Wash. LCR 7(h)(3) to determine whether the Court erred "by ignoring Courter's windfall gains during the Class Period[.]" ECF 67 at 1; *id*. at 1-2. The Court's decision to order a response is consistent with binding Ninth Circuit precedent requiring district courts to independently "calculate" which proposed lead plaintiff suffered the largest financial interest. *See Mersho v. U.S. Dist. Court*, 2021 U.S. App. LEXIS 21887, at *11 (9th Cir. 2021) ("[T]he district court must identify which movant has the largest alleged losses[.]"); *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("[T]he district court must calculate each potential lead plaintiff's financial interest in the litigation.").[1]

Indeed, the Ninth Circuit holds that a "straightforward application of the statutory scheme [under the PSLRA] provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, 306 F.3d at 732. Under these standards, Dr. Kodali's Motion for Reconsideration should be granted, and she should be selected as lead plaintiff because, simply, she suffered the largest loss. *See Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) (court "mistakenly misconstrued those figures to reach my decision."). Courter's counsel, of course, opposes reconsideration, strenuously seeking to avoid a "consistent[]" accounting of his actual losses by relying on a mix of blunderbuss and *ad hominem* attacks on Dr. Kodali and her counsel.[2] *See Cavanaugh*, 306 F.3d at 730 n.4.

But none of Courter's continued efforts to complicate these proceedings should alter the now undisputed fact that Courter's $196,450 LIFO loss is smaller than Dr. Kodali's $260,000 LIFO loss. *See* ECF 65 at 10, citing ECF 51 at n.5; *see also* ECF 70, Ex. A, Supplemental Declaration of Kenneth E. Kotz ("Supplemental Kotz Decl.") at ¶ 8.[3] Dr. Kodali's expert forensic accountant, Greg Regan

---

[1]     All emphasis added and internal citations are omitted unless otherwise indicated.

[2]     Courter references previous motions for reconsideration filed by Dr. Kodali's counsel in other cases that sought to protect their clients' interests pursuant to local rule. Of the dozens of lead plaintiff motions and cases where counsel has successfully pursued securities cases, they point to three such motions. Their attempt to discredit counsel in this regard is meant to distract the Court from the only relevant issue here – namely, a proper accounting of Courter's windfall gains under the PSLRA.

[3]     The declaration submitted by Mr. Kotz (filed at ECF 64, Ex. B) is referred to herein as "Kotz Decl."

KODALI REPLY IFSO MTN TO RECONSIDER            1
CASE NO. C21-cv-5190-BHS

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

CPA/CFF, MBA of Hemming Morse, now also confirms this economic reality.[4] *See also* Declaration of Greg Regan at ¶¶ 8-9 ("Regan Decl.") (attached to the Declaration of Roger Townsend ("Townsend Decl."), submitted herewith, as Ex. A). Because these facts are undisputed, the only question before the Court (as set forth in its Order) is—should Courter have accounted for his windfall LIFO gains from selling his pre-Class Period holdings at artificially inflated prices? The answer is yes.

Gains incurred from the sale of pre-Class Period holdings during the Class Period must be accounted for. Courter's argument that doing so is a "fringe" approach contradicts long settled and binding Ninth Circuit law and common sense. Accounting for windfall LIFO gains is consistent with the appropriate measure of damages under the Exchange Act of 1934 as articulated by the Ninth Circuit long ago in the seminal *Blackie* decision. *See Ferreira v. Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *18 (C.D. Cal. 2020) (quoting *Blackie v. Barrack*, 524 F.2d 891, 908-09 (9th Cir. 1975) ("[E]ach purchaser recovers the difference between the inflated price paid and the value received . . . . If the stock is resold at an inflated price, the purchaser-seller's damages, limited by § 28(a) of the Act, 15 U.S.C. § 78bb(a) to 'actual damages,' ***must be diminished*** by the inflation he recovers from his purchaser.")). *Funko*, the only in-Circuit decision on all fours here, correctly held that the Ninth Circuit favors offsetting losses with windfall Class Period gains. Indeed, "[t]he greatest error [here] is . . . [Courter's] failure to offset [his] claimed loss ***with gains*** for [CytoDyn] securities purchased ***before*** the Class Period and sold ***during*** the Class Period." *Id.*

Though Courter criticizes Dr. Kodali for relying on "non-binding, out-of-***District*** trial court opinions" (*see* ECF 69 at 1), he nevertheless relies exclusively on out-of-***Circuit*** and inapposite authorities that do not directly address the issues presented here.[5] Dr. Kodali by contrast relies on

---

[4]    Mr. Regan is, *inter alia*, a member of the American Institute of Certified Public Accountants' ("AICPA") Forensic and Valuation Services Executive Committee. *See* Regan Decl. at ¶¶ 2-5.

