# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES GLAVAN, Individually and On Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>             v.<br><br>REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA,<br><br>                         Defendants. | No. 1:19-cv-00980-JPO<br><br>**REPLY IN FURTHER SUPPORT OF FRED REMER'S MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL** |
| CHRIS HUBNER, Individually and On Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>             v.<br><br>REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA,<br><br>                         Defendants. | No. 1:19-cv-02308-JPO |

*(captions continue on next page)*

BOB BISHOP, Individually and On Behalf
of All Others Similarly Situated,

                                Plaintiff,

               v.

REVOLUTION LIGHTING
TECHNOLOGIES, INC., ROBERT V.
LAPENTA, CHARLES J. SCHAFER, and
JAMES A. DEPALMA,

                             Defendants.

No. 1:19-cv-02722-JPO

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.      REMER POSSESSES THE LARGEST FINANCIAL INTEREST OF ANY
        QUALIFIED MOVANT AND IS THEREFORE ENTITLED TO BE APPOINTED
        LEAD PLAINTIFF ...................................................................................................... 3

        A.      Remer Suffered The Largest LIFO Losses ............................................................ 3

        B.      Remer Suffered The Largest LIFO Losses Even If Constrained By The
                Supreme Court's Decision In The *Dura Pharmaceuticals* Case ............................ 5

        C.      The Net Share Method Is Inappropriate For Determining Each Movant's
                Financial Interest Where Five Partial Corrective Disclosures Have Been
                Alleged ................................................................................................................. 8

CONCLUSION ........................................................................................................................ 10

i

Movant Fred Remer ("Remer")[1] respectfully submits this reply memorandum pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), in further support of his motion seeking consolidation of the above-captioned actions (the "Actions"), appointment as Lead Plaintiff for the consolidated Actions, and approval of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.  ECF Nos. 22-25; 34.

### PRELIMINARY STATEMENT

On April 1, 2019, six motions for consolidation, appointment as Lead Plaintiff, and approval of Lead Counsel were filed by the following putative Class Members: (1) Remer; (2) Patrick and Wendy Graham (the "Grahams"); (3) Xinying Gong; (4) Police and Fire Retirement System of the City of Detroit; (5) Craig Holman and Russell Hopewell; and (6) Chris Hubner.

Of these movants, only Remer and the Grahams continue to seek appointment as Lead Plaintiff.  *See* ECF Nos. 30-34.  While Remer asserted out-of-pocket ("OOP")[2] losses of $1,308,632.02 in his opening papers, the Grahams argue that Remer's losses are at most $817,948.68.  *See* Memorandum of Law of Patrick and Wendy Graham in Opposition To Competing Lead Plaintiff Motions ("Graham Opp."), ECF No. 32, at 1.

---

[1]    Unless stated otherwise, the following conventions are used herein: (1) all ECF references are to *Glavan v. Revolution Lighting Technologies, Inc., et al.*, No. 1:19-cv-00980-JPO (S.D.N.Y.); (2) all defined terms shall have the same meaning as they did in Remer's opening brief, *see* ECF No. 23 ("Opening Br."); (3) all ECF pin cites are to the document's native pagination, but if no native pagination is available, ECF pin cites then refer to the ECF-generated pagination; (4) all internal citations and quotations are omitted; and (5) all emphases are added to quotations.

[2]    Out-of-pocket losses are "the difference between the value of what the plaintiff gave up [*i.e.*, paid] and the value of what the plaintiff received." *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1020 (9th Cir. 1999).  "Securities fraud damages are 'ordinarily . . . based on out-of-pocket losses.'" *Mazuma Holding Corp. v. Bethke*, 21 F. Supp. 3d 221, 235 (E.D.N.Y. 2014).

In response, Remer retained financial expert Zachary Nye, Ph.D. ("Nye") of Stanford Consulting Group, Inc. to independently conduct two loss calculations concerning Remer's trading of Revolution Lighting's stock during the Class Period: (1) Remer's OOP LIFO losses; and (2) Remer's OOP LIFO losses which exclude Remer's so-called "in-and-out"[3] trades pursuant to *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336 (2005).  As confirmed by Nye, Remer has significantly larger losses than the Grahams under both calculations.

Remer's initial OOP LIFO calculation of $1,308,632.02 included losses on all of Remer's common stock sales during the Class Period, including his losses on 11,940 shares Remer purchased prior to the Class Period.  *See* ECF No. 24-3 at 2.  In his calculations, Nye excluded Remer's sale of these 11,940 shares—because the corresponding purchases were not Class Period purchases and therefore not eligible for recovery—arriving at an OOP LIFO loss calculation of $1,147,521.  *See* Declaration of Zachary Nye, Ph.D. ("Nye Decl.") at ¶5 and Ex. 2 to the Nye Decl., both of which are filed contemporaneously herewith.  Nye's reduced loss calculation for Remer of $1,147,521 is still ***$317,092.18*** larger (*i.e.*, 38.2% larger) than the Grahams' $830,428.82 in OOP LIFO losses.  *See* ECF No. 12-3; Nye Decl. at ¶5.

Furthermore, even if all of Remer's in-and-out trades are excluded from Remer's loss calculation, Remer suffered $1,245,936 in losses, an amount that is $414,507.18 larger (*i.e.*, 50% larger) than the Grahams' $830,428.82 in losses.  *See* Nye Decl. at 6; Ex. 3.  Regardless, the Grahams' *Dura* argument is premature at this stage of the proceedings.

Additionally, the net shares methodology that the Grahams belatedly proffer as the relevant test for each movant's financial interest is inappropriate given the multiple partial

---

[3]    "In-and-out" traders are those who both purchase and sell their shares prior to a corrective disclosure revealing the truth concerning a misrepresentation.  *See Sklar v. Amarin Corp. PLC*, No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248, at *9 n.8 (D.N.J. July 29, 2014).

2