The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| BRIAN JOE COURTER, COURTER AND SONS LLC, DIANE M. HOOPER, THOMAS MCGEE, and CANDRA E. EVANS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>    v.<br><br>CYTODYN INC., NADER Z. POURHASSAN, MICHAEL MULHOLLAND, and SCOTT A. KELLY,<br><br>Defendants. | No. C21-5190 BHS<br><br>**PLAINTIFFS' MOTION TO PARTIALLY MODIFY THE PSLRA DISCOVERY STAY**<br><br>NOTE ON MOTION CALENDAR: February 11, 2022 |

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

**TABLE OF CONTENTS**

**Page**

I.   FACTUAL BACKGROUND .................................................................................1

    A.   Plaintiffs' Claims .................................................................................1

    B.   Regulatory Investigations ....................................................................3

    C.   Procedural History ..............................................................................4

    D.   CytoDyn's January 10, 2022 Form 10-Q Discloses that its Financial Condition Has Become Even More Precarious .......................................5

II.  ARGUMENT ...................................................................................................7

    A.   Plaintiffs Seek Particularized Discovery ................................................7

    B.   Plaintiffs Will Suffer Undue Prejudice if the PSLRA Stay is Not Modified ..........8

    C.   The Relief Plaintiffs Seek is Consistent with Public Policy ...................................11

III. CONCLUSION ...............................................................................................12

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ................................................................8, 10, 11

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ....................................................................7, 8, 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ........................................................................12

*In re FirstEnergy Corp. Sec. Litig.*,
2021 WL 2414763 (S.D. Ohio June 14, 2021) .........................................................................11

*In re FirstEnergy Corp. Sec. Litig.*,
229 F.R.D. 541 (N.D. Ohio 2004) ...............................................................................8, 11, 12

*In re Massey Energy Co. Sec. Litig.*,
2011 WL 4528509 (S.D. W. Va. Sept. 28, 2011) ................................................................10, 12

*In re Metro. Sec. Litig.*,
2005 WL 940898 (E.D. Wash. Mar. 31, 2005) ........................................................................9, 11

*N.Y. State Tchrs' Ret. Sys. v. GM Co.*,
2015 WL 1565462 (E.D. Mich. Apr. 8, 2015) .........................................................................10

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
943 F. Supp. 2d 913 (E.D. Wis. 2013) .....................................................................................8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
220 F.R.D. 246 (D. Md. 2004) ..................................................................................8, 11, 12

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
2005 WL 8179784 (D.N.J. Feb. 15, 2005) ...........................................................................10, 11

*Seippel v. Sidley, Austin, Brown & Wood, LLP*,
2005 WL 388561 (S.D.N.Y. Feb. 17, 2005) ...............................................................................7

*Singer v. Nicor, Inc.*,
2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ...........................................................................9

*Turocy v. El Pollo Loco*,
2017 WL 2495172 (C.D. Cal. May 10, 2017) ........................................................................9, 11

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

ii

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  2003 WL 23830479 (D.N.H. Jan. 29, 2003)................................................................10, 11

*Waldman v. Wachovia Corp.*,
  2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) ................................................................11, 12

*In re Williams Sec. Litig.*,
  2003 WL 22013464 (N.D. Okla. May 22, 2003)....................................................10, 11, 12

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002)...............................................................................7, 8, 9

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B)...............................................................................................7

**Other Authorities**

Fed. R. Civ. P. 26(b) ........................................................................................................12

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

iii

Lead Plaintiff Brian Joe Courter and Courter and Sons LLC and Named Plaintiffs Diane M. Hooper, Thomas McGee, and Candra E. Evans (collectively, "Plaintiffs") respectfully move this Court for an order partially modifying the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") to allow Plaintiffs to obtain documents Defendants CytoDyn Inc. ("CytoDyn" or the "Company"), Nader Z. Pourhassan, Michael Mulholland, and Scott A. Kelly have or will produce to the U.S. Securities and Exchange Commission ("SEC") and the U.S. Department of Justice ("DOJ") in response to various subpoenas ("Motion"). Plaintiffs' request is particularized, will not burden Defendants, and is consistent with the policies underlying the PSLRA. Without their requested modification, Plaintiffs will suffer undue prejudice given CytoDyn's precarious financial position.[1]

