The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN JOE COURTER, COURTER AND SONS LLC, DIANE M. HOOPER, THOMAS MCGEE, and CANDRA E. EVANS, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CYTODYN INC., NADER Z. POURHASSAN, MICHAEL MULHOLLAND, and SCOTT A. KELLY,

Defendants.

No. 3:21-cv-05190-BHS

**DEFENDANTS CYTODYN INC., MICHAEL MULHOLLAND, AND SCOTT A. KELLY'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

**NOTE ON MOTION CALENDAR: MAY 1, 2023**

**ORAL ARGUMENT REQUESTED**

DEFENDANTS' MOTION TO DISMISS
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

    A.    Factual Background ............................................................................................ 1

    B.    Plaintiffs' Claims .............................................................................................. 3

II.    ARGUMENT ................................................................................................................. 3

    A.    Plaintiffs Fail to Plead that Numerous Challenged Statements Were
    Materially False or Misleading (Count I) ........................................................... 4

        1.    The SAC Does Not Adequately Allege that Certain Challenged
        BLA Statements Were Materially False or Misleading .............................. 4

        2.    The SAC Does Not Adequately Allege that Certain Challenged
        COVID-19 Statements Were Materially False or Misleading ................... 6

        3.    Forward-Looking Statements Are Not Actionable ................................... 8

        4.    Corporate Optimism and Puffery Are Not Actionable ............................. 10

        5.    Statements of Opinion Are Not Actionable ............................................ 11

        6.    Scientific Disagreement Fails to State a Claim ....................................... 12

        7.    CytoDyn Is Not Liable for Third-Party Statements ................................ 13

    B.    The Court Should Dismiss Count I in its Entirety as Against Mr.
    Mulholland and Dr. Kelly ................................................................................ 14

    C.    Plaintiffs Fail to State a Scheme Liability Claim (Count II) ............................... 16

    D.    Plaintiffs Fail to State a Section 20(a) Control Person Claim Against Mr.
    Mulholland or Dr. Kelly (Count III) .................................................................. 18

    E.    Plaintiffs Fail to State a Section 20A Claim Against Mr. Mulholland or Dr.
    Kelly (Count IV) ............................................................................................. 19

III.    CONCLUSION ............................................................................................................ 22

DEFENDANTS' MOTION TO DISMISS - i
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 1

*Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) ........................................ 6, 7

*Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912 (N.D. Cal. 2017) ................................................... 8

*Bolling v. Dendreon Corp.*, 2014 WL 2533323 (W.D. Wash. June 5, 2014) ......................... 19, 20

*Callan v. Motricity Inc.*, 2013 WL 5492957 (W.D. Wash. Oct. 1, 2013) ................................ 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* 856 F.3d 605 (9th Cir. 2017) ............................................................................................. 11, 19

*City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159 (3d Cir. 2014) ................................. 16, 20

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal. 2012) ......................................................................................................................... 11, 19

*DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212 (S.D. Cal. 2001) ................................... 13

*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009) ........................................... 17, 18

*Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015) ................................................................................................................................... 5

*Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) .................................... 4

*Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000) ................................................. 19

*In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551 (E.D. Pa. 2009) .................................... 13

*In re Aldus Sec. Litig.*, 1993 WL 121478 (W.D. Wash. Mar. 1, 1993) ................................... 22

*In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 212 L. Ed. 2d 233, 142 S. Ct. 1227 (2022) ....................... 6, 11

*In re AnaptysBio, Inc.*, 2021 WL 4267413 (S.D. Cal. Sept. 20, 2021). ................................. 8, 21

*In re AST Research Sec. Litig.*, 887 F. Supp. 231 (C.D. Cal. 1995) ....................................... 22

*In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017) ...................................... 21

*In re Biogen Sec. Litig.*, 179 F.R.D. 25 (D. Mass. 1997) ....................................................... 7, 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Cell Therapeutics, Inc. Class Action Litig.*, 2011 WL 444676 (W.D. Wash. Feb. 4, 2011)........................................................................................................22

*In re CellCyte Genetics Sec. Litig.*, 2009 WL 3103892 (W.D. Wash. Sept. 24, 2009)..............................................................................................................11

*In re Coinstar, Inc. Sec. Litig.*, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011)............... 13, 15, 16

*In re Convergent Techs. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991) ...................................................8

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008).......................20

*In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010) ...........................................................9, 10

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) ...................................................................9

*In re Dynavax Sec. Litig.*, 2018 WL 2554472 (N.D. Cal. June 4, 2018) ........................................5

*In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2019 WL 2994486 (E.D. Cal. July 9, 2019)..............................................................................................................17

*In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327 (W.D. Wash. 2019)...............................15, 16

*In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987 (N.D. Cal. 2016) ..............................8

*In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947 (9th Cir. 2017)................................................14

*In re MELA Scis., Inc. Sec. Litig.*, 2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012) ......................13

*In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188 (S.D.N.Y. 2020).......................................17

*In re Nektar Therapeutics*, 2020 WL 3962004 (N.D. Cal. July 13, 2020)..................................20

*In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828 (9th Cir. 2022) ...........................................7

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010)........................................................8

*In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623 (S.D. Cal. Aug. 1, 2006)..............................................................................................................20

*In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012).................................................4

*In re Rigel Pharms., Inc. Sec. Litig.*, 2010 WL 8816155 (N.D. Cal. Aug. 24, 2010), *aff'd*, 697 F.3d 869 (9th Cir. 2012) .............................................................12

*In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972 (N.D. Cal. 2017) ....................................10

*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ...........................13, 14

DEFENDANTS' MOTION TO DISMISS - iii
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Kane v. Madge Networks N.V.*, 2000 WL 33208116 (N.D. Cal. May 26, 2000),
    *aff'd sub nom. Kane v. Zisapel*, 32 F. App'x 905 (9th Cir. 2002) ............................................ 7

*Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) ..................................................... 7

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir.
    1991) ............................................................................................................................................ 18

*Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176 (D. Mass. 2020) ...................................... 12

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) ................................................. 19, 21

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500 (S.D.N.Y.
    2017) ............................................................................................................................................ 17

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008) ................ 1, 3, 4, 20

*Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629 (C.D. Cal. July 10,
    2008) ............................................................................................................................................ 20

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................................. 3

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ....................................................................... 20

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328 (C.D.
    Cal. 2014) .................................................................................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct.
    1318 (2015) ................................................................................................................................. 11

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 (9th Cir. 2014) .............. 4, 11, 18

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir.
    2014) ......................................................................................................................................... 5, 9

*Raab v. Gen. Physics Corp.*, 4 F.3d 286 (4th Cir. 1993) ............................................................... 14

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard
    Co.*, 845 F.3d 1268 (9th Cir. 2017) ......................................................................................... 6, 10

*Romine v. Acxiom Corp.*, 296 F.3d 701 (8th Cir. 2002) .................................................................. 7

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) .......................................................................... 21

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp.3d 1113 (N.D. Cal. 2020) ......................... 22

*SEC v. Chen*, 2019 WL 652360 (W.D. Wash. Feb. 15, 2019) ....................................................... 18

*SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011) ..................................................................... 18

DEFENDANTS' MOTION TO DISMISS - iv
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Stein v. Bridgepoint Educ., Inc.*, 2020 WL 3250596 (S.D. Cal. June 15, 2020) .............................. 4

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) ........... 3, 16, 17, 18

*Strassman v. Fresh Choice, Inc.*, 1995 WL 743728 (N.D. Cal. Dec. 7, 1995) ............................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..................................... 1, 4, 21

*Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) ........................................................................ 5, 12

*Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018) ............................................................ 4, 19

*Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021) ................................................................... 9

*Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir.1999) ............................................................. 12