[5]    For example, in *Foley v. Transocean Ltd.*, the accuracy of calculated LIFO losses was never challenged, as it is here. 272 F.R.D. 126, 129 (S.D.N.Y. 2011) ("Applying LIFO, ***it is undisputed*** that Danica's losses are approximately $3.733 million."). Similarly, *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*, ultimately settled a "LIFO versus FIFO" debate by concluding that the same movant should be appointed lead plaintiff under ***either*** method. 269 F.R.D. 291, 296 (S.D.N.Y. 2010) ("***regardless of the methodology for loss calculation applied***, Arkansas Teacher has the greatest individual loss . . . and is the presumptive lead plaintiff."). Neither case directly confronts whether windfall LIFO gains from selling pre-Class Period holdings should be considered—although both articulate that LIFO's main advantage is that it does not exaggerate losses by considering gains on sales. *See also* Regan Decl. at ¶ 10 ("The objective of this type

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Funko*, 2020 U.S. Dist. LEXIS 106515, which is the ***only*** in-Circuit opinion squarely addressing the windfall LIFO gains issue presented here based on binding Ninth Circuit authority. Further, he urges the Court to overlook the windfall gains he derived from selling a vast number of shares at artificially inflated prices—sometimes on the same day that Defendants made their misleading statements. *Compare* ECF 46-3 (sale of 100,000 shares on March 27, 2020) *with Lewis* Complaint at ¶ 20 (alleging materially misleading statements which inflated the Company's share price on the same day Courter sold 100,000 shares). Adopting Courter's approach constituted error. *See Port of Tacoma v. Todd Shipyards Corp.*, 2009 U.S. Dist. LEXIS 5884, at *8-9 (W.D. Wash. 2009) (Settle, J.).

Courter and his counsel continue to strenuously argue that the LIFO method focuses on Class Period transactions but simultaneously ask the Court to ignore his Class Period sales of pre-Class Period purchases. ECF 69 at 6. LIFO requires that the Court account for the economic reality where, as here, a proposed lead plaintiff's earliest Class Period transactions are ***sales*** rather than purchases. *See, e.g.,* ECF 46-3. As explained by the court in *Mednax*, "[t]he net gain from the sale during a class period of shares acquired prior to a class period can be relevant when assessing the amount of alleged losses among competing potential lead plaintiffs." *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *13-14 (S.D. Fla. 2018); Regan Decl. at ¶¶ 8-12.

Similarly, in *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262 (S.D.N.Y. 2009), the court was faced with a proposed lead plaintiff who—like Courter—bought shares prior to the class period but then later sold them at a profit during the class period. *Id.* at 265-67. Unlike Courter, however, that lead plaintiff ultimately acknowledged that the net gain from those sales should offset the amount he lost from selling the other shares he bought during the class period. *Id.* at 266. The court described this approach as the "most accurate and realistic way to account for the gain realized from the [sale of the pre-class period holdings]." *Id*. at 266; *see also In re NPS Pharms., Inc.*, 2006 U.S. Dist. LEXIS 87231, at *7 (D. Utah 2006) (rejecting argument that cost basis of shares held prior to class period should be ignored). Courts directly addressing this question uniformly hold that windfall ***gains*** from such

---

of analysis is to avoid exaggeration of losses."). Further, on both out-of-Circuit cases Courter relies on, the appointed lead plaintiffs' first class period transactions were purchases not, as with Courter here, ***sales*** at artificially inflated prices.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

transactions should be considered when determining which movant suffered the largest loss. *See id*. The Court should adopt that same accurate and realistic approach here.