## I.      FACTUAL BACKGROUND

### A.      Plaintiffs' Claims

Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws on December 21, 2021. ECF No. 83 ("AC").[2] The AC alleges that Defendants violated Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 by: (1) making materially false and misleading statements about (a) CytoDyn's submission to the United States Food and Drug Administration ("FDA") of a Biologics License Application ("BLA") for the use of leronlimab to treat HIV ("HIV BLA"), and (b) the use of leronlimab to treat COVID-19; (2) engaging in a scheme to promote leronlimab and the likelihood of FDA approval of its use to treat COVID-19; and (3) selling 7.8 million shares of CytoDyn stock at inflated prices while in possession of material non-public information.

CytoDyn is a biotechnology company with one drug prospect, leronlimab. AC, ¶ 43. CytoDyn has not secured the approval of the FDA to market or sell leronlimab, and therefore it is

---

[1] Counsel for the parties conferred with respect to Plaintiffs' requested relief via telephone on January 19, 2022 and over email on January 21, 2022. This Motion followed.

[2] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

reliant on the sale of equity and issuance of debt to fund its operations. *See* 2Q21 Form 10-Q (defined below at § I.D and attached hereto as Ex. A) at 15. With respect to CytoDyn's HIV BLA, the AC alleges that on April 27, 2020 Defendants announced that CytoDyn had submitted to the FDA a purportedly "complete" HIV BLA. AC, ¶¶ 103-04. The undisclosed reality was far different. Prior to April 27, 2020, Amarex Clinical Research LLC ("Amarex"), which oversaw CytoDyn's clinical research on leronlimab,[3] repeatedly "warned" Pourhassan that CytoDyn's HIV BLA lacked necessary data and information. AC, ¶ 101. Nevertheless, in a non-public April 14, 2020 e-mail, Pourhassan directed Amarex to file CytoDyn's HIV BLA by April 22, 2020 "even if we are short in no matter what portion of whatever it is that we are short" because CytoDyn's stock price had declined. AC, ¶¶ 99-100.

Beginning on April 30, 2020, Defendants Pourhassan and Kelly sold millions of shares of CytoDyn stock. *See* AC, § VII.C. Following these sales, CytoDyn issued a May 4, 2020 press release which publicly disclosed for the first time that the HIV BLA submitted on April 27, 2020 was not complete and would not be complete until May 11, 2020. AC, ¶ 107. In response to the news, the price of CytoDyn's stock declined 13%. *Id*. CytoDyn subsequently announced that it had submitted a "complete" HIV BLA on May 11, 2020. AC, ¶¶ 108-10. Then, on July 13, 2020, CytoDyn publicly disclosed to investors that it had received a "Refusal to File" letter from the FDA, which the agency issues when a BLA lacks required information. AC, ¶ 123. In reaction to the news, the stock price again declined; this time nearly 22%. AC, ¶ 364.

With respect to COVID-19, the AC alleges that Defendants orchestrated a buying frenzy for CytoDyn stock during the Class Period by issuing over 150 press releases regarding the use of leronlimab to treat COVID-19 (AC, ¶ 147) and paying promotional websites for a platform through which they could speak to investors on a near daily basis, reiterating and amplifying their hype

---

[3] Amarex was CytoDyn's Clinical Research Organization or CRO throughout the Class Period. As CRO, Amarex assisted CytoDyn in conducting twenty of twenty-two clinical trials of leronlimab. *See* Declaration of Dr. Nader Z. Pourhassan, Ph.D. in Support of Motion for Preliminary Injunction, *CytoDyn, Inc. v. Amarex Clinical Rsch., LLC,* No. 8:21-cv-02533-PJM (D. Md.) ("*Amarex*"), ECF No. 6-2, ("Pourhassan Decl."), ¶ 6.