## STATUTES

Securities Exchange Act of 1934 .......................................................................................*passim*

Private Securities Litigation Reform Act ............................................................................*passim*

## REGULATIONS

17 C.F.R. § 230.405 ................................................................................................................... 19

17 C.F.R. § 240.10b-5(a) and (c) .............................................................................................. 16

15 U.S.C. § 78u-4(b)(1)(B) ......................................................................................................... 3

15 U.S.C. § 78u-5(i)(1)(D) .......................................................................................................... 9

## OTHER AUTHORITIES

CytoDyn Updates, *CytoDyn Expects to Fully Enroll Its Trial to Treat Coronavirus Patients by the End of May (Proactive)*, YOUTUBE (May 4, 2020), https://www.youtube.com/watch?v=7Tu7bbaIspM .......................................................................21

DEFENDANTS' MOTION TO DISMISS - v
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.     INTRODUCTION

Defendants CytoDyn Inc. ("CytoDyn" or the "Company"), Michael Mulholland, and Scott A. Kelly submit this motion to dismiss the Second Amended Class Action Complaint ("SAC"). For the reasons set forth below, the Court should dismiss: (1) Count I in its entirety as against Mr. Mulholland and Dr. Kelly, and in part as against CytoDyn; (2) Count II in its entirety as against all moving defendants; and (3) Counts III and IV in their entirety as against Mr. Mulholland and Dr. Kelly.

### A.     Factual Background[1]

CytoDyn is a Washington-based late-stage biotechnology company focused on developing innovative treatments for multiple therapeutic indications, including some of the world's most serious and difficult to treat diseases.  ¶ 53.  The Company's lead drug candidate is leronlimab, a humanized monoclonal antibody that CytoDyn is developing for a variety of potential uses.  ¶ 54. Defendant Mulholland served as CytoDyn's Chief Financial Officer from December 2012 to November 2019, and from April 23, 2020 to May 18, 2021.[2]  ¶ 38.  Defendant Kelly served as a director of CytoDyn from April 2017 to October 2022, holding the position of Chairman of the Board from December 2018 to January 2022. ¶ 39.  Dr. Kelly was named CytoDyn's Chief Science Officer in July 2019 as a consultant, and Chief Medical Officer on April 13, 2020 as a full-time employee until he resigned on December 19, 2022.  *Id*.  The third named individual defendant, Nader Z. Pourhassan, was the Company's Chief Executive Officer, President, and a member of its Board from 2012 to January 2022.  ¶ 37.

---

[1] Defendants accept the factual allegations of the Complaint as true solely for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  All references herein to paragraph numbers (¶) are to the SAC.  All exhibits referenced herein ("Ex.") are documents cited or referenced in the SAC, copies of which are attached to the Declaration of Brendan T. Mangan.  On a motion to dismiss, "courts must consider … documents incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Courts routinely take judicial notice of SEC filings.  *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008).

[2] Mr. Mulholland held the title of CFO from December 2012 until November 2019.  ¶ 38.  On April 23, 2020, he became interim CFO and was formally named CFO on May 27, 2020.  *Id*.  Mr. Mulholland stepped down as CFO on or around May 18, 2021.  *Id*.

DEFENDANTS' MOTION TO DISMISS - 1
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

In April 2020, CytoDyn submitted a Biologics License Application ("BLA") to the FDA for the use of leronlimab to treat HIV.  ¶ 120.  On July 13, 2020, CytoDyn announced it had received a Refusal to File letter ("RTF Letter") from the FDA regarding the BLA, in which the FDA informed CytoDyn that the BLA did not contain certain information that the agency needed to complete a substantive review of the Company's application.  ¶ 12.  Thereafter, the Company continued to communicate with the FDA regarding the BLA.  ¶¶ 12-13.

Meanwhile, because leronlimab's mechanism of action made it a potential treatment for COVID-19, CytoDyn began to explore that possibility, and announced on March 9, 2020 that it had submitted an Investigational New Drug ("IND") application to the FDA to conduct a clinical trial of leronlimab for COVID-19 treatment.  ¶¶ 90-91.  Shortly thereafter, leronlimab was used to treat individual patients with severe COVID-19 pursuant to emergency IND requests ("eINDs"), and CytoDyn began enrolling patients for a Phase 2 clinical trial (CD10) of leronlimab for the treatment of mild-to-moderately ill COVID-19 patients.  ¶¶ 96, 98.  Despite obtaining what the Company believed were encouraging results, in August 2020 CytoDyn announced that CD10 missed its primary endpoint.  ¶ 18.  Nonetheless, the Company proceeded to conduct a larger-scale (Phase 2b/3) clinical trial (CD12) of leronlimab to treat critically ill and severe COVID-19 patients.  ¶ 105.  In communications in March 2021, CytoDyn released the results of the CD12 clinical trial and indicated that it had missed its primary endpoint.  ¶ 21.

In May 2021, the FDA issued a statement indicating, among other things, the agency's view that "the data currently available do not support the clinical benefit of leronlimab for the treatment of COVID-19."  ¶ 218; Ex. A, May 17, 2021, FDA Statement.  In that statement, the FDA also noted that the Company's analyses of certain data from the CD12 trial "may inform the design of future clinical trials investigating leronlimab for the treatment of COVID-19" and "[i]f CytoDyn plans further studies of leronlimab to determine whether the drug can provide clinical benefit to individuals with COVID-19, FDA will continue to provide advice to the company on their development program."  *Id.*

DEFENDANTS' MOTION TO DISMISS - 2
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

While the Company continued its efforts to obtain approval of leronlimab as a treatment for indications including HIV, Nonalcoholic Fatty Liver Disease (NAFLD) and Nonalcoholic steatohepatitis (NASH), oncology, and COVID-19 through the rest of 2021 and into 2022, on March 30, 2022, CytoDyn announced that the FDA had placed a full clinical hold on the Company's COVID-19 program and a partial clinical hold on its HIV program. *Id.* ¶¶ 54, 230.[3]

### B.    Plaintiffs' Claims

Plaintiffs assert that all defendants violated Section 10(b) of the Exchange Act (Count I) by making purportedly false and misleading statements over a nearly 20-month period regarding the Company's development of leronlimab as a potential treatment for HIV and COVID-19. Plaintiffs also allege that by making these and similar statements and taking part in other "promotional" activities, defendants engaged in an unlawful "stock promotion scheme" in violation of Section 10(b) (Count II). Plaintiffs also contend that each individual defendant is a control person of CytoDyn and thus liable for its alleged violations of the securities laws under Section 20(a) of the Exchange Act (Count III), and engaged in insider trading in violation of Section 20A of the Exchange Act (Count IV).

### II.    ARGUMENT

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Section 10(b) requires: (1) a material misstatement or omission; (2) scienter; (3) purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Plaintiffs must support each element with particularized facts satisfying Rule 9(b) and the "formidable pleading requirements" of the Private Securities Litigation Reform Act ("PSLRA"). *Metzler*, 540 F.3d at 1055. Plaintiffs also must identify each misleading statement and "the reason or reasons why [it] is misleading" (15 U.S.C. § 78u-4(b)(1)(B)), including specific contemporaneous facts showing the statement was false when made. *Metzler*, 540 F.3d at 1071-1072; *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012).

---

[3] In October 2022, CytoDyn announced that it had voluntarily withdrawn its BLA for HIV.