Of course, if those transactions had resulted in losses instead of gains, it is settled law that *losses* on pre-Class Period holdings are not recoverable because there was no reliance on the fraud when the initial purchase was made, and thus no recovery is permitted for those losses. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). The federal securities laws' purpose is "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Id.* Consistent with this reality-based notion of causation and damages, windfall LIFO gains can and should be considered when measuring which movant has the "largest financial interest." *See Funko*, 2020 U.S. Dist. LEXIS 106515, at *18 (quoting *Blackie v. Barrack*, 524 F.2d 891, 908-09 (9th Cir. 1975)). Courter is incorrect to suggest otherwise.[6]

The Kotz Declarations engage in the same sleight of hand, articulating some purported *general* rule that losses on pre-class period holdings are not recoverable. *See, e.g.,* Supplemental Kotz Decl. at ¶ 6 ("Sales matched to pre-Class Period holdings are generally excluded from the *loss calculations* because pre-Class Period holdings are not eligible to recover damages."); *see also* Kotz Decl. at ¶ 13 ("This is generally done because sales of securities sold during the class period in question that were purchased prior to the start of the class period are normally excluded from the assessment of approximate *losses*."). But neither Kotz declaration explains why the *gains* that Mr. Courter enjoyed by selling his pre-Class Period holdings at artificially inflated prices should not be considered here. Courts have previously rejected Mr. Kotz's opinions due to such methodological shortcomings. *See, e.g.*, *George v. China Auto. Sys., Inc*., 2013 U.S. Dist. LEXIS 93698, at *38-39 (S.D.N.Y. 2013) (in securities action, "the Court found that Kotz could not explain or defend why his methodology made analytical sense[.]"). *See* Regan Decl. at ¶¶ 10-12. This Court should too.

Notably, when initially claiming a larger loss, Courter's counsel withheld the cost basis for his

---

[6]    Courter's reliance on *Glavan v. Revolution Lighting Techs., Inc.*, 2019 U.S. Dist. LEXIS 125960, at *13 n.7 (S.D.N.Y. 2019) is misplaced. The underlying documents in that case reveal that, in fact, the district court was commending movant Remer for *excluding his unrecoverable losses* incurred from selling his pre-class period holdings, and conservatively applying LIFO. *See* Townsend Decl., Ex. B (*Glavan*'s Dkt. Entry 36 at 2). Here, Courter does the opposite and exaggerates his losses by excluding windfall LIFO gains, which defeats the purpose of the LIFO analysis.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

pre-Class Period holdings in connection with his lead plaintiff motion, which sought to obfuscate Courter's windfall LIFO gains and, hence, true loss. *See Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1083 (8th Cir. 2017) ("The district court's frustration with what it perceived as an abuse of the federal court system and lack of candor with the court is understandable."). Indeed, it was only after Dr. Kodali compelled Courter's counsel to disclose the cost basis for Courter's pre-Class Period purchases that he, for the first time on reply, grudgingly conceded ***in a footnote*** that his windfall LIFO gains reduced his overall losses to $196,450. *See* ECF 51 at 4, n.5; *also* ECF 52, Ex. C. Courts have fairly criticized such maneuverings at the lead plaintiff stage under identical facts. *See Mednax*, 2018 U.S. Dist. LEXIS 207064, at *13 ("It wastes the Court's time when proposed lead plaintiffs . . . simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares . . . ."); *see also Funko*, 2020 U.S. Dist. LEXIS 106515, at *19.[7]

Undeterred, Courter now again inappropriately invites error by incorrectly (and improperly) urging the Court to ignore Courter's windfall gains. This argument, if adopted, would defeat the recognized advantages of LIFO because consistent application of LIFO accounts for any gains a proposed lead plaintiff enjoyed due to Defendants' fraud. *See* ECF 66 at 1-2; *see also* ECF 65 at 8. "This [also] ignores the economic reality of a stock sale, which requires that the sales price for a share of stock be matched with that share's cost basis, in order to calculate a profit or loss on the sale of that share." *NPS Pharms.,* 2006 U.S. Dist. LEXIS 87231, at *7 (matching Class Period sales with pre-Class Period holdings).