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

2

(AC, § VII.E). Much of the information Defendants provided to investors was not filed with the SEC, and many of the events Defendants touted as part of their promotional efforts never came to fruition—a tell-tale sign of "microcap fraud" per the SEC. *See* AC, § VII.E.

Through this scheme (and related materially false and misleading statements), Defendants constructed a façade that: (1) leronlimab was safe and effective for the treatment of COVID-19; (2) the results of Phase 2 (CD10) and Phase 2b/3 (CD12) Trials demonstrated that leronlimab was effective in treating COVID-19; and (3) regulatory approval for treating COVID-19 was imminent. AC, ¶¶ 137-38. This scheme had its intended effect: during the Class Period, the price of CytoDyn's stock increased nearly 900%, with CytoDyn's market capitalization reaching nearly $5 billion *without* an FDA-approved drug. AC, ¶ 13. With CytoDyn's stock price inflated by their scheme and materially false and misleading statements, Defendants cashed-in, selling millions of shares of CytoDyn stock. *See* AC, § VII.C.

Defendants' fraud began to unravel on March 5, 2021 when CytoDyn announced disappointing Phase 2b/3 Trial (CD12) results. AC, ¶¶ 268-70, 272. As a result, CytoDyn's stock price declined more than 45% over the next two trading days. AC, ¶¶ 271, 274. Thereafter, on May 17, 2021, the FDA took the nearly unprecedented step of issuing a public statement on an unapproved drug. AC, ¶ 287. Titled, "Statement on Leronlimab," the FDA exposed Defendants' lies about the safety and efficacy of leronlimab to treat COVID-19 and the Phase 2 (CD10) and Phase 2b/3 (CD12) Trials, stating bluntly: "With the conclusion of both the CD10 and CD12 clinical trials, it has become clear that the data currently available do not support the clinical benefit of leronlimab for the treatment of COVID-19." AC, ¶¶ 287-91. In response to the FDA's statement, the price of CytoDyn's common stock declined more than 27%. AC, ¶ 293.

**B.   <u>Regulatory Investigations</u>**

On July 30, 2021, CytoDyn disclosed that the SEC and DOJ were investigating it and its executives. AC, ¶¶ 19, 295. Specifically, CytoDyn revealed that it had received subpoenas from the SEC "requesting documents and information" and it "and certain of its executives have

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

3

received subpoenas" from the DOJ seeking "testimony and/or records" concerning CytoDyn's "public statements regarding the use of leronlimab as a potential treatment for COVID-19 and related communications with the FDA, investors, and others and trading in the securities of CytoDyn." *Id*. Recently, on January 10, 2022, CytoDyn disclosed that these investigations had expanded to include CytoDyn's statements about the use of leronlimab to treat HIV, "litigation involving former employees," and "the Company's retention of investor relations consultants." Ex. A at 30. CytoDyn also confirmed that its executives received subpoenas covering "similar issues" and "may be interviewed by the DOJ or SEC in the future." *Id.* As described by CytoDyn, the SEC and DOJ investigations are aligned with the fraud pled in the AC.

### C.  **Procedural History**

Under the current schedule, Defendants have until February 18, 2022 to file a motion to dismiss the AC. Defendants' motion will not be fully briefed until May 5, 2022. Meanwhile, discovery in this litigation is stayed pursuant to the PSLRA. Through this Motion, Plaintiffs seek a partial modification of the PSLRA discovery stay to obtain a copy of productions that Defendants have provided or will provide to the SEC and DOJ in response to the subpoenas described above (the "Regulatory Productions"). Most of the discovery relevant to Plaintiffs' claims likely will be in the custody, possession, and control of CytoDyn, making the Regulatory Productions critical to the adjudication of Plaintiffs' fraud claims.