DEFENDANTS' MOTION TO DISMISS - 3
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs must also plead specific facts raising a strong inference of scienter – an intent to defraud or deliberate recklessness so egregious as to be tantamount to actual intent. *Webb v. Solarcity Corp.*, 884 F.3d 844, 850-51 (9th Cir. 2018). The inference of fraud must be "cogent" and "at least as compelling as any opposing inference," and the Court must consider "plausible, nonculpable explanations for the defendant's conduct." *Tellabs,* 551 U.S. at 323-324. "Unlike the court's typical analysis" on a motion to dismiss, "the PSLRA requires that the court 'take into account plausible opposing inferences.'" *Stein v. Bridgepoint Educ., Inc.*, 2020 WL 3250596, at *11 (S.D. Cal. June 15, 2020) (quoting *Tellabs*, 551 U.S. at 323). Plaintiffs must plead scienter for *each defendant*, and must set forth, "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (internal quotations and citation omitted); *see also Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).

**A.    Plaintiffs Fail to Plead that Numerous Challenged Statements Were Materially False or Misleading (Count I)**

**1.    The SAC Does Not Adequately Allege that Certain Challenged BLA Statements Were Materially False or Misleading**

Plaintiffs challenge a series of statements that the Company and Dr. Pourhassan made between May 13, 2020 and July 13, 2020, in which they reported in various press releases and interviews that CytoDyn had filed the BLA on April 27, 2020 and had submitted additional clinical datasets to the FDA on May 11, 2020. ¶¶ 253-55. Plaintiffs' claim ignores the context in which these statements were made. Plaintiffs do not contest that CytoDyn made a filing with the FDA on April 27 and submitted additional datasets to the FDA on May 11. *See* ¶¶ 11, 120. Despite their suggestion, Plaintiffs do not allege any representation that FDA approval of the BLA was guaranteed. Indeed, the challenged statements appear in summary paragraphs that included the following statement (or similar language): "*As a next step*, the FDA will start reviewing the BLA for completeness[.] … *After the BLA submission is deemed completed*, the FDA assigns a [PDUFA] goal date." (emphasis added). *See, e.g.*, Ex. B, May 13, 2020 Press Release at 1. These statements suggest there would be additional dialogue between the Company and the FDA after CytoDyn

DEFENDANTS' MOTION TO DISMISS - 4
(No. 3:21-cv-05190-BHS)

made the identified filings. *See In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *7 (N.D. Cal. June 4, 2018) ("Reasonable investors would expect that the company and the FDA would be engaged in a dialogue about the sufficiency of the clinical trials and that such dialogue inherently would include presentation of contrary views."); *see also Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) (investors "would fully expect that Defendants and the FDA were engaged in a dialogue, as they were here, about the sufficiency of various aspects of the clinical trials and that inherent in the nature of a dialogue are differing views."); *Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 243-244 (1st Cir. 2015) ("There must be some room for give and take between a regulated entity and its regulator.").[4]

Plaintiffs also challenge statements that the Company and Dr. Pourhassan made between July 13, 2020 and March 1, 2021 about the RTF Letter and the Company's plans to resubmit the BLA. *See, e.g.*, ¶¶ 258 ("FDA requested more information to complete a substantive review. No additional trials required. CytoDyn plans to submit the requested information and will ask for a Type A meeting with the FDA per the agency's suggestion"); 259 ("The FDA's request does not require any additional clinical trials to be conducted"); 296 ("The refuse to file did not say do another trial. It said do the data right.").[5]  Plaintiffs acknowledge that the RTF Letter was "silent" as to whether the Company needed to conduct additional clinical trials (¶ 147), and do not contend that the RTF Letter did not seek additional data or that the Company did not plan to ask for a Type A meeting.  While Plaintiffs contend that these statements are actionable because they created a "misleading impression" regarding the import of the RTF Letter (¶ 269), the full context of these statements show otherwise. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("*Intuitive Surgical*") ("[T]he context in which the statements were made is key.").  As Plaintiffs affirmatively allege, the market understood the significance of the RTF Letter and reacted accordingly.  ¶ 506 ("The sharp market price decline was widely understood by

[4] Plaintiffs also challenge statements CytoDyn made after disclosure of receipt of the RTF Letter that simply recount the April 27 and May 11 filings (¶¶ 258, 276-79, 291-93), but do not explain why – after CytoDyn disclosed the FDA's negative action – a reasonable investor would have viewed this recitation of the BLA timeline as material.
[5] *See also* ¶¶ 260, 262, 263-66, 265, 276-80; 288-93.

DEFENDANTS' MOTION TO DISMISS - 5
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

investors and market watchers to relate to the announcement of CytoDyn's receipt of a Refuse to File letter from the FDA."); *see also* ¶¶ 507-09.  The receipt of the RTF Letter itself was the most important and disappointing news about the BLA.  Plaintiffs' claims regarding these statements focus on certain sentences or phrases divorced from their overall context – the receipt of a damaging RTF letter.  This is not enough to state a claim.  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (statement is misleading only "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists'") (citation omitted).[6]

### 2. The SAC Does Not Adequately Allege that Certain Challenged COVID-19 Statements Were Materially False or Misleading

The complaint also ignores the more important context of certain challenged statements about the Company's development of leronlimab as a potential treatment for COVID-19.  First, Plaintiffs challenge CytoDyn's disclosure that the FDA would no longer issue emergency INDs and that the FDA instead recommended that CytoDyn perform a randomized controlled trial.  ¶¶ 358-67.  Plaintiffs allege these statements were misleading because CytoDyn presented an overly optimistic view of the FDA's action (¶ 370), but they fail to make any allegations as to why the negative news that the FDA would not issue further eINDs would not be dispositive to a reasonable investor.  ¶ 358 ("FDA sen[t] us an urgent letter that we are not going to give CytoDyn any more emergency IND to do in the hospitals"); *see In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 700 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. Rhode Island*, 212 L. Ed. 2d 233, 142 S. Ct. 1227 (2022) ("professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives"); *see infra* at 10-11.  The securities laws do not

---

[6] Further, to the extent Plaintiffs argue that the statements that the FDA required "additional information" (¶¶ 258-66, 276-81, 288-302) themselves gave "the misleading impression that the RTF letter was the first time that the FDA had requested this information" (¶¶ 270, 283, 304), Plaintiffs overreach.  CytoDyn's statements merely convey that the FDA requested additional information in the RTF Letter and gave no indication as to whether this was the first request of this kind.  *See, e.g.*, ¶¶ 258-66.  And Dr. Pourhassan's statement that he was "surprised" by "everything [that] happened with the BLA" (¶ 298) occurred almost a year later, long after the market learned of the RTF Letter. Investors would not have considered this retrospective statement about the RTF Letter to be material.  *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017).

DEFENDANTS' MOTION TO DISMISS - 6
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

require a company to disparage itself or focus on the most disappointing news. *Kane v. Madge Networks N.V.*, 2000 WL 33208116, at *8 (N.D. Cal. May 26, 2000), *aff'd sub nom. Kane v. Zisapel*, 32 F. App'x 905 (9th Cir. 2002) ("the federal securities laws rarely require companies to disparage their own product lines"); *see also Romine v. Acxiom Corp.*, 296 F.3d 701, 708 (8th Cir. 2002) ("A company has no duty to disparage its own competitive positions … where it has provided accurate hard data from which analysts and investors can draw their own conclusions about the company's conditions and the value of its stock." (citation omitted)).[7]

With respect to the CD10 trial, here again, the Company disclosed the negative news: that it failed to meet its primary endpoint. *See* Ex. C, August 11, 2020 Press Release; *see also* Dkt. 83 ¶¶ 221-22. Plaintiffs again fail to explain why this disappointing news is not the critical information. *See Berson*, 527 F.3d at 985. Plaintiffs' allegations fail adequately to allege that CytoDyn's emphasis on a few pieces of what it saw as positive data – *see, e.g.*, ¶¶ 374 ("We have seen improvement in *day t3* versus day zero in leronlimab arm as compared to placebo arm"); 377 (top-line results "clinically" significant, "statistically significant[] results were observed *at Day 3 and Day 14*" in the NEWS2 scores); 380 ("We discovered that the secondary endpoint, that we believe is even more important than our primary endpoint, and we have achieved a statistically significance value which is the so-called NEWS2") – was misleading given the contemporaneous disclosure of the disappointing news regarding the study as a whole.[8] "In the highly technical task of evaluating scientific studies and their impact on investment decisions, plaintiffs must provide some specificity to anchor their contentions that investors would find one study outcome to be meaningfully different from another." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022); *see also Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) (statements about selected results not misleading where company "also disclosed that the 'overall study

---

[7] Other challenged statements that the Court should dismiss for this same reason are at ¶¶ 312-73.