The Regan Declaration establishes that Courter's initial calculations were exaggerated for the simple reason that Courter wholly ignored the windfall gains he incurred from selling his CytoDyn shares at artificially inflated prices. *See* Regan Decl. at ¶¶ 7-8, 11; *see also* ECF 45 at 7-8; ECF 54 at

---

[7]    Courter accuses Dr. Kodali's counsel of "hypocrisy," citing a loss chart from an unrelated matter. *See* ECF 69 at 4-5, citing ECF 52, Ex. B. But that argument fails for several important reasons. First, that chart complied with *Mednax*'s directive that movants should not obfuscate and must provide: (i) the movant's cost basis on the pre-class period holdings; (ii) the related windfall LIFO gains; and (iii) alternate totals. *See* ECF 52, Ex. B. That same transparency was lacking by Courter's counsel here. *Cf. id. with* ECF 46-3 (highlighting gains Courter did not include in his totals; no cost basis provided). Moreover, in the wake of *Funko*, it is clear that district courts in the Ninth Circuit require windfall LIFO gains to be factored into the calculation of the largest financial interest. *See Funko*, 2020 U.S. Dist. LEXIS 106515, at *18 (collecting cases).

KODALI REPLY IFSO MTN TO RECONSIDER    5
CASE NO. C21-cv-5190-BHS

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1. Courter's actual losses, when accounting for those windfall LIFO gains, is approximately $196,450. *See* Regan Decl., at ¶ 9. Further, while Mr. Kotz correctly stated that "[t]he calculation of market losses (or profits) is based on the prices at which purchase and subsequent sale transactions are made[,]" he may have overlooked that Courter himself initially failed to reveal that very information in connection with his initial lead plaintiff motion. *See* Kotz Decl., at ¶ 2; *see also* Regan Decl., at ¶ 6. Courter's counsel did so, of course, to obfuscate Courter's windfall gains. *See Mednax*, 2018 U.S. Dist. LEXIS 207064, at *13 ("[i]t wastes the Court's time when proposed lead plaintiffs . . . simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares . . . .").

It is undisputed that Courter gained from selling a tremendous amount of CytoDyn shares when the Company's share price was indisputably artificially inflated due to Defendants' misconduct. ECF 52, Ex. C. Ultimately, Courter gained $275,000 from selling shares during the Class Period which his loss calculation ignores. *See* Regan Decl., at ¶ 8; ECF 65 at 8-9 (Court acknowledging that in "*Funko*, for example, the court concluded that a movant failed to offset its claimed loss with gains for securities purchased before the class period and sold during the class period. The *Funko* court further concluded that it could not calculate the movant's actual loss without knowing the basis of its pre-class period purchases and rejected that movant as lead plaintiff."). For the foregoing reasons, and because Courter's counsel initially failed to disclose the cost basis for his pre-class period purchases, Dr. Kodali's motion for reconsideration should be granted. *See* Regan Decl., at ¶ 9 ("I also reviewed Courter's Exhibit C dated June 4, 2021 (included at ECF No. 52), which provided the data ***not previously included*** in ECF No. 27, Exhibit B. In this submission, Courter recalculated his losses at a reduced amount of $196,450, which is consistent with my analysis of Courter's LIFO losses.").

Dated: September 10, 2021                    Respectfully submitted,

                                             **BRESKIN JOHNSON & TOWNSEND, PLLC**

                                             By:___*s/ Roger M. Townsend*_____
                                                  Roger M. Townsend
                                                  1000 Second Avenue, Suite 3670
                                                  Seattle, Washington 98104
                                                  Telephone: (206) 652-8660

KODALI REPLY IFSO MTN TO RECONSIDER        6
CASE NO. C21-cv-5190-BHS

Facsimile: (206) 652-8290
rtownsend@bjtlegal.com

*Proposed Liaison Counsel for Movant,*
*Dr. Smila Kodali*

-and-

Ramzi Abadou (admitted *pro hac vice*)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Proposed Lead Counsel and Counsel*
*for Movant, Dr. Smila Kodali*

KODALI REPLY IFSO MTN TO RECONSIDER        7
CASE NO. C21-cv-5190-BHS

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660