However, recent events (described herein) suggest there is a significant risk that CytoDyn may file for bankruptcy in the near future. If CytoDyn files for bankruptcy before Defendants' motion to dismiss is adjudicated, Plaintiffs will be unable to obtain discovery from CytoDyn, including its Regulatory Productions, without first obtaining modification of two stays, the automatic stay in the relevant bankruptcy court and the PSLRA discovery stay in this Court. This Motion seeks to avoid the inherent complication, delay, and other burdens to Plaintiffs' ability to obtain the Regulatory Productions and timely devise their litigation strategy in this Action.

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

4

**D.    CytoDyn's January 10, 2022 Form 10-Q Discloses that its Financial Condition Has Become Even More Precarious**

CytoDyn's most recent financial results for the three months ended November 30, 2021 ("2Q21"), filed with the SEC on Form 10-Q on January 10, 2022 ("2Q21 Form 10-Q"), suggest that it is facing new and material financial hurdles that will complicate CytoDyn's ability to address numerous other financial obstacles it has previously disclosed. For instance, CytoDyn ended 2Q21 with $8.8 million in cash, as compared to $29.4 million in cash at the end of the same period in 2020. Ex. A at 7, 12.[4] The 2Q21 Form 10-Q also disclosed that CytoDyn was in material breach of its agreement with Samsung BioLogics Co., Ltd. ("Samsung") because CytoDyn failed to pay $13.5 million it owes under that agreement by December 31, 2021. *Id.* at 27-28. While CytoDyn has 45 days to cure its material breach (but only $8.6 million cash on hand), it also is required to pay Samsung an additional $21.3 million in fiscal year 2021 and another $113.8 million in fiscal year 2022. *Id.* at 28.

Moreover, the 2Q21 Form 10-Q disclosed that CytoDyn has incurred $9.2 million in legal fees for 2Q21, a more than five-fold increase from prior periods. *Id.* at 38. According to CytoDyn, these fees "primarily related to [a] proxy contest, SEC and DOJ investigations, the Pestell employment dispute, and the Amarex dispute." *Id*. While the proxy contest appears to have concluded (for now), the SEC and DOJ investigations and the Amarex dispute are ongoing and the Pestell employment dispute has a trial date in early April 2022. In other words, CytoDyn will continue to incur high legal fees for the foreseeable future.[5]

With respect to the Amarex dispute, on August 2, 2021, Amarex suspended all services to CytoDyn, including "any [trial] data and analysis transfer to CytoDyn," *Amarex,* ECF No. 6-9, due

---

[4] The 2Q21 Form 10-Q likewise confirmed that there was "substantial doubt about the Company's ability to continue as a going concern." Ex. A at 9.

[5] Pestell's company, ProstaGene, LLC, secured a $6 million plus arbitration award against CytoDyn. AC, ¶ 2. The AC alleges that the liability underlying this award— more than 3 million CytoDyn shares held in escrow—remained outstanding during the Class Period. *Id*. While CytoDyn paid the arbitration award (which included additional amounts beyond the value of the 3 million shares) as of August 31, 2021, Prostagene filed an action to confirm the award in Delaware Chancery Court. The parties disclosed that they had settled their dispute on December 22, 2021.

PLAINTIFFS' MOTION TO PARTIALLY          BYRNES KELLER CROMWELL LLP
MODIFY THE PSLRA DISCOVERY STAY          1000 Second Avenue, 38th Floor
No. C21-5190 BHS                          Seattle, Washington 98104
                                          (206) 622-2000

to the Company's failure to pay more than $13 million in invoices, *id.,* ECF No. 27-1, ¶ 9. On October 4, 2021, CytoDyn filed a demand for arbitration and preliminary injunction motion in federal court seeking access to its leronlimab trial data. *Id.,* ECF No. 6. In support of CytoDyn's preliminary injunction motion, Pourhassan declared under oath that "CytoDyn cannot sustain its operations" "without" "[i]nvestors," "Amarex's actions has and will continue to cause CytoDyn to lose investor goodwill," "[t]he delays in the leronlimab development program . . . have already caused some of our investors . . . to have concerns about investing in CytoDyn," [6] and investors "will not be willing to invest in CytoDyn if its clinical trial program collapses." Pourhassan Decl., ¶¶ 25-26. Pourhassan further stated under oath that "[a] setback of this magnitude in the [C]ompany's only clinical program may make it very difficult for CytoDyn to continue to raise capital to fund its operations . . . ." *Id.*, ¶ 34.