[8] Plaintiffs also challenge CytoDyn's statement that it observed a statistically significant result in one secondary endpoint (NEWS2). ¶ 410. But even if the FDA's difference of opinion could render false this statement about the NEWS2 endpoint, it is not actionable. Given that the market understood that the study failed to meet its primary endpoint, no reasonable investor would have viewed as material a statement that the Company had observed a statistically significant result in one secondary endpoint. *Kleinman*, 706 F.3d at 153; *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 39 (D. Mass. 1997).

DEFENDANTS' MOTION TO DISMISS - 7
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

population' did not attain statistically significant results based on the primary endpoints"); *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 39 (D. Mass. 1997) (omissions not material where company disclosed "the most relevant and disappointing aspect of the [trial] results – the failure to reach the primary endpoint").[9]

Plaintiffs advance a similar complaint to the Company's challenged statements about the results of the CD12 trial. But the Company was explicit during its March 8, 2021 investor conference that it had "not hit the primary endpoint p-value." ¶ 526; *see also* Ex. D, March 8, 2021 Press Release at 2 (disclosing again that "[a]mongst all patients in mITT, the primary endpoint (all-cause mortality at Day 28) was not statistically significant"). In addition, while the Company's statements highlighted a few positive datapoints, Plaintiffs' own allegations concede that "market observers" viewed the CD12 trial as a "failure" and noted that based on "all the negative data, there is no reason to expect the FDA or any other regulatory agency to authorize the drug's use." ¶ 524. As such, Plaintiffs fail adequately to plead that the challenged statements, "when read in light of all the information then available to the market … conveyed a false or misleading impression" about the results of the CD12 trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991)); *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *6 (S.D. Cal. Sept. 20, 2021) (statement regarding clinical trial was not misleading when read in context, and "context matters"); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("A statement is misleading only if a reasonable investor, reading the statement fairly and in context, would be misled."); *In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1003-04 (N.D. Cal. 2016) (other statements by defendant "put the alleged misleading statements … in context" and "substantially mitigate[d] the potentially misleading nature of the challenged statements").

### 3.    Forward-Looking Statements Are Not Actionable

Many of the challenged statements about the BLA and COVID-19 are also inactionable because they reflect CytoDyn's plans, intentions, and expectations regarding its drug development

---

[9] Other challenged statements that the Court should dismiss for this same reason are at ¶¶ 374-90.

DEFENDANTS' MOTION TO DISMISS - 8
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

efforts.  The PSLRA's "safe harbor" bars any claim based on challenged statements reflecting expectations or predictions for the future where (i) the statements were identified as forward-looking and accompanied by meaningful cautionary language; or (ii) a plaintiff does not plead facts showing that defendants had actual knowledge that the statements were false when made. *Intuitive Surgical*, 759 F.3d at 1058; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1021-22 (9th Cir. 2005). Critically, the two prongs of the safe harbor are disjunctive; a defendant is immune from liability if either prong is met. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010).  Courts consistently deem statements that "relate[] to future expectations and performance" forward-looking and inactionable under the safe harbor.  *Intuitive Surgical*, 759 F.3d at 1059.  Similarly, "statement[s] of the assumptions underlying or relating to" such forward-looking statements are statutorily protected.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191 (9th Cir. 2021) (quoting 15 U.S.C. § 78u-5(i)(1)(D)).

Plaintiffs challenge a number of statements about CytoDyn's expectations as to its ability to address the issues the FDA raised in the RTF Letter and the Company's prospects for approval of leronlimab as a treatment for COVID-19.  *See, e.g.*, ¶¶ 258-59, 266, 278-79, 299, 378, 385. Such statements, including those discussing the "path to approval" (¶¶ 414, 417-18, 421), are inherently forward-looking and predictive in nature.  CytoDyn explicitly identified these statements as forward-looking and provided meaningful cautions in the same communications in which the challenged statements appear.  *See* Ex. E, July 13, 2020 Press Release at 4; Ex. F, July 13, 2020 Conference Call at 4; Ex. G, FY 2020 Form 10-K at 4; Ex. C, August 11, 2020 Press Release at 4; Ex. H, August 17, 2020 Press Release at 3-4; Ex. I, March 6, 2021 Press Release at 3-4; Ex. D, March 8, 2021 Press Release at 3-4; Ex. J, March 8, 2021 Conference Call at 4.  For example, the Company's 10-K stated that "words such as 'believes,' 'hopes,' 'intends,' 'estimates,' 'expects,' 'projects,' 'plans,' 'anticipates' and variations thereof, or the use of future tense, identify forward-looking statements."  Ex. G, FY 2020 Form 10-K at 4.   The Company noted that such statements are "subject to risks and uncertainties," and pointed to its disclosure of risk factors including, among other things, that

DEFENDANTS' MOTION TO DISMISS - 9
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

[T]he FDA or comparable foreign regulatory authorities … may disagree with the design or implementation of our clinical trials; we may not be able to provide acceptable evidence of the safety and efficacy of our drug candidates; the results of our clinical trials may not be satisfactory or may not meet the level of statistical or clinical significance required by the FDA … the dosing of our drug candidates in a particular clinical trial may not be at an optimal level … [and] the data collected from clinical trials may not be sufficient to support the submission of an NDA or other submission or to obtain regulatory approval in the United States or elsewhere.

*Id*. at 26-27.  The Company included similar warnings in its press releases and at the outset of conference calls.  *See, e.g.*, Ex. E, July 13, 2020 Press Release at 4; Ex. F, July 13, 2020 Conference Call at 4; Ex. I, March 6, 2021 Press Release at 3-4; Ex. D, March 8, 2021 Press Release at 3-4; Ex. J, March 8, 2021 Conference Call at 4.  These cautions trigger safe harbor protection and Plaintiffs fail to present any rationale why the challenged forward-looking statements should be actionable.  *See In re Cutera*, 610 F.3d at 1112; *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 993 (N.D. Cal. 2017).

### 4.    Corporate Optimism and Puffery Are Not Actionable

Some of the challenged statements contain expressions of optimism that leronlimab could be an effective treatment for HIV and/or COVID-19.  *See, e.g.,* ¶¶ 318 (describing results as "spectacular"); 361-62 (calling results "utterly amazing," "stunning" and "astonishing"); 328 ("we have seen very spectacular results"); 339 (calling results "truly amazing" and "remarkable").[10] Absent further allegations, and since such statements are not capable of objective verification, the statements are non-actionable.  *See, e.g., Retail Wholesale & Dep't Store Union Local 338 Ret. Fund*, 845 F.3d at 1275 ("[t]o be misleading, a statement must be 'capable of objective verification,'" meaning that "'puffing' – expressing an opinion rather than a knowingly false statement of fact – is not misleading." (quoting *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014))); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 700 ("transparently aspirational" statements are inactionable because investors "know how to devalue the optimism of

[10] *See also* ¶¶ 260 ("We are 100% committed and confident we can provide the necessary information to the FDA as soon as possible."); 281 ("that's a very beautiful thing we're getting"); 297 ("CytoDyn has gained tremendous insight in the safety of Vyrologix"); 299 ("now we have 48-week data, very excited about it"); 317 ("that's major results, …. So we're very, very happy"); 313, 315, 317-21 (statements that data was "major," "spectacular," and "very strong"); 361 ("it is utterly amazing how well" the drug performed in certain patients); 399 (CD10 "obviously was very fantastic"); 452 (calling results "really strong").