On December 21, 2021, the court granted CytoDyn's preliminary injunction if it posted a $6.5 million bond by January 14, 2022. *See Amarex,* ECF No. 35. The 2Q21 Form 10-Q disclosed that CytoDyn "will be required to tender $6.5 million ***in cash*** as collateral to the surety issuing the bond." Ex. A at 30. On January 14, 2022, CytoDyn sought to extend the deadline to post the bond to February 4, 2022 (and potentially February 14, 2022). *Amarex,* ECF No. 42. Critically, CytoDyn will not be able to avail itself of all of the relief it obtained via its preliminary injunction motion unless it tenders more than 75% of its available cash as of November 30, 2021 (an amount that likely has decreased in the seven plus weeks since the close of 2Q21). But without access to all of the relief obtained via the preliminary injunction it may be "very difficult for CytoDyn to continue to raise capital to fund its operations." Pourhassan Decl., ¶ 34.

In addition to legal fees, the SEC and DOJ investigations, and the Pestell employment and Amarex disputes expose Defendants to millions of dollars in fines, penalties, and damages.

---

[6] These same issues underlie CytoDyn's October 4, 2021 complaint. In its pleading, the Company alleged that "[w]hen the FDA rejected one of CytoDyn's filings (because of Amarex's failures), CytoDyn lost more than $1 billion in market cap." *Amarex*, ECF No. 1, ¶ 50.

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

6

CytoDyn has not publicly quantified these exposures in its SEC filings. Ex. A at 38.[7]

                          \*       \*       \*

On January 25, 2022, in its first public statement in twelve days following its abrupt cancellation of a scheduled call with investors on January 13, 2022, CytoDyn disclosed that Pourhassan had been terminated as its CEO effective January 24, 2022 and Kelly had stepped down as Chairman of CytoDyn's board of directors.[8]

## II.    <u>ARGUMENT</u>

The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Courts have discretion to modify the stay, *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 2007 WL 518626, at \*4 (E.D. Mich. Feb. 15, 2007), and have done so in cases involving "concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA," *Seippel v. Sidley, Austin, Brown & Wood, LLP*, 2005 WL 388561, at \*1 (S.D.N.Y. Feb. 17, 2005).

### A.    <u>Plaintiffs Seek Particularized Discovery</u>

The Regulatory Productions are precisely the type of "already assembled and produced," "closed universe of materials" courts have routinely held is sufficiently particularized. *Delphi*, 2007 WL 518626, at \*4; *see also In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) (modifying stay where request "involve[d] a clearly defined universe of documents" that had been "produced in connection with other identified proceedings"); *In re Royal*

---

[7] By way of example, in connection with its January 21, 2022 summary judgment brief in the Pestell employment dispute, CytoDyn publicly filed a copy of Dr. Richard Pestell's December 2020 initial disclosures which stated that Dr. Pestell seeks more than $77 million in enumerated damages, as well as an unspecified amount of compensatory and punitive damages, and interest. *Pestell v. CytoDyn Inc.*, No. 1:19-cv-01563-RTD (D. Del.), ECF No. 116-30.

[8] CytoDyn also filed with the SEC a Form 8-K disclosing a private sale of stock and warrants that generated $1.3 million in gross proceeds. As further consideration, CytoDyn also issued nearly 470,000 in shares of its common stock to three investors. CytoDyn further disclosed that it had exchanged approximately 5.4 million shares (worth $2.5 million or approximately $0.46 per share) on January 19, 2022 to partially satisfy an April 2021 note.