DEFENDANTS' MOTION TO DISMISS - 10
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

corporate executives"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1063 (N.D. Cal. 2012) ("statements projecting 'excellent results,' a 'blowout winner' product, … have been held unactionable as mere puffery") (citation omitted); *In re CellCyte Genetics Sec. Litig.*, 2009 WL 3103892, at *5 (W.D. Wash. Sept. 24, 2009) ("The statements that 'regenerative medicine is on the verge of an enormous and historic leap forward' and 'the miracle of regenerative medicine [is] within immediate reach' are immaterial puffery.").

### 5.     Statements of Opinion Are Not Actionable

Other challenged statements are statements of opinion. *See, e.g.*, ¶¶ 292 ("We understand that the FDA's [sic] is requiring additional analysis of completed trials and results"); 345 ("I'm almost certain that [patients] have [been treated with leronlimab], as [the FDA] waived our waiting for pre-IND ….   That's my guess."); 445 ("In my humble opinion, there is no doubt that Leronlimab will be part of the future of COVID-19 therapies.").[11]  To be actionable, a statement of opinion or belief must be both subjectively and objectively untrue. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) ("*Align Tech*").  The SAC fails to allege that, at the time of each challenged opinion, the speaker did not subjectively believe the contents of the statement.  Rather, Plaintiffs' falsity argument as to these challenged opinions rests on subsequent developments such as statements by the FDA, which is insufficient.  "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made." *Callan v. Motricity Inc.*, 2013 WL 5492957, at *9 (W.D. Wash. Oct. 1, 2013) (citation omitted); *see also Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th

---

[11] *See also* ¶¶ 260 ("all the information the FDA has requested is obtainable"); 344 ("Obviously, [the FDA] believe[s] that we have something here."); 364 ("FDA has been extremely positive with us and helping us and guiding us"); 398 ("[W]e had a fantastic results, in our opinion"); 421 (after meeting with FDA, "we have a path to go forward to get final approval" and "I think everybody would agree that when FDA says do another trial to show that the critical population is solid, your data, that means they're seeing a signal and they're seeing a need that perhaps they can work with us"); 451 ("I don't think [EUA approval] will have any [impact in the United States] …. So I think the FDA will continue to work with us …."); 455 (CytoDyn could "perhaps be able to enroll quickly" and "might ask [the FDA] for compassionate use").

DEFENDANTS' MOTION TO DISMISS - 11
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Cir.1999) ("[i]t is clearly insufficient for plaintiffs to say that [a] later, sobering revelation[] makes[s] [an] earlier, cheerier statement a falsehood") (citation omitted).

### 6.    Scientific Disagreement Fails to State a Claim

Many of the statements Plaintiffs challenge reflect opinions regarding the strength of, and conclusions to be drawn from, scientific data. *See, e.g.*, ¶¶ 374, 377-378 (reporting "positive efficacy results" from CD10, discussing NEWS2 results "observed at Day 3 and Day 14"); 385, 388 (interpreting data as "compelling," "strong"); 415 (reporting results from CD12 "age adjustment" analysis); 419-25 (discussing as statistically significant "survival benefit" and "shortened time to recovery" in CD12 subgroup); 442-45 (reporting results from "further statistical analysis of the critically ill population").[12]   Plaintiffs allege that the FDA disagreed with the Company's views as to efficacy and the interpretation of eIND and clinical trial results.  ¶¶ 393-96; 428-30, 446-47.  But statements about the interpretation of clinical trial results (including efficacy findings) are not false or misleading simply because there is a contrary opinion of a third party – even where that party is the FDA. *In re Rigel Pharms., Inc. Sec. Litig.*, 2010 WL 8816155, at *11 (N.D. Cal. Aug. 24, 2010), *aff'd*, 697 F.3d 869 (9th Cir. 2012) (no falsity where allegations "demonstrate[d] that there were alternative means for interpreting the clinical trial, not that Defendants made materially false statements about the efficacy"); *Tongue*, 816 F.3d at 214 ("Defendants' statements were not misleading simply because the FDA disagreed with Defendants' interpretation of the data"); *Leavitt v. Alnylam Pharms., Inc.*, 451 F. Supp. 3d 176, 184 (D. Mass. 2020) (statements discussing clinical trial results and data were non-actionable opinions, even though "the FDA interpreted trial results differently and defendants' opinions may have been erroneous"); *In re MELA Scis., Inc. Sec. Litig.*, 2012 WL 4466604, at *13 (S.D.N.Y. Sept. 19, 2012) ("Plaintiffs cannot premise a fraud claim upon a mere disagreement with how defendants chose to interpret the results of the clinical trial."); *In re Adolor Corp. Sec. Litig.*, 616

---

[12] *See also* ¶¶ 315, 331, 339-41, 346-47, 349-50, 359, 382-83, 387, 389-90, 413-14, 418 (conclusions on efficacy, whether and how leronlimab "works"); 314, 318, 328, 398 (describing results as "strong," "major," "fantastic"); 380-85, 400-01, 406-07 (results for and importance of NEWS2 secondary endpoint); 360, 365, 422 (discussing specific patient data, including data from subgroups); 313, 318-21, 329-30 (discussing "immunological benefit").

DEFENDANTS' MOTION TO DISMISS - 12
(No. 3:21-cv-05190-BHS)

F. Supp. 2d 551, 568 n. 15 (E.D. Pa. 2009) (purported problems with statistical analysis had merely alleged a disagreement about how to conduct and analyze the study, not a false or misleading statement); *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1225 (S.D. Cal. 2001) ("Although Plaintiffs may have established a legitimate difference in opinion as to the proper statistical analysis, they have hardly stated a securities fraud claim."). Plaintiffs have alleged no more than that here.

### 7.    CytoDyn Is Not Liable for Third-Party Statements

Plaintiffs' Section 10(b) claim is also deficient to the extent it is premised on statements that outside actors made. Only the "maker" of a false or misleading statement can be held liable under Section 10(b). *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.*; s*ee also In re Coinstar, Inc. Sec. Litig.*, 2011 WL 4712206, at *10 (W.D. Wash. Oct. 6, 2011) ("liability does not expand beyond the person or entity that ultimately has authority over a false statement or omission."). Plaintiffs seek to impose liability here based on statements made by (a) Dr. Kush Dhody of Amarex Clinical Research; (b) Dr. Bruce Patterson, CEO of diagnostic company IncellDX; and (c) Dr. Jacob Lalezari, CEO and Medical Director of Quest Clinical Research. *See* ¶¶ 46-49 (identifying non-party individuals). Plaintiffs contend that these individuals "made statements as [representatives] of CytoDyn when participating in interviews and investor conference calls," ¶¶ 46-49, but do not plead, with particularity or otherwise, any *facts* supporting that claim. For example, Plaintiffs note that during a September 16, 2020 investor call, Dr. Dhody purportedly made oral statements addressing, among other things, the purpose of a recent meeting with the FDA, a "complete agreement" with the FDA regarding additional data it would require for BLA re-submission, and what data was available. ¶¶ 288-89.[13] But Plaintiffs

---

[13] Other challenged statements that the Court should dismiss for this same reason are at ¶¶ 154, 174-75, 263-66, 268, 512-14 (statements Dhody made); 314-15, 330, 331, 339-42, 346-47 (statements Patterson made); 160, 164, 331, 340-41, 359-62, 375, 382-83, 389, 575 (statements Lalezari made).