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

*Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (requests seeking "documents . . . 'produced to governmental, regulatory, or self regulatory agencies'" were "particularized"); *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) (finding "particularized" a request "limited solely to relevant materials that have already been produced in other proceedings"); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004).

### B.   Plaintiffs Will Suffer Undue Prejudice if the PSLRA Stay is Not Modified

Plaintiffs will suffer undue prejudice if the PSLRA stay is not modified to allow Plaintiffs to receive a copy of the Regulatory Productions. Specifically, without access to the Regulatory Productions, Plaintiffs "will be unfairly disadvantaged in pursuing litigation and settlement strategies." *Delphi*, 2007 WL 518626, at *6. "Courts have found undue prejudice where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings." *In Bank of Am. Corp. Sec.*, *Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009). In so doing, "[c]ourts . . . consider other factors, such as the defendants' financial state, settlement negotiations, case management, and the effect of delay in determining whether to lift the discovery stay." *Id.; see also Pension Tr. Fund*, 943 F. Supp. 2d at 916 ("courts have found that undue prejudice . . . where the defendants . . . [are] in the midst of reorganizing, merging, or being acquired," or have "submitted documentation in federal investigations . . . or . . . faced separate lawsuits").

CytoDyn does not have FDA approval to market and sell its only drug, leronlimab, and has material unpaid liabilities. Its failure to pay Samsung $13.5 million has put it in material breach of the parties' agreement, with additional payments of more than $135 million contractually due to be paid over the next 18 months. It has incurred $9.2 million in legal fees, many of which are likely to continue given the SEC and DOJ investigations, and the fact that the Pestell employment and Amarex disputes are not resolved. As of November 30, 2021, CytoDyn only had slightly more

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

8

than $8 million in cash, the majority of which it would need to post as collateral to secure the full relief afforded it under the preliminary injunction entered in *Amarex* and no disclosed plan for raising additional funds—a task CytoDyn's then-CEO Pourhassan claimed under oath will be "very difficult" without the preliminary injunction relief.[9]

These facts make it highly likely that if Plaintiffs "must wait until the resolution of a motion to dismiss to obtain discovery and formulate [their] . . . litigation strategy, [they] face[] the very real risk that [they] will be left to pursue [their] action against defendants who no longer have anything or at least as much to offer." *WorldCom,* 234 F. Supp. 2d at 306; *In re Metro. Sec. Litig.,* 2005 WL 940898, at *3-4 (E.D. Wash. Mar. 31, 2005); *Turocy v. El Pollo Loco*, 2017 WL 2495172, at *2 (C.D. Cal. May 10, 2017) (modifying stay where other litigation could outpace plaintiffs' litigation "potentially diminish[ing] El Pollo Loco's resources and . . . its ability to settle"); *Delphi,* 2007 WL 518626, at *7 ("It was precisely because the defendants in *Enron* and *WorldCom* were bankrupt and subject to other civil lawsuits that a partial lifting of the PSLRA stay was necessary to prevent the securities plaintiffs from being left with nothing . . . .").[10]

Moreover, if CytoDyn files for bankruptcy while Defendants' motion to dismiss is pending, Plaintiffs will be required to obtain stay modifications in two courts before gaining access to the Regulatory Productions. *See, e.g., WorldCom,* 234 F. Supp. 2d at 306 (bankruptcy stay and PSLRA stay modified); *Delphi*, 2007 WL 518626, at *2-3 (bankruptcy stay modification initially denied but PSLRA stay modified). This set of circumstances greatly increases the likelihood that Plaintiffs will be significantly prejudiced and left to pursue Defendants without anything left to settle or satisfy a judgment with respect to Plaintiffs' claims ***and*** without the Regulatory Productions—the

---

[9] That CytoDyn recently terminated Pourhassan as CEO and raised $1.3 million in "gross" proceeds does not change the Company's precarious financial position or counteract Pourhassan's declaration.