DEFENDANTS' MOTION TO DISMISS - 13
(No. 3:21-cv-05190-BHS)

do not provide any information that would support the inference that Dr. Dhody spoke for CytoDyn rather than for his own employer (Amarex, CytoDyn's contract research organization).  ¶ 46.  And Plaintiffs provide no allegations to show that CytoDyn had ultimate control over what Dr. Dhody said.  The same is true for challenged statements that Drs. Patterson and Lalezari made, for example, statements on an April 27, 2020 conference call that it was "remarkable for one drug to restore the immune system and decrease the viral burden in these patients" (Patterson), and "[i]t's clear this drug is working. It's working better than we could have ever imagined" (Lalezari).  ¶ 124.[14]  Plaintiffs nowhere allege facts demonstrating that CytoDyn controlled the content of these statements, nor the decision to communicate these opinions.  Absent such evidence, these statements are not actionable.  "The securities laws require [defendants] to speak truthfully to investors; they do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to the [defendant]." *Strassman v. Fresh Choice, Inc.*, 1995 WL 743728, at *9 (N.D. Cal. Dec. 7, 1995) (quoting *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 288 (4th Cir. 1993)); *see also In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947, 952 (9th Cir. 2017) (affirming dismissal of claim challenging third-party statement where statement did not "clearly originate" from defendant).  The outcome is no different where a third-party speaker is quoted in a Company press release, *see e.g.*, ¶ 329, because "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – and only by – the party to whom it is attributed."  *See Janus*, 564 U.S. at 142-43.

**B.**    **The Court Should Dismiss Count I in its Entirety as Against Mr. Mulholland and Dr. Kelly**

The Section 10(b) claim against Mr. Mulholland and Dr. Kelly fails for the additional reason that Plaintiffs premise that claim on statements that (with two exceptions) Mr. Mulholland

---

[14] Plaintiffs allege the Company appointed Dr. Lalezari as its Interim Chief Medical Officer on or around March 12, 2020, and that he held this position until April 13, 2020. *See* ¶¶ 39, 49.  But this is no basis to impose liability on CytoDyn for statements Dr. Lalezari purportedly made outside of this one-month period.

DEFENDANTS' MOTION TO DISMISS - 14
(No. 3:21-cv-05190-BHS)

and Dr. Kelly did not make.[15]  The SAC does not attribute *any* challenged statement to Mr. Mulholland, other than averring that, as CFO, he signed certain SEC filings in which challenged statements appear.[16]  Plaintiffs attempt to salvage their claim against Mr. Mulholland by alleging that he participated in the process of drafting or publishing certain of the Company's challenged press releases, *see generally* SAC Exhibit A, but playing "some role in the drafting, approving, and/or publishing of" allegedly false statements "is not enough to create liability under Section 10(b)."  *In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327, 1335 (W.D. Wash. 2019).  Nor do Plaintiffs establish that Mr. Mulholland somehow controlled or was responsible for the challenged statements that others made during investor calls or interviews.  *Id*. at 1336 ("Plaintiffs must allege non-conclusory facts giving rise to a plausible inference that [this defendant], as opposed to [other individual defendants], possessed the ultimate authority over the content and dissemination of the statements they made.");  *Coinstar*, 2011 WL 4712206, at *10 (declining to hold CEO, COO, and other executives liable for CFO's statement made on earnings call).[17]

Plaintiffs fare no better in their attempt to state a claim against Dr. Kelly.  Plaintiffs challenge an opinion he expressed about the efficacy of leronlimab and his statements regarding the NEWS2 findings in the CD10 trial.[18]  For the reasons discussed *supra* at 12-13, the challenged NEWS2 statement reflects a non-actionable scientific difference of opinion between the Company and the FDA regarding the interpretation of clinical trial data.  And Dr. Kelly's challenged

---

[15] Plaintiffs cannot escape this hurdle by asserting that all named defendants collectively are the "makers" of statements the Company issued, as courts have rejected such "group pleading" allegations.  *Coinstar*, 2011 WL 4712206, at *10 (rejecting as "unavailing" the argument for group pleading doctrine after *Janus*); *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1354 (C.D. Cal. 2014) (group pleading not compatible with the PSLRA's requirements) (collecting authorities).

[16] ¶¶ 186 (Form 10-Q filed January 8, 2021); 205 (March 8, 2021 Form 8-K); 276 (August 14, 2020 FY20 Form 10-K); 291 (October 9, 2020 "1Q21 Form 10-Q"); 406 (January 8, 2021 2Q21 Form 10-Q); 407 (April 14, 2021, 3Q21 Form 10-Q); 422 (March 8, 2021 8-K).  The challenged statements in these filings are not actionable for the reasons discussed above.  *See supra* at 4-6, 12-13.

[17] Of course, Mr. Mulholland cannot be liable for any challenged statement the Company or others made before he rejoined the Company in April 2020 or after he left CytoDyn in May 2021.

[18] *See* ¶¶ 378 ("We are pleased that leronlimab showed a statistically significant result in a randomized, double-blinded study for NEWS2"); 383 (agreeing with Dr. Lalezari as to the important of NEWS2, "Dr. Lalezari's statement, 'due to the objectivity of the NEWS2 versus the subjectivity of the symptom scale'"); 163 (speaking about NEWS2 finding, "We just showed statistical significance in a randomized, double-blinded, placebo-controlled study from a tool that helps identify which patients will deteriorate … I think that's remarkable.").

DEFENDANTS' MOTION TO DISMISS - 15
(No. 3:21-cv-05190-BHS)

September 2, 2020 statement – "*we think* that the reason that you're having less serious adverse events and adverse events is due to the effects of leronlimab … leronlimab *we believe* is helping to correct that problem" – is an expression of opinion. *See* ¶ 390 (emphasis added). The SAC does not establish that Dr. Kelly did not genuinely hold this opinion or that it was based on false facts. To the contrary, the correspondence Plaintiffs cite merely reflects the FDA's feedback on materials that could support the efficacy of leronlimab *before* conducting a randomized controlled trial, and would support the belief that CD10 was an exploratory "proof of concept" trial. *See* ¶¶ 565; 573; 574; 580.[19] These communications do not provide any basis to infer that Dr. Kelly did not genuinely believe the opinion he expressed. And with respect to challenged statements that Plaintiffs attribute to the Company or speakers other than Dr. Kelly – such as those in press releases, conference calls, and interviews – here again, Plaintiffs fail to allege that he had ultimate authority over the statements others made. *See In re Impinj, Inc., Sec. Litig*., 414 F. Supp. 3d at 1335 (playing "some role in the drafting, approving, and/or publishing of" press releases is not sufficient); *Coinstar*, 2011 WL 4712206, at *10.

### C.   Plaintiffs Fail to State a Scheme Liability Claim (Count II)

A claim for "scheme" liability under 17 C.F.R. § 240.10b-5(a) and (c) requires Plaintiffs to plead that defendants "employ[ed] [a] device, scheme, or artifice to defraud" or "engage[d] in an[] act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5(a), (c); *Stoneridge Inv. Partners*, 552 U.S. at 159. Plaintiffs' scheme liability claim fails because they do not identify any loss to investors from the purported stock promotion scheme distinct from the stock price drops associated with the alleged "corrective disclosures" of statements Plaintiffs challenge under Section 10b-5(b). *Stoneridge Inv. Partners,* 552 U.S. at 157-58 ("§ 10(b) implied private right of action" "must satisfy each of the elements or

---

[19] To the extent Plaintiffs assert that an internal email from Dr. Lalezari expressing his thoughts on the preliminary interpretation of data provide either a basis for falsity or evidence of scienter, they have alleged nothing more than scientific disagreement about data interpretation. *See supra* at 12-13; *see also City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 171 (3d Cir. 2014) ("[T]he disagreement of five employees within a large pharmaceutical company about the interpretation of clinical trial data … does not render defendants' decisions unreasonable or their statements false.").