[10] Further, "even if [CytoDyn] is not bankrupt, the concerns expressed by the *Enron* and *WorldCom* courts are valid and present in this case." *Singer v. Nicor, Inc.*, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003). There is no requirement that Plaintiffs wait until CytoDyn has filed for bankruptcy before seeking relief from the PSLRA discovery stay. Moreover, settlements or settlement negotiations are not necessary to establish undue prejudice. *See Turocy* 2017 WL 2495172, at *6 (finding undue prejudice without "evidence of impending settlement of the derivative litigation").

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

precise prejudice other courts have modified the PSLRA stay to avoid. *See, e.g., In re Williams Sec. Litig.,* 2003 WL 22013464, at *1 (N.D. Okla. May 22, 2003) (modifying stay "where [d]efendant is fighting for its corporate life" and "time may run out for meaningful settlement negotiations before the motion to dismiss is ruled upon and discovery stay is lifted in the event the motion to dismiss is denied").

Plaintiffs also will "fall substantially behind the SEC and other government actions" without access to the Regulatory Productions. *Bank of Am. Corp.*, 2009 WL 4796169, at *3 (finding undue prejudice where "[d]iscovery is moving apace in parallel litigation"). Critically, "[c]ourts have lifted the [PSLRA] discovery stay to prevent undue prejudice when a defendant in a securities action . . . is also involved in criminal, civil and administrative investigations and actions which are proceeding unabated with the possibility that settlements might occur and/or fines or penalties might be imposed." *In re Massey Energy Co. Sec. Litig.*, 2011 WL 4528509, at *6 (S.D. W. Va. Sept. 28, 2011); *see also N.Y. State Tchrs' Ret. Sys. v. GM Co.*, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) ("Undue prejudice has been found where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits."); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2005 WL 8179784, at *1 (D.N.J. Feb. 15, 2005) ("The courts in <u>Enron</u>, <u>Worldcom</u>, <u>Tyco</u>, and <u>Royal Ahold</u> have concluded that a plaintiff is unduly prejudiced if the defendant has already produced documents requested in other governmental or private proceedings."). The SEC and DOJ have been investigating Defendants for at least six months and recently expanded their investigations to include HIV statements and CytoDyn's use of promotional outlets, among other issues. And, according to CytoDyn, the SEC and DOJ may soon interview its executives, putting Plaintiffs substantially behind the regulatory agencies, each of which can levy fines and penalties against Defendants.

Accordingly, modifying the PSLRA stay to allow Plaintiffs to receive a copy of the Regulatory Productions "prevents 'undue prejudice' by placing all potential claimants on an equal footing with respect to discovery." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 2003 WL 23830479,

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

10

at *4 (D.N.H. Jan. 29, 2003).

##### C.  The Relief Plaintiffs Seek is Consistent with Public Policy

The Motion is consistent with the policies animating the PSLRA stay. *See, e.g., Bank of Am. Corp.*, 2009 WL 4796169, at *1. Congress designed the PSLRA stay "to prevent fishing expeditions in frivolous lawsuits," "not . . . to keep secret from counsel in securities cases, documents that have become available . . . by means other than discovery in the securities cases." *Royal Dutch/Shell*, 2005 WL 8179784, at *1. As such, maintain a stay "as to materials already provided to government entities does not further the policies behind the PSLRA." *In re FirstEnergy Corp. Sec. Litig.*, 2021 WL 2414763, at *5 (S.D. Ohio June 14, 2021); *Turocy,* 2017 WL 2495172, at *1-3; *Williams,* 2003 WL 22013464, at *2 ("enforcement of the stay . . . would be needless because it would not serve the interest of any party and would vindicate no policy interest"). Moreover, Plaintiffs' claims, as set forth in the nearly 200 page AC, are not frivolous. *See Metro*, 2005 WL 940898, at *3 (modifying stay where plaintiff's 200+ page complaint included "detailed allegations and appears to be based on substantial support"). "Many of [Plaintiffs'] claims are supported by quotations or citations from documentary evidence," including Pourhassan's own email, Defendants' statements, and verified complaints filed by parties with personal knowledge of the facts set forth therein. *Royal Ahold*, 220 F.R.D. at 251; *see also FirstEnergy*, 229 F.R.D. at 545 (no fishing expedition where "complaint alleges facts that it found independently in support of its claims").