DEFENDANTS' MOTION TO DISMISS - 16
(No. 3:21-cv-05190-BHS)

preconditions for liability," which include "(5) economic loss; and (6) loss causation"); *see also In re Edward D. Jones & Co., L.P. Sec. Litig.*, 2019 WL 2994486, at *7 (E.D. Cal. July 9, 2019). Nearly all of the allegations that Plaintiffs contend made up the alleged scheme to promote CytoDyn stock involve the same statements that Plaintiffs are already challenging under Section 10b-5(b). *See, e.g.,* ¶¶ 475-81 (referring to the same "seven press releases" and news interviews between March 27, 2020 and April 2, 2020 that Plaintiffs challenge at ¶¶ 312-21 for purposes of their Section 10b-5(b) claim). Plaintiffs make no attempt to show – as they must to establish this claim as a separate basis for liability under the securities laws – that any alleged "promotion" via these statements affected the stock price separately from the market reaction to the statements themselves. *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 200 (S.D.N.Y. 2020) ("scheme liability" claim requires "deceptive conduct apart from misrepresentations or omissions"); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017) (plaintiffs must allege "the effect *the scheme had* on investors in the securities at issue" (emphasis added)); *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (plaintiffs must prove "loss causation, i.e., a causal connection between the manipulative or deceptive device or contrivance and the loss" among other elements).

To the extent the SAC alleges that the stock promotion scheme involved statements other than those challenged in Count I or other activities that purportedly "inflated" the stock price, these also do not support the scheme claim. First, issuing press releases, participating in investor calls, providing interviews and presentations, engaging consultants to promote the Company, and "reiterat[ing] statements made by third parties on CytoDyn's website or in emails to investors," *see* ¶ 461, are lawful and commonplace activities that investors expect and account for in making decisions, especially where, as here, the Company disclosed its relationships with paid consultants. *See* ¶ 489 ("CytoDyn filed regular certifications with the OTCQB purportedly containing 'a complete list' of these providers 'from the Company's prior fiscal year end to the date of th[e] OTCQB Certification.'"). There is nothing "inherently deceptive" about this conduct. *SEC v. Chen*, 2019 WL 652360, at *18 (W.D. Wash. Feb. 15, 2019) (quoting *SEC v. Kelly*, 817 F. Supp.

DEFENDANTS' MOTION TO DISMISS - 17
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2d 340, 344 (S.D.N.Y. 2011)) (dismissing scheme liability claim because there was no evidence of an inherently deceptive act).[20]  Second, Plaintiffs do not allege how these other statements and activities resulted in a "loss" that is distinct from any loss tied to the purported correction of the challenged BLA and COVID-19 statements.  *See Stoneridge Inv. Partners*, 552 U.S. at 157-158; *Desai*, 573 F.3d at 939.  As with the other elements of a scheme liability claim, Plaintiffs must plead loss causation with particularity.  *Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 605 ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation").  The SAC fails to establish that any alleged stock promotion activities affected the stock price separate and apart from the challenged statements themselves.  For example, Plaintiffs allege that the scheme included Dr. Pourhassan texting a video created by a third party (not the Company) to others within and outside of the Company; while Plaintiffs note that CytoDyn's stock price and trading volume increased over some undefined period after the third party released the video (¶¶ 470-71),  the SAC does nothing to show that Dr. Pourhassan forwarding the video contributed to this alleged increase beyond the market reaction to the video that the third party had already publicly posted.  Similarly, the SAC fails to show that an article that was taken down from the Company's website on the same day that it was posted (¶ 469) affected the stock price or caused any loss to Plaintiffs.  This failure is fatal to Plaintiffs' scheme liability claim.[21]

### D. Plaintiffs Fail to State a Section 20(a) Control Person Claim Against Mr. Mulholland or Dr. Kelly (Count III)

A plaintiff asserting a Section 20(a) claim must demonstrate "(1) a primary violation of federal securities laws" and "(2) that the defendant exercised actual power or control over the

---

[20] The SAC does not allege that Mr. Mulholland or Dr. Kelly engaged in such additional activities, which provides an additional basis to dismiss the scheme claim as against them.  *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.").  The SAC's failure to allege that either Mr. Mulholland or Dr. Kelly acted with scienter (*see supra* at 15-16, *infra* at 19-21) is a further basis to dismiss the scheme claim as against them.  *See Desai*, 573 F.3d at 939 (plaintiff alleging a scheme claim must prove scienter, among other elements).

[21] The discussion of "Red Flags" at ¶¶ 484-494 – which consists of unsourced quotes attributed to the SEC followed by vague descriptions of the Company issuing press releases, issuing shares, and hiring marketing and public relations consultants that Plaintiffs admit the Company disclosed publicly, *see* ¶ 489 – also does not allege any losses caused by promoting, as opposed to simply making, the challenged statements.

DEFENDANTS' MOTION TO DISMISS - 18
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

primary violator." *Webb*, 884 F.3d at 858; *see also Align Tech.*, 856 F.3d at 623. Even if Plaintiffs could assert a primary violation,[22] that would not give rise to secondary liability against Mr. Mulholland or Dr. Kelly because Plaintiffs have failed to plead with particularity that either exercised the requisite control over the challenged conduct. Control is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Although the SAC describes Mr. Mulholland's and Dr. Kelly's duties and responsibilities and includes allegations that these individuals purportedly "reviewed and approved" certain challenged statements (SAC Ex. A), that alone "does not rise to a level of supervision or participation sufficient for a § 20(a) violation." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 n.13 (9th Cir. 2000). This is especially true where Plaintiffs also allege (*see* ¶¶ 609-14) that Dr. Pourhassan exercised such control over the Company's operations that he purportedly "pushed out" any executives *or board members* who questioned his actions.

**E.    Plaintiffs Fail to State a Section 20A Claim Against Mr. Mulholland or Dr. Kelly (Count IV)**

Plaintiffs' insider trading claim against Mr. Mulholland and Dr. Kelly also fails. Plaintiffs must establish that Mr. Mulholland and Dr. Kelly committed "an independent violation of the securities laws," that each acted with scienter, and that each sold CytoDyn stock while in possession of material, non-public information. *City of Royal Oak Ret. Sys.*, 2013 WL 2156358, at *10 (N.D. Cal. May 17, 2013); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) (plaintiffs must plead scienter with particularity for Section 20A claim); *Bolling v. Dendreon Corp.*, 2014 WL 2533323, at *16 (W.D. Wash. June 5, 2014) (§20A claim failed where complaint did "not plead a strong inference of scienter."). Plaintiffs must allege "specifically what

---

[22] Because Plaintiffs have failed to state a claim for "scheme" liability (*see* 16-18, *supra*), any control person claim based on that alleged conduct fails due to Plaintiffs' failure to plead a primary violation. *See Align Tech.*, 856 F.3d at 623.