Likewise, the discovery Plaintiffs seek—a copy of the Regulatory Productions—is neither a fishing expedition nor unduly burdensome. While Congress "designed" the PSLRA stay "to protect defendants from unnecessary discovery costs," such concerns are not implicated where "the requested documents have already been found, compiled, and indexed" and "defendants will not be unduly burdened by producing the documents to Plaintiffs." *Metro*, 2005 WL 940898, at *3; *see also Waldman v. Wachovia Corp.,* 2009 WL 86763, *2 (S.D.N.Y. Jan. 12, 2009). Instead, "Plaintiff[s'] discovery requests seeking the production of documents pertaining to [Defendants'

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

11

public statements concerning the use of leronlimab to treat HIV and COVID-19, retention of promotional outlets, and trading in CytoDyn common stock] which have been provided to the [SEC and DOJ] are specific and fully consistent with the allegations and claims set forth in their [AC]." *Massey Energy,* 2011 WL 4528509, at \*5.

Plaintiffs' request also is proportional. While the case law interpreting the PSLRA stay focuses on undue burden, most of these cases pre-date the 2015 Amendment to Federal Rule of Civil Procedure 26 which require courts to consider the proportionality of the requested discovery. In that context, the "burden or expense of the proposed discovery" is weighed against its "likely benefit" and the result of that analysis is considered along with the five additional factors. Fed. R. Civ. P. 26(b). Here, all six proportionality factors weigh in favor of Plaintiffs' requested discovery: (1) protecting investors and the stock market from fraud are important issues at stake in this case; (2) the amount in controversy is substantial given CytoDyn's market capitalization declines; (3) Plaintiffs do not have access to the Regulatory Productions; (4) Defendants' resources to re-produce the Regulatory Productions are not an issue because technology permits the provision of a copy with little to no cost; (5) the Regulatory Productions include materials going to the heart of Plaintiffs' claims; and (6) the likely burden of producing a copy of the Regulatory Productions (de minimus) is outweighed by its likely benefit to Plaintiffs (substantial). *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2002 WL 31845114, at \*2 (S.D. Tex. Aug. 16, 2002); *Royal Ahold*, 220 F.R.D. at 251.

As such, Plaintiffs' request for a copy of the Regulatory Productions does not offend the purpose of the PSLRA stay. *See, e.g., FirstEnergy*, 229 F.R.D. at 545; *Williams*, 2003 WL 22013464, at \*1 (modifying stay where defendant was "the subject of several investigations" about "aspects of its business which are relevant to [plaintiff's] allegations").

### III.    CONCLUSION

For all the reasons set forth above, the Motion should be granted.

PLAINTIFFS' MOTION TO PARTIALLY                    BYRNES KELLER CROMWELL LLP
MODIFY THE PSLRA DISCOVERY STAY          1000 Second Avenue, 38th Floor
No. C21-5190 BHS                                               Seattle, Washington 98104
                                                                          (206) 622-2000

Dated: January 26, 2022

Respectfully submitted,

**BYRNES KELLER CROMWELL LLP**


By: /s/ Bradley S. Keller
Bradley S. Keller, WSBA #10665
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206), 622-2522
Email: bkeller@byrneskeller.com

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Jennifer L. Joost (*Pro Hac Vice*)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: jjoost@ktmc.com

and

Joshua E. D'Ancona (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: jdancona@ktmc.com

*Attorneys for Lead Plaintiff Brian Joe Courter and
Courter and Sons LLC, Named Plaintiffs Diane M.
Hooper, Thomas McGee, and Candra E. Evans, and
Lead Counsel for the Putative Class*

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

13

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 26th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Bradley S. Keller
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

PLAINTIFFS' MOTION TO PARTIALLY
MODIFY THE PSLRA DISCOVERY STAY
No. C21-5190 BHS

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

14