DEFENDANTS' MOTION TO DISMISS - 19
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

information [defendant] obtained, when and from whom he obtained it, and how he used it for his own advantage." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Because, as explained above, Plaintiffs fail to adequately allege an independent securities law claim against either Mr. Mulholland or Dr. Kelly, the dependent Section 20A claim necessarily fails. *See, e.g., City of Edinburgh Council*, 754 F.3d at 175 ("Section 20A … requires *the alleged insider trader* to have committed an independent violation") (emphasis added); *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629, at *15 (C.D. Cal. July 10, 2008) (defendant who had not "'violate[d] any provision' of the Securities Exchange Act under § 20A" was not liable for insider trading even where plaintiffs had stated a claim as to other defendants); *In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *35 (S.D. Cal. Aug. 1, 2006) (dismissing Section 20A claims against parties dismissed from Section 10(b) claims).

Plaintiffs' Section 20A claim fails for the additional reason that the SAC does not plead that Mr. Mulholland or Dr. Kelly "actually used" the purported material nonpublic information in making the challenged trades. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202-203 (C.D. Cal. 2008) (for Section 20A claim, "[s]cienter and loss causation … requires that the insider *actually use* … the inside information in deciding to make the trade"). As Plaintiffs concede, Mr. Mulholland's alleged sales were made under a pre-existing Rule 10b5-1 trading plan. ¶ 605. Such sales, which *do not involve discretion*, "rebut an inference of scienter." *Metzler*, 540 F.3d at 1067 n.11 (alteration and citation omitted); *see also In re Nektar Therapeutics*, 2020 WL 3962004, at *16 (N.D. Cal. July 13, 2020) (sales made under Rule 10b5-1 trading plans "weigh[] against an inference of scienter"). In addition, by the time Mr. Mulholland entered into the trading plan that resulted in the sales in question (November 2020 (¶ 605)), CytoDyn had already disclosed – and the market had already reacted to – what Plaintiffs themselves describe as the "material" and "major" negative news about the BLA and COVID-19 development. *See, e.g.,* ¶¶ 504-09 (July 13, 2020 announcement of RTF Letter); 510-521 (September 16, 2020 disclosures that CytoDyn could not give a timeline for BLA resubmission and did not submit a formal request for EUA for mild-to moderate COVID-19 patients). The price at which these pre-planned sales occurred also

DEFENDANTS' MOTION TO DISMISS - 20
(No. 3:21-cv-05190-BHS)

undercuts any inference that they were "calculated to maximize the personal benefit from undisclosed inside information." *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (sales do not support scienter "[w]hen insiders miss the boat this dramatically"). The highest price for these sales – $7.00 per share – was well below the class period high of $10.01. ¶ 605; Ex. K, CytoDyn Historical Stock Data at 2; *see also In re AnaptysBio, Inc.*, 2021 WL 4267413, at *9 (sales at prices "significantly lower" than the peak "undermines an inference of scienter").[23]

With respect to Dr. Kelly's challenged May 1, 2020 sale, the SAC fails to establish that, *on that date,* Dr. Kelly knew that the BLA that CytoDyn submitted on April 27, 2020 did not include the clinical datasets that CytoDyn submitted to the FDA on May 11, 2020. *See* ¶ 127 (alleging that FDA responded *to Amarex* on April 29, 2020 about the BLA filing, and that Amarex provided that correspondence *to Dr. Pourhassan* on April 30, 2020). Plaintiffs do not allege that this correspondence was ever forwarded to Dr. Kelly, much less that he received it before his challenged May 1 sale. The more cogent and compelling inference, *see Tellabs*, 551 U.S. at 323-324, is that Dr. Kelly (as is common for corporate officers) simply sought to sell a certain number of shares once CytoDyn filed the BLA and his options vested.[24] *Ronconi*, 253 F.3d at 435 ("[N]ot every sale of stock by a corporate insider shows that the share price is about to decline."); *see also Lipton*, 284 F.3d at 1037 (officers "commonly make stock transactions following the public release of quarterly earnings.").[25]

Finally, the Court should also dismiss Plaintiffs' Section 20A claim on the independent ground that it fails to plead the required contemporaneous trading between Plaintiffs and Dr. Kelly or Mr. Mulholland for the vast majority of the transactions on which it is premised. *See In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) (insider's sale and plaintiff's purchase

---

[23] The Court can take judicial notice of historical stock prices. *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017).

[24] While the SAC cites numerous interviews Proactive Investors conducted about the Company, Plaintiffs choose not to cite the May 4, 2020 Proactive Investors interview which explained that Dr. Kelly exercised options and made the sale in question at the request of CytoDyn's CEO to provide capital to the Company to fund ongoing operations. *See* CytoDyn Updates, *CytoDyn Expects to Fully Enroll Its Trial to Treat Coronavirus Patients by the End of May (Proactive)*, YOUTUBE (May 4, 2020), https://www.youtube.com/watch?v=7Tu7bbaIspM (starting at 3:50).

[25] Like Mr. Mulholland's challenged sale, Dr. Kelly's May 1, 2020 sale was at a price ($3.37, ¶ 604) well below the class period high, which also undermines a scienter inference. *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *9.

DEFENDANTS' MOTION TO DISMISS - 21
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

must occur on the same day, noting "[t]he same day standard is the only reasonable standard given the way the stock market functions.").[26]  Although Plaintiff Hooper purchased CytoDyn stock on the date that Dr. Kelly sold stock (¶ 628) and Plaintiff McGee purchased on dates Mr. Mulholland sold stock (¶ 627), because Mr. McGee's December 17, 2020 purchase was at a lower price ($4.3830) than the range at which Mr. Mulholland allegedly sold on that day ($4.50 to $4.68 (*id*. ¶ 605)), that alleged purchase cannot support a Section 20A claim.  *See* Dkt. 104-4; *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp.3d 1113, 1136 (N.D. Cal. 2020) (purchase below defendant's sale price does not support 20A claim "because it is impossible that those trades occurred with defendant at an unfair advantage.").  Thus, even if the SAC did plead the other elements of a Section 20A claim – and it does not – the claim can only proceed as to those Plaintiffs, and based on their alleged purchases, for which there was contemporaneous trading.

## III.   CONCLUSION

For the foregoing reasons, the Court should dismiss: (1) Count I in its entirety as against Mr. Mulholland and Dr. Kelly, and in part as against CytoDyn; (2) Count II in its entirety as against all moving defendants; and (3) Counts III and IV in their entirety as against Mr. Mulholland and Dr. Kelly.

---

[26] While one decision in this District adopts a broader approach to the contemporaneous trading requirement, *see In re Cell Therapeutics, Inc. Class Action Litig.*, 2011 WL 444676, at *9 (W.D. Wash. Feb. 4, 2011) (two-business-day gap between sale and purchase satisfies requirement), this approach is inconsistent with the purpose of the requirement, which "functions as a substitute for privity." *In re Aldus Sec. Litig.*, 1993 WL 121478, at *7 (W.D. Wash. Mar. 1, 1993).

DEFENDANTS' MOTION TO DISMISS - 22
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 31st day of January, 2023.

DAVIS WRIGHT TREMAINE LLP

By: *s/ Fred B. Burnside*
    Fred B. Burnside, WSBA #32491
    Brendan T. Mangan, WSBA #17231
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Tel: 206-622-3150
Fax: 206-757-7700
Email: fredburnside@dwt.com
          brendanmangan@dwt.com

WILMER CUTLER PICKERING
  HALE and DORR LLP
Michael G. Bongiorno (*Pro Hac Vice*)
Kevin P. Muck (*Pro Hac Vice*)
Peter J. Kolovos (*Pro Hac Vice*)
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Email: michael.bongiorno@wilmerhale.com
          kevin.muck@wilmerhale.com
          peter.kolovos@wilmerhale.com

*Attorneys for Defendants CytoDyn Inc.,*
*Michael Mulholland, and Scott A. Kelly*

DEFENDANTS' MOTION TO DISMISS - 23
(No. 3:21-cv-05190-BHS)