The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| BRIAN JOE COURTER, COURTER AND SONS LLC, DIANE M. HOOPER, THOMAS MCGEE, and CANDRA E. EVANS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CYTODYN INC., NADER Z. POURHASSAN, MICHAEL MULHOLLAND, and SCOTT A. KELLY,<br><br>Defendants. | Case No. 3:21-cv-05190-BHS<br><br>**PLAINTIFFS' OMNIBUS OPPOSITION TO MOTIONS TO DISMISS**<br><br>**NOTED ON MOTION CALENDAR:**<br>**May 1, 2023**<br><br>**REDACTED PUBLIC VERSION** |

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS
Case No. 3:21-cv-05190-BHS

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 1 |
|  | A. Defendants Tout the HIV BLA Prior to the Start of the Class Period | 1 |
|  | B. Defendants Seize the COVID-19 Opportunity to Further Hype Leronlimab | 2 |
|  | C. As the Class Period Begins, Defendants Violate Section 10(b) by Hyping Leronlimab as an HIV and COVID-19 Treatment | 4 |
|  | D. With BLA Resubmission Timing Uncertain, Defendants Tout Results of COVID-19 Clinical Trials | 5 |
|  | E. The Class Period Ends with Devastating Clinical Holds | 7 |
| III. | ARGUMENT | 8 |
|  | A. Defendants Violated Section 10(b) | 8 |
|  |    1. Defendants' Rule 10b-5(b) Conduct | 8 |
|  |       a. The BLA Statements and Omissions | 8 |
|  |       b. COVID-19 Statements and Omissions | 14 |
|  |          i. eIND Statements and Omissions | 14 |
|  |          ii. CD10 Statements and Omissions | 17 |
|  |          iii. CD12 Statements and Omissions | 22 |
|  |       c. No Safe Harbor Protection | 26 |
|  |       d. Defendants' "Opinion" Statements Are Actionable | 28 |
|  |       e. Defendants' Statements Are Not Puffery | 30 |
|  |    2. Defendants' Rule 10b-5(a&c) Conduct | 32 |
|  |    3. CytoDyn is Liable for its Agents' Acts | 36 |
|  | B. Plaintiffs' Section 20(a) Claims | 38 |
|  | C. Plaintiffs' Section 20A Claims | 39 |
| IV. | CONCLUSION | 42 |

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE i
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allstate Life Insurance Company Litigation*,
  2012 WL 1900560 (D. Ariz. May 24, 2012) ................................................................37, 38

*Alphabet Securities Litigation, R.I. v. Alphabet, Inc.*,
  1 F.4th 687 (9th Cir. 2021) ..........................................................................12, 21, 38

*In re Amgen Inc. Securities Litigation*,
  544 F. Supp. 2d 1009 (C.D. Cal. 2008) ......................................................................12, 39

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
  568 U.S. 455 (2013) ..............................................................................................12

*In re Amylin Pharmaceuticals, Inc. Securities Litigation*,
  2003 WL 21500525 (S.D. Cal. May 1, 2003) .............................................................13, 16, 27

*Asher v. Baxter, International Inc.*,
  377 F.3d 727 (7th Cir. 2004) .................................................................................13

*In re Atossa Genetics Inc. Securities Litigation*,
  868 F3d 784 (9th Cir. 2017) ................................................................................ *passim*

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988) ..............................................................................................12

*Berson v. Applied Signal Technology, Inc.*,
  527 F.3d 982 (9th Cir. 2008) .................................................................................27

*In re Biogen Securities Litigation*,
  179 F.R.D. 25 (D. Mass. 1997) ...............................................................................20

*In re BioMarin Pharm. Inc. Securities Litigation*,
  2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ..............................................................15, 27, 31

*In re Cell Therapeutics, Inc. Class Action Litigation*,
  2011 WL 444676 (W.D. Wash. Feb. 4, 2011) .............................................................26

*In re ChinaCast Education Corp. Securities Litigation*,
  809 F.3d 471 (9th Cir. 2015) ................................................................................36, 37

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE ii
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*City of Birmingham Relief and Retirement System v. Acadia Pharmaceuticals, Inc.*,
 2022 WL 4491093 (S.D. Cal. Sept. 27, 2022)........................................................ *passim*

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
 856 F. 3d 605 (9th Cir. 2017) ..............................................................28, 29, 30

*In re Countrywide Financial Corp. Securities Litigation*,
 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..........................................................41

*In re CV Therapeutics, Inc. Securities Litigation*,
 2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) .................................................. *passim*

*In re CytRx Corp. Securities Litigation*,
 2015 WL 5031232 (C.D. Cal. July 13, 2015).....................................................35

*Desai v. Deutsche Bank Securities Ltd.*,
 573 F.3d 931 (9th Cir. 2009) .........................................................................33

*In re Dura Pharmaceuticals Inc. Securities Litigation*,
 548 F. Supp. 2d 1126 (S.D. Cal. 2008).............................................................17

*Evanston Police Pension Fund v. McKesson Corp.*,
 411 F. Supp. 3d 580 (N.D. Cal. 2019) .........................................................40, 42

*In re FibroGen, Inc., Securities Litigation*,
 2022 WL 2793032 (N.D. Cal. July 15, 2022).............................................. 19, 26, 31

*In re FirstEnergy Corp.*,
 2022 WL 681320 (S.D. Ohio Mar. 7, 2022)................................................. *passim*

*Frater v. Hemispherx Biopharma, Inc.*,
 996 F. Supp. 2d 335 (E.D. Pa. 2014) ...................................................... *passim*

*Freedman v. St. Jude Medical, Inc.*,
 4 F. Supp. 3d 1101 (D. Minn. 2014)..................................................................16

*In re Galena Biopharma, Inc. Derivative Litigation*,
 83 F. Supp. 3d 1047 (D. Or. 2015) ...................................................................37

*In re Galena Biopharma, Inc. Securities Litigation*,
 117 F. Supp. 3d 1145 (D. Or. 2015) .................................................................33

*Gerneth v. Chiasma, Inc.*,
 2018 WL 935418 (D. Mass. Feb. 15, 2018) ..................................................11, 20

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE iii
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
__ F.4th __, 2023 WL 2532061 (9th Cir. Mar 16, 2023) ................................................. *passim*

*Glickenhaus & Co. v. Household International, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...................................................................................37

*Government of Guam Retirement Fund v. Invacare Corp.*,
2014 WL 4064256 (N.D. Ohio Aug. 18, 2014) ...................................................................22

*Hefler v. Wells Fargo & Co.*,
2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ...........................................................40

*Hollinger v. Titan Capital Corp.*,
914 F.2d 1564 (9th Cir. 1990) ...................................................................................37

*Howard v. Everex Systems, Inc.*,
228 F.3d 1057 (9th Cir. 2000) .....................................................................11, 38, 39

*Hufangle v. Rino International Corp.*,
2013 WL 3976833 (C.D. Cal. Aug. 1, 2013).................................................................30

*In re Immune Response Securities Litigation*,
375 F. Supp. 2d 983 (S.D. Cal. 2005)...............................................................18, 38

*In re Intuitive Surgical Securities Litigation*,
2017 WL 4355072 (N.D. Cal. Sept. 29, 2017) .........................................................29

*Jaeger v. Zillow Group, Inc.*,
2022 WL 17486297 (W.D. Wash. Dec. 07, 2022) .............................................22, 38

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)...............................................................................................8, 35

*Johnson v. Aljian*,
257 F.R.D. 587 (C.D. Cal. 2009) ..............................................................................40

*In re Juno Therapeutics, Inc.*,
2017 WL 2574009 (W.D. Wash. June 14, 2017)....................................9, 11, 13, 22

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ................................................................................ *passim*

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013)......................................................................................21

*In re Leapfrog Enterprise, Inc. Securities Litigation*,
2017 WL 4877451 (N.D. Cal. Aug. 10, 2017) .........................................................30

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE iv
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Leavitt v. Alnylam Pharmaceuticals Inc.*,
   451 F. Supp. 3d 176 (D. Mass. 2020) ...............................................................30

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ........................................................................40

*Lorenzo v. Securities and Exchange Commission*,
   ___ U.S. ___, 139 S. Ct. 1094 (2019).......................................................... *passim*

*In re MannKind Securities Actions*,
   835 F. Supp. 2d 797 (C.D. Cal. 2011) ........................................................ *passim*

*In re MindBody, Inc. Securities Litigation*,
   489 F. Supp. 3d 188 (S.D.N.Y. 2020)...............................................................33

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) ..........................................................................34

*Mulligan v. Impax Laboratories, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ...............................................................31

*In re Myriad Genetics, Inc. Securities Litigation*,
   2021 WL 977770 (D. Utah Mar. 16, 2021) ....................................................19, 21

*In re NeoPharm, Inc. Securities Litigation*,
   2003 WL 262369 (N.D. Ill. Feb. 7, 2003) ........................................................17

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ..............................................................................41

*Nguyen v. Radient Pharmaceuticals Corp.*,
   2011 WL 13141630 (C.D. Cal. Oct. 26, 2011)...................................................39

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ..........................................................................36

*Norris v. Dreyfuss*,
   2008 WL 11419062 (C.D. Cal. Nov. 11, 2008)...................................................37

*In re Nuvelo, Inc. Securities Litigation*,
   668 F. Supp. 2d 1217 (N.D. Cal. 2009) ............................................................26

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*,
   575 U.S. 175 (2015)..............................................................................28, 29, 30

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE v
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Pardi v. Tricida, Inc.*,
　2022 WL 3018144 (N.D. Cal. July 29, 2022)..............................................................11, 13, 16

*Petrie v. Electronic Game Card Inc.*,
　2011 WL 165402 (C.D. Cal. Jan 12, 2011) ...............................................................38

*Pirani v. Slack Technologies, Inc.*,
　445 F. Supp. 3d 367 (N.D. Cal. 2020) .......................................................................38

*Provenz v. Miller*,
　102 F.3d 1478 (9th Cir. 1996) ...................................................................................12

*In re PTC Therapeutics, Inc. Securities Litigation*,
　2017 WL 3705801 (D.N.J. Aug. 28, 2017) .................................................19, 21, 23

*In re Quality Systems Securities Litigation*,
　865 F.3d 1130 (9th Cir. 2017) ...................................................................................26

*Rabkin v. Lion Biotechs, Inc.*,
　2018 WL 905862 (N.D. Cal. Feb. 15, 2018) .......................................................33, 35

*In re Regeneron Pharmaceuticals, Inc. Securities Litigation*,
　2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)................................................................14

*Schueneman v. Arena Pharmaceuticals, Inc.*,
　840 F.3d 698 (9th Cir. 2016) ............................................................................. *passim*

*SEB Investment Management AB v. Symantec Corp.*,
　335 F.R.D. 276 (N.D. Cal. 2020)...............................................................................40

*Securities and Exchange Commission v. Chen*,
　2019 WL 652360 (W.D. Wash. Feb. 15, 2019)........................................................33

*Securities and Exchange Commission v. Daifotis*,
　874 F. Supp. 2d 870 (N.D. Cal. 2012) .....................................................................38

*Securities and Exchange Commission v. Kameli*,
　2020 WL 2542154 (N.D. Ill. May 19, 2020)..............................................................8

*Securities and Exchange Commission v. OwnZones Media Network, Inc.*,
　2020 WL 13311398 (C.D. Cal. Sept. 17, 2020) .......................................................37

*Shanawaz v. Intellipharmaceutics International Inc.*,
　348 F. Supp. 3d 313 (S.D.N.Y. 2018)..................................................................10, 11

*Skiadas v. Acer Therapeutics Inc.*,
　2020 WL 3268495 (S.D.N.Y. June 16, 2020) ..........................................................24

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE vi
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Smith v. Lifevantage Corp.*,
    341 F.R.D. 82 (D. Utah 2022) ......................................................................................34

*In re Splunk Inc. Securities Litigation*,
    592 F. Supp. 3d 919 (N.D. Cal. 2022) .........................................................................31

*In re STEC Inc. Securities Litigation*,
    2011 WL 2669217 (C.D. Cal. June 17, 2011) ..............................................................25

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014).........................................................................................41

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)......................................................................................................33

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) .......................................................................41

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ..............................................................31

*Tomaszewski v. Trevana, Inc.*,
    482 F. Supp. 3d 317 (E.D. Pa. 2020) ...........................................................................12

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)....................................................................................29, 30

*In re Transkaryotic Therapies, Inc. Securities Litigation*,
    319 F. Supp. 2d 152 (D. Mass. 2004) ...............................................................13, 14, 20

*In re VeriFone Holdings, Inc. Securities Litigation*,
    704 F.3d 694 (9th Cir. 2012) .......................................................................................40

*In re Vicuron Pharm., Inc. Securities Litigation*,
    2005 WL 2989674 (E.D. Pa. July 1, 2005)...............................................................16, 23

*In re Viropharma Inc., Securities Litigation*,
    2003 WL 1824914 (E.D. Pa. Apr. 3, 2003) ..................................................................15

*Warshaw v. Xoma Corp.*,
    74 F. 3d 955 (9th Cir. 1996) ................................................................................. *passim*

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) .......................................................................27

*Zak v. Chelsea Therapeutics International, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ................................................................................. *passim*

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE vii
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**Statutes**

15 U.S.C. § 78t-1(a) ..............................................................................................39, 40, 41

15 USC § 78u-4(b)(4) ..................................................................................................33

Securities Exchange Act of 1934 .......................................................................... *passim*

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE viii
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## I.     INTRODUCTION[1]

CytoDyn, Inc. ("CytoDyn") has focused on the development of a single drug, leronlimab, for 10+ years with nothing to show for its efforts but a deficit of over $350 million, millions of dollars of unusable inventory, failed clinical trials, adverse regulatory decisions (including two clinical holds), an abandoned investigational new drug ("IND") program, a failed biologics license application ("BLA"), and a former CEO criminally-indicted for fraud. Based on *evidence* adduced from documents Defendants produced following Plaintiffs' successful motion to modify the PSLRA discovery stay, the SAC alleges that during the Class Period,[2] CytoDyn, then-CEO, Nader Z. Pourhassan ("Pourhassan"), then-CFO, Michael Mulholland ("Mulholland"), and then-CMO, Scott A. Kelly ("Kelly") violated Sections 10(b), 20(a), and 20A of the Exchange Act by making materially false and misleading statements and engaging in a fraudulent scheme concerning Defendants' woeful attempts to achieve FDA approval of leronlimab to treat HIV and COVID-19. Plaintiffs allege these violations with a specificity well-beyond what is required at the pleading stage. Accordingly, the Motions[3] should be denied.

## II.     STATEMENT OF FACTS

### A.     Defendants Tout the HIV BLA Prior to the Start of the Class Period

CytoDyn's sole focus has been obtaining FDA approval of leronlimab. ¶59. For years before the Class Period, CytoDyn studied leronlimab as a treatment for HIV in clinical trials (i.e., CD01, CD02 and CD03), and engaged with the FDA about the required contents of a BLA for leronlimab for an HIV indication. ¶¶60-61. In that dialogue, the FDA ███████████████████ ███████████████████████████████████████████ ███████████████████████████████████ ¶¶63-64, 548-52.

---

[1]     Unless otherwise noted: (i) all capitalized terms have the same meaning ascribed to them in the Second Amended Class Action Complaint ("SAC"); (ii) all emphasis is added; and (iii) all internal citations and quotations have been omitted. Citations to ¶_ refer to the SAC.

[2]     The Class Period is March 27, 2020 to March 30, 2022.

[3]     "Motions" refers to Defendants CytoDyn, Mulholland, and Kelly's Motion to Dismiss the SAC, Dkt. #116 ("DB") and Defendant Pourhassan's Partial Joinder therein, Dkt. #123 ("PB").

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 1
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000



In December 2018, the FDA told Defendants that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ¶¶69, 548-52. Because CytoDyn's ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ¶¶66-67. But the FDA ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ¶70. ▮▮▮▮▮▮▮ ¶71. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ¶¶74-83, 548-52.

Prior to the Class Period, Defendants sought to maintain or increase CytoDyn's stock price, which typically traded well under $1.00/share (¶459), by claiming that FDA approval of leronlimab for HIV was imminent. ¶¶66, 86. But delays to the announced BLA submission timeline negatively impacted CytoDyn's stock price. ¶117. Thus, by the start of the Class Period, Defendants were hyper-focused on completing CytoDyn's BLA submission, with Pourhassan internally stating, "[i]f we can't get BLA done…we will have another tremendous drop in our stock." *Id.* However, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ¶¶188-89.

**B.    Defendants Seize the COVID-19 Opportunity to Further Hype Leronlimab**

In January 2020, the COVID-19 pandemic presented Defendants a potential lifeline—a new potential leronlimab indication to hype to investors. ¶¶87-88. CytoDyn issued its first COVID-19 press release ("PR") on January 28, 2020 and began touting its discussions with the FDA. ¶¶89-101. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ¶¶90-91.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 2
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000



¶¶93, 97-100.

¶¶98-99.

¶¶98-99.

*Id.* The FDA separately authorized emergency INDs ("eINDs"), one-off requests by doctors to include leronlimab in COVID-19 treatments,

¶¶96, 100.

¶99.

Defendants understood the potential peril of hyping leronlimab as a COVID-19 treatment. Shortly after his appointment as CytoDyn's interim-CMO, Dr. Jacob Lalezari ("Lalezari")

Dr. Kush Dhody ("Dhody")[4]

¶94.

*Id.*

---

[4] Dhody was the Senior VP of Clinical Operations at Amarex Clinical Research LLC ("Amarex"), CytoDyn's clinical research organization throughout the Class Period.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 3
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**C.    As the Class Period Begins, Defendants Violate Section 10(b) by Hyping Leronlimab as an HIV and COVID-19 Treatment**

On March 27, 2020, the first day of the Class Period, Defendants issued a PR touting in-vitro laboratory data obtained from the COVID-19 eINDs. ¶102. In that week alone, Defendants issued seven PRs and paid for three promotional interviews to promote this data, claiming that the eIND data "show[ed]" leronlimab was treating COVID-19 and the FDA had authorized CytoDyn to conduct two clinical trials as a result. ¶¶312-21, 475-78. Defendants' statements spawned articles, more interviews, and analyst reports, which Defendants then promoted to investors. ¶¶476-80. In response to Defendants' statements and promotional efforts, CytoDyn's stock price closed above $3.00 for the first time since December 2011. ¶481.

Defendants repeated this pattern as CytoDyn's stock price and trading volume increased in response during the Class Period. For instance, Defendants publicly claimed leronlimab was "working" and "demonstrated immunological benefit" in eIND patients, and the FDA believed leronlimab could treat COVID-19. ¶¶328-31, 339-50, 358-67. ***But none of Defendants' statements were true***, ████████████████████████████████████████ ¶¶565-79. ████████████████████████████████████ ████████████████████████████████████ ¶592. Nevertheless, Defendants continued to falsely promote leronlimab as a treatment for COVID-19 in the exact same fashion. ¶¶111-12.

Meanwhile, investors still expected Defendants to complete CytoDyn's long-promised BLA. ¶¶116-17. Thus, three weeks into the Class Period, Pourhassan ordered CytoDyn's clinical research organization, Amarex, to submit the clinical portion of CytoDyn's BLA ***without the safety and dosage data the FDA required*** ████████████████████ ¶118. On April 27, 2020, CytoDyn submitted the BLA to the FDA (the "April 2020 Submission") and Defendants falsely told investors that the BLA was "complete." ¶¶121-23. The FDA immediately chastised Defendants for their misrepresentations, warning in a nonpublic April 29, 2020 letter that the April

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 4
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

2020 Submission "do[es] not constitute a completed BLA…as [CytoDyn] acknowledged in [the] cover[] letter with the [] submission," and asking them "to take regulatory responsibility for the *misinformation*" in their PRs. ¶127. On the very next day, April 30, Pourhassan and Kelly began selling $18.9 million in CytoDyn stock. ¶¶128-30.

Defendants did not publicly admit the April 2020 Submission was incomplete until May 4, 2020. *Id.* ███████████████████████ the admission caused CytoDyn's stock price to plunge. ¶¶130-31, 501-03. Two weeks later, however, Defendants lied again, assuring investors that the BLA was *now* "complete" (the "May 2020 Submission") even though they knew that the BLA still lacked the required safety and dosage data. ¶134.

On July 8, 2020, the FDA sent Defendants a nonpublic RTF Letter because the May 2020 Submission "ha[d] numerous omissions and inadequacies so severe as to render the application incomplete…." ¶¶144-48. In the RTF Letter, the FDA reminded Defendants that it had repeatedly requested the safety and dosage data missing from the BLA. *Id.* It also rejected CytoDyn's validation methodology for dosage data ████████████████████████ ¶190. Now, the only way CytoDyn could comply with the FDA's requirements for a complete BLA ██ ████████████ ¶¶192-93. CytoDyn's stock price declined following Defendants' July 13, 2020 announcement that CytoDyn had received the RTF Letter. ¶¶149-50, 504-09. Attempting to salvage the situation, Defendants knowingly misrepresented the contents of the RTF Letter and CytoDyn's ability to timely resubmit the BLA. ¶¶258-66, 276-81, 288-93.

**D. With BLA Resubmission Timing Uncertain, Defendants Tout Results of COVID-19 Clinical Trials**

Following the RTF Letter, Defendants tried to change the public narrative to leronlimab's COVID-19 potential. ¶156. At the end of July 2020, Defendants announced recently unblinded results of CD10. ¶¶157-60. While CD10 missed its primary endpoint, Defendants assured investors that the "more important" "statistically significant" results for the National Early Warning Score 2 scale ("NEWS2") secondary endpoint demonstrated leronlimab's COVID-19 MoA and

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 5
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

effectiveness, and thus supported EUA. ¶¶161-64. Defendants also told investors that CytoDyn had "requested" EUA based on CD10. *Id.* These were more lies. In truth, Defendants knew that ███████████████████████████████████████████████ ¶¶171, 182, 185, 374-90, 398-400, 406-07. Defendants also knew that CytoDyn had not requested EUA, a fact they were forced to admit on September 16, 2020. ¶¶173-79. That news and Defendants' continued refusal to provide a timeline for resubmitting the BLA caused CytoDyn's stock price to decline again. ¶¶510-21.

Defendants next turned investors' focus to CytoDyn's Phase 2b/3 COVID-19 trial for severe-to-critical patients ("CD12"). On February ██ 2021, Defendants unblinded the CD12 results and discovered that the trial missed all of its endpoints. ¶195. ████████ Defendants sent the FDA a nonpublic Executive Summary ███████████████████████████████ ¶197. On February 18, 2021, the FDA privately ███████████████████████████████████████ ¶¶198-99. Defendants ████████ ████████████████████████████████████████████████████ ██████████████████████████████ ¶200. The FDA's answer was swift—on February 25, 2021, it told Defendants in nonpublic correspondence that ███████████████████████████ ████████████████████████████████████████████████████ ████ ¶201.

Investors learned that CD12 missed all of its endpoints on March 8, 2021 and CytoDyn's stock price declined. ¶¶522-30. However, █████████████████████████████████ ████████████████████████████ Defendants publicly claimed that CD12 demonstrated leronlimab was effective and announced that CytoDyn had requested EUA. ¶206-10, 439.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 6
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants continued to tout CD12's results until May 17, 2021, when the FDA issued a devastating public "Statement on Leronlimab." ¶218. The FDA's Statement confirmed that "the data currently available d[id] not support the clinical benefit of leronlimab for [] COVID-19," CD10 "showed no clinically meaningful differences" in the NEWS2 endpoint, and none of the CD12 subgroup analyses "met statistical significance when using established and reliable analytical methods." ¶¶218, 531. CytoDyn's stock price declined in response. ¶¶531-35.

Uncowed, Pourhassan spoke with investors the next day. After reading portions of one of three nonpublic letters Defendants received rejecting EUA, Pourhassan claimed that none of Defendants' statements were inconsistent with the FDA's Statement. ¶448. Defendants also continued to make materially false and misleading statements about the CD12 results and the path to approval for leronlimab. ¶¶448-58.

### E.    The Class Period Ends with Devastating Clinical Holds

After Defendants announced that CytoDyn did not have a timeline to resubmit the BLA, Defendants continued to publicly claim throughout 2021 that the FDA was not requiring another clinical trial and that CytoDyn had the data needed to resubmit the BLA. ¶¶211, 288-302. But again, these were lies. ¶¶303-11. █████████████████████████████████

█████████████████████████████████████████████████████████

████████ ¶213. Compounding these issues, Defendants had lost access to CytoDyn's trial data held by Amarex. ¶¶214-15.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████ ¶216. Six months later, on March 30, 2022, investors finally learned the relevant truth regarding the likelihood of FDA approval of leronlimab when CytoDyn announced the FDA had placed clinical holds on both the HIV and COVID-19 IND programs. ¶230. CytoDyn's stock price declined as a result. ¶¶536-45.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 7
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

III.    **ARGUMENT**

A.    **Defendants Violated Section 10(b)**

To state a Section 10(b) claim, Plaintiffs must allege that each Defendant committed a deceptive act with scienter, reliance, loss causation, and damages. *See Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) ("*Arena*"); *Lorenzo v. SEC* ___ U.S. ___, 139 S. Ct. 1094, 1100-1101 (2019). Rule 10b-5 prohibits various types of deceptive conduct constituting securities fraud: (i) if defendants "make" a materially false and misleading statement with scienter, they are primarily liable under Rule 10b-5(b), *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011); (ii) if defendants "disseminate" a materially false and misleading statement with scienter, they are primarily liable under Rule 10b-5(a&c), *Lorenzo*, 139 S. Ct. at 1100-01; and (iii) if defendants "make" *and* "disseminate" materially false and misleading statements with scienter, they are liable under each sub-section of Rule 10b-5, *id.*; *SEC v. Kameli*, 2020 WL 2542154, *15 (N.D. Ill. May 19, 2020) (finding that Rule 10b-5(a&c) claims may be predicated on same conduct supporting Rule 10b-5(b) claims).

Plaintiffs allege that (i) Defendants violated Section 10(b) because they "made" (Rule 10b-5(b)) and "disseminated" or promoted (Rule 10b-5(a&c)) materially false and misleading statements regarding CytoDyn's BLA and COVID-19 IND with scienter, and (ii) CytoDyn's stock price declined when the relevant truth was revealed over six partially corrective events, thereby removing inflation caused or maintained by Defendants' violations, damaging investors. As explained herein, Plaintiffs have adequately alleged all elements for their Section 10(b) claims based on Rule 10b-5(b) and Rule 10b-5(a&c) conduct.

1.    **Defendants' Rule 10b-5(b) Conduct**

a.    **The BLA Statements and Omissions**

**April and May 2020 Submissions Statements and Omissions**. Throughout the Class Period, Defendants described the April and May 2020 Submissions as "complete." ¶¶236-42, 253-55, 258, 261, 278, 292. These statements were materially false and misleading because CytoDyn

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 8
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

lacked data, information, and analyses that had been identified by the FDA as critical components of a "complete" BLA submission, and, thus, never submitted a complete BLA. ¶¶244-52, 257-59. Plaintiffs further allege that when they spoke, Defendants each: (i) ███████████████ ████████████████████████████████████████████ ██████████ and (ii) knew that CytoDyn was ████████ it needed to submit a complete BLA. ¶¶224-52, 257. Plaintiffs likewise allege that Pourhassan directed the BLA filing even though it was "short" of data, CytoDyn's nonpublic April 2020 Submission cover letter specifically identified missing clinical datasets, and Pourhassan knew by April 30, 2020, that the FDA thought his statements describing the BLA as complete were misleading. ¶127.[5] This suffices at the pleading stage. *Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, __ F.4th __, 2023 WL 2532061, *11 (9th Cir. Mar 16, 2023) ("*Forescout*") ("A statement is false or misleading if it directly contradict[s] what the defendant knew at the time or omits material information").[6]

While they do not seek dismissal of the April 2020 Submission statements, Defendants incorrectly contend that the May 2020 Submission statements are not actionable because they did not "guarantee[]" FDA approval. DB 4. But that is "irrelevant to whether [defendants]

[5] Submitting a BLA is a watershed moment, ¶¶126, 244, and, as such, Defendants knew their statements were material, ¶¶117-18 (4/14/20 Pourhassan email demanding filing of incomplete BLA because stock price declines "will be much deeper if we don't"), 119. *See Juno*, 2017 WL 2574009 at *5 (W.D. Wash. June 14, 2017) (defendants' "evident concern" about "potential market reaction" to deaths from drug "evidence[d]" materiality). *See also In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 812 (C.D. Cal. 2011) (stock price decline showed defendants' statements about "FDA approval and the intricacies of the process were the essential underpinning of the company's share price").

[6] The Motions reference scienter pleading standards, DB 4, but never argues the SAC falls short with respect to Defendants' Rule 10b-5(b) conduct. Defendants do not contest that they knew the allegedly material information omitted from their statements and otherwise knew their statements were materially false and misleading when made. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 610 (4th Cir. 2015) (plaintiffs' allegations permitted strong inference that defendants "misled investors by failing to disclose critical information received from the FDA…while releasing less damaging information [] they knew was incomplete"). Plaintiffs also have adequately alleged scienter for CytoDyn's employees and agents who made statements, including former-COOs Drs. Mahboob Rahman and Chris Recknor, and former employees/consultants, Lalezari, Dhody, and Dr. Bruce Patterson ("Patterson"). ¶¶546-94 CytoDyn does not argue otherwise.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 9
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

systematically mislead investors about" the Submission's completeness. *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 348-49 (E.D. Pa. 2014); *In re CV Therapeutics, Inc. Sec. Litig.*, 2004 WL 1753251, *6 (N.D. Cal. Aug. 5, 2004) (misrepresentations concerning data contained in an new drug application or NDA actionable). *See also Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 324 (S.D.N.Y. 2018) (statements "describing" NDA "contents" that "are directly contradicted by the true contents" actionable). As such, the cases Defendants cite are factually inapposite. DB 4-5. Further, Defendants' insistence that investors knew the CytoDyn/FDA dialogue was ongoing, *id.*, does not negate Plaintiffs' claims premised upon the extensive CytoDyn/FDA dialogue that ***already had occurred*** and rendered Defendants' May 2020 Submission statements materially untrue. *See* ¶¶61-85, 188-89; *Arena*, 840 F.3d at 709 (plaintiffs' "theory of fraud is that [d]efendants intentionally withheld information material to the market's assessment" of FDA approval risk).

**Post-RTF Letter Statements and Omissions**. Following the RTF Letter, Defendants reassured investors that (i) the May 2020 Submission was complete and the RTF Letter sought only "additional" data from "an ongoing trial" that was not previously available (¶¶258, 261-66, 276-79, 288, 290-93, 296, 298); and (ii) the FDA did not require CytoDyn to perform additional clinical trials because CytoDyn already possessed all necessary data (¶¶258-62, 264, 266, 277, 279-80 ("[w]e have the data"), 289-91, 294-97, 299, 302 (the "FDA said…you don't have to do any other trial")).

These statements were materially false and misleading because Defendants knew but did not disclose that: (i) the May 2020 Submission was not complete (¶¶244-51, 257, 269, 282-83); (ii) the RTF Letter sought missing data the FDA had been requesting since 2018 (¶¶269-72, 282, 303-04); (iii) the FDA never told CytoDyn that no additional clinical trials were necessary (¶¶269, 273-75, 282, 284, 303, 307); and (iv) CytoDyn did not have the FDA-requested safety ███ data, ████████████████ (¶¶269, 282, 285-86, 303, 305, 308-10). *See*

¶¶548-57.[7] Thus, each statement is actionable. *See Arena*, 840 F.3d at 708 (because Arena did not have "all of the data in hand," it "could not, in fact, support" its statements when made); *CV Therapeutics*, 2004 WL 1753251 at *7 (statements misrepresenting data in NDA and "affirm[ations] that nothing…made [defendant] believe that another study would be needed" actionable); *Frater*, 996 F. Supp. 2d at 346 (false statements about FDA's position on new trial actionable); *Shanawaz*, 348 F. Supp. 3d at 325 (claims sustained where data at issue was not "submitted…to the FDA [] despite" defendants' statements).[8]

Moreover, because Defendants disclosed certain "outstanding review issues" identified in the RTF Letter, they were "obligated to share the other significant review issue[s]." *Pardi v. Tricida, Inc.*, 2022 WL 3018144, *13 (N.D. Cal. July 29, 2022). They also were obligated to disclose the FDA's prior guidance because the failure to comply with that guidance "was another explicit reason" for the RTF Letter, *Gerneth v. Chiasma, Inc.*, 2018 WL 935418, *5 (D. Mass. Feb. 15, 2018). Defendants are thus liable for "hid[ing] the ball" from investors regarding the RTF Letter. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F3d 784, 797-98 (9th Cir. 2017) (statements about FDA letter "misleading" where Defendants "studiously avoided disclosing" material information it contained). *See also Zak,* 780 F.3d at 609 (vacating dismissal where "defendants knew that the FDA expected two successful efficacy studies" and their statements "addressed this critical expectation"); *Frater*, 996 F. Supp. 2d at 346 ("transmitting" only "part of the FDA's

---

[7] As signatories of CytoDyn's SEC filings, Kelly and Mulholland are liable under Section 10(b) and Rule 10b-5(b) for making the false and misleading statements alleged in ¶276 (Kelly) and ¶¶276, 291, 400, 406-07, 422-25 (Mulholland). *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 & n.5 (9th Cir. 2000) ("a corporate official…who, acting with scienter, signs a SEC filing containing misrepresentations, makes a statement" and is liable under Section 10(b)). While Plaintiffs do not seek to hold Kelly and Mulholland liable under Rule 10b-5(b) for statements they did not make, both are liable for the statements they disseminated or promoted under Rule 10b-5(a&c). *See infra* Section III.A.2.

[8] While falsity allegations must be plead with particularity, they are "subject to…the *reasonable inference* standard of plausibility set out in *Twombly* and *Iqbal*." *Forescout*, 2023 WL 2532061 at *11 (emphases in original). Plaintiffs have satisfied this standard by "specify[ing] each statement alleged to be misleading [and] the reason or reasons why." *In re Juno Therapeutics, Inc.*, 2017 WL 2574009, *3. The Motions do not claim the SAC fails to meet these standards.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 11
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

guidance" misled investors); *Tomaszewski v. Trevana, Inc.*, 482 F. Supp. 3d 317, 323 (E.D. Pa. 2020) (denying motion where defendants described nonpublic meeting as successful without "disclos[ing] the FDA's criticisms").[9]

Defendants contend that "[t]he receipt of the RTF Letter itself was the most important and disappointing news about the BLA." DB 6. In so doing, Defendants attempt to refute the materiality of the post-RTF Letter statements and omissions via a truth-on-the-market ("TOTM") affirmative defense. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481 (2013) (TOTM defense "is a method of refuting an alleged misrepresentation's materiality").[10] TOTM excuses "defendant[s'] failure to disclose material information" *only* where a defendant shows *that* information was publicly "transmitted…with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by [defendants'] one-sided representations." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008). TOTM "is intensely fact-specific, so courts rarely dismiss…on this basis," *id.*, and "defendants bear a heavy burden of proof." *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996).

Disclosing the RTF Letter's existence did not publicly reveal why the FDA refused to file the May 2020 Submission or that ███████████████████████████████████ ███████████████████████████ *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) (disclosure "could not plausibly rescue Orexigen from its alleged misrepresentations" where there was not "a prior, accurate disclosure" of the relevant information).

---

[9] These statements also are actionable because Defendants made them "in response to market fears about FDA approval" following the RTF Letter. *Warshaw v. Xoma Corp.*, 74 F. 3d 955, 959 (9th Cir. 1996).

[10] Information is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Because the materiality inquiry "is fact-specific," "requir[ing] delicate assessments of the inferences a reasonable shareholder would draw from [the] facts," materiality assessments are reserved for the jury. *Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*, 1 F.4th 687, 700 (9th Cir. 2021).

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 12
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

A "generic reference" to the FDA's RTF decision in no way "disclose[s] to a reasonable investor…the FDA [] concern[s]" underlying that decision. *Pardi*, 2022 WL 3018144 at *13.

Defendants also ignore the import of the SAC's loss causation allegations which confirm that the relevant truth was not revealed by the disclosure of the RTF Letter.[11] Specifically, CytoDyn's stock price declined on September 17, 2020 after Defendants revealed they had no timeline to resubmit the BLA and again on March 31, 2022 following Defendants' disclosure that the FDA had "placed a partial clinical hold on [CytoDyn's] HIV program" because CytoDyn did not have the requisite data. ¶¶516, 543. If, as Defendants claim "the full truth had reached the market," on July 13, 2020, "it is hard to understand the sharp drop in the price of [CytoDyn's] stock" on September 17, 2020 and March 31, 2022. *Asher v. Baxter, Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004); *see also Juno*, 2017 WL 2574009 at *5.[12]

In any event, Plaintiffs allege Defendants calibrated the post-RTF Letter statements to reassure investors that CytoDyn could resubmit a complete BLA. *See Frater*, 996 F. Supp. 2d at 347 ("these statements would make an attentive investor far more sanguine about the prospects of [the drug] than was merited by the reality of the situation"). Indeed, "the concerns raised by the FDA…were much more significant than a bump on the road and shed serious doubt on the sufficiency" of CytoDyn's HIV indication, obligating Defendants "to disclose the FDA's concerns to render their statement[s] not misleading." *In re Amylin Pharm., Inc. Sec. Litig.*, 2003 WL 21500525, *8 (S.D. Cal. May 1, 2003); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp.

---

[11] The Motions do not challenge the sufficiency of these allegations with respect to their Rule 10b-5(b) conduct.

[12] Defendants also contend several Post-RTF statements are non-actionable because there was "no indication as to whether this was the [FDA's] first request" for that information. DB 6, n.6. But Plaintiffs allege Defendants failed to disclose that the "additional information" requested in the RTF Letter was the missing data the FDA had requested previously and its omission from the May 2020 Submission was one of the bases for the RTF. *See Atossa,* 868 F.3d at797 (statements "misleading" where "the omissions gave the reasonable inference that the FDA had raised no concerns…when [] the FDA raised precisely that concern"). Regardless, many of the statements cited in DB n.6 contain Defendants' *false* assertions that CytoDyn had the data needed to resubmit the BLA when it did not and, in many cases, ***did not reference*** the FDA's request for "additional information." *See* ¶¶269-75, 282, 303-05, 307-09, 311.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 13
Case No. 3:21-cv-05190-BHS

2d 152, 160 (D. Mass. 2004) ("the failure to disclose FDA's serious criticism is a material omission"). Despite a clear duty to disclose, Defendants chose to publicly mischaracterize the FDA's nonpublic responses to CytoDyn's gap-ridden BLA until the FDA issued a clinical hold on CytoDyn's HIV program.

### b.     COVID-19 Statements and Omissions

#### i.     eIND Statements and Omissions

Plaintiffs allege that between March 27 and November 5, 2020, Defendants told investors that the eIND data: (i) "demonstrated" leronlimab's COVID-19 MoA and efficacy; (ii) underpinned the FDA's decisions regarding the COVID-19 IND; and (iii) supported EUA. ¶¶312-21, 324-31, 334-37, 339-50, 353-73. Each of these statements was materially false and misleading when made because Defendants knew based on their receipt of nonpublic FDA correspondence that █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ███████████████ ¶¶324-25, 334-37, 353-55, 369, 573-79. Defendants lied despite knowing it █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████ ¶¶92-94, 110, 114, 185.

The Ninth Circuit has sustained claims where "[c]ontrary to [defendant's] representations to investors it was not true that [in-vitro data] demonstrated" a drug's efficacy, *Arena*, 840 F.3d at 708, and defendants publicly touted trial results they knew "were likely unreliable," *Khoja*, 899 F.3d at 1010. Such facts are present here. *See MannKind*, 835 F. Supp. 2d at 809-10 (sustaining claims where defendants knew FDA had not approved use of in-vitro data to support drug approval); *accord In re Regeneron Pharm., Inc. Sec. Litig.*, 2005 WL 225288, *9 (S.D.N.Y. Feb. 1, 2005) (motion denied where defendants "falsely assur[ed] investors that [they] had an understanding of how [drug] works").

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 14
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Likewise, public representations at-odds with nonpublic FDA communications about a drug,  are actionable. *Arena*, 840 F.3d at 708; *see also Atossa*, 868 F.3d at 795 (sustaining claims where defendants falsely asserted test was FDA-cleared). More specifically, "courts have inferred scienter and falsity" where the FDA identified "problems with a product" but defendants "nonetheless continue[d] to make confident statements about" it. *MannKind*, 835 F. Supp. 2d at 811. Plaintiffs allege that

¶¶91-100, 109-10, 114, 185, 591-94,

see, e.g., ¶¶365-67 (claiming FDA gave "green light" for CD10 and CD12 based on eIND data).[13]

The eIND statements and omissions also were material to investors as evidenced by CytoDyn's stock price and analyst reports. ¶¶322-23, 332-33 (report noting "FDA may" "endorse leronlimab" based on eIND data "alone"), 351 (report raising price target given "leronlimab's newly-discovered effectiveness in treating COVID-19"), 352, 368. Furthermore, it is well recognized that information about a drug's efficacy and the likelihood of its FDA approval is material. *Khoja*, 899 F.3d at 1015 (efficacy results "were a boon to Orexigen" as reflected in stock price and volume and analyst reports); *In re Viropharma Inc., Sec. Litig.*, 2003 WL 1824914, *6 (E.D. Pa. Apr. 3, 2003) (courts "cannot be simply dismiss[] as immaterial" "statements regarding the overall efficacy of the drug"); *MannKind*, 835 F. Supp. 2d at 811-12 ("FDA approval was the *sine qua non* for [company's] success" and "the essential underpinning of [a pharmaceutical company's] share price"). Accordingly, Plaintiffs allege claims based on the eIND statements. *See In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, *11-12 (N.D. Cal. Jan. 6, 2022) (public statements touting FDA decisions actionable where FDA doubts regarding trial data undisclosed).

---

[13]    Plaintiffs likewise state a claim as to later COVID-19 MoA statements. ¶¶382-83, 389-90, 396-98, 418, 434.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 15
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants contend they had no obligation to disclose "disappointing" news. DB 6-7 & n.7. However, "once defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information." *Arena*, 840 F.3d at 705-06. Here, because Defendants "tout[ed] the apparently positive ██████ results, [they] had the obligation also to disclose that ███████████ were likely unreliable," and that "the FDA previously told ████████ that ██████ results have a high degree of uncertainty" and would not support FDA action. *Khoja*, 899 F.3d at 1010. Defendants likewise "had a duty not to make inaccurate, incomplete, or misleading disclosures" when they "chose to speak on [CytoDyn's] interactions with the FDA." *Freedman v. St. Jude Med., Inc.*, 4 F. Supp. 3d 1101, 1114 (D. Minn. 2014); *Arena*, 840 F.3d 705-06; *CV Therapeutics*, 2004 WL 1753251 at *8-9. Thus, "Defendants [were] obligated to disclose the FDA's concerns," ████████████████ ██████████████████████████████████████████████ "to render their statement[s] not misleading," *Amylin*, 2003 WL 21500525 at *8; *In re Vicuron Pharm., Inc. Sec. Litig.*, 2005 WL 2989674, *5 (E.D. Pa. July 1, 2005) (defendants obligated to disclose the need for "validat[ion] through a clinical study" and lack of "in-vivo [or] clinical data").

Defendants also contend that the FDA's decision to stop authorizing eINDs would be "dispositive to a reasonable investor." DB 6. This TOTM defense fails for several reasons. *First*, the FDA's eIND decision was not public until June 2, 2020, after Defendants made many of the statements discussed above (¶¶312-57). *See City of Birmingham Relief and Ret. Sys.v. Acadia Pharm., Inc.*, 2022 WL 4491093, *11 (S.D. Cal. Sept. 27, 2022) ("*Acadia*") (TOTM defense rejected where information was "release[d]… after the first allegedly misleading statement"). *Second*, for Defendants' statements made on or after June 2, 2020, (¶¶358-73), the FDA's decision to stop authorizing eINDs is not the allegedly omitted information. *See Pardi*, 2022 WL 3018144 at *6 ("[d]efendants do not meet, or even address, their burden of proving" TOTM). Indeed, the decision to stop granting eINDs did not reveal Defendants' lies about ████████████████ ████████████████████████

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 16
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Third,* Plaintiffs allege that Pourhassan's June 2020 statements about the FDA's decision to stop authorizing eINDs were themselves actionable because they created the misleading impression that the FDA's decision reflected its belief that leronlimab was an effective COVID-19 treatment. ¶¶358, 363-64. In reality, the FDA stopped authorizing eINDs to ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ ¶¶136-39.[14]

And, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ ¶142; *In re Dura Pharms. Inc. Sec. Litig.*, 548 F. Supp. 2d 1126, 1137 (S.D. Cal. 2008) (statements about FDA's position "materially false for the reasons stated in the FDA's subsequent letter of rebuke"). As such, the publication of FDA's decision to stop granting eINDs did not "effectively counter-balance" the "misleading impression" created by Defendants' statements. *Id.* at 1143, n. 15. *See In re NeoPharm, Inc. Sec. Litig.*, 2003 WL 262369, *13 (N.D. Ill. Feb. 7, 2003) (TOTM defense rejected where "defendants fraudulently downplayed the significance of [the news]" by not disclosing serious "problems plaguing" drug).

### ii.    CD10 Statements and Omissions

Plaintiffs allege Defendants' statements between July 30, 2020 and April 14, 2021 misleadingly represented that CD10 demonstrated leronlimab's efficacy and was sufficient to obtain EUA despite missing its primary endpoint. ¶¶374-411.

**Initial CD10 Statements**. Pourhassan announced on July 30 and August 5, 2020 that CD10 had "positive efficacy results," including a "statistically significant" difference "between

---

[14] ████████████████████████████████████████████████████ *See* ¶¶573-79. For all these reasons, Plaintiffs have stated a claim with respect to CytoDyn's compassionate use requests (¶¶455-58). *Khoja*, 899 F.3d at 1008.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 17
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

leronlimab and placebo," something unprecedented "in this population," allowing CytoDyn to seek EUA for COVID-19. ¶¶374-76. These statements were materially false and misleading because Pourhassan knew ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ ¶¶581, 589. *See Xoma*, 74 F.3d at 959 (statements about FDA approval process actionable where defendants knew drug did not work and FDA would not approve); *Zak*, 780 F.3d at 609-10.

**CD10 Statements Following Nonpublic Topline Report**. Defendants also created a misleading impression that CD10 was successful and supported EUA by claiming that: (i) CD10 "demonstrated statistically significant" results in the "key" NEWS2 secondary endpoint and, as such, leronlimab was the "first drug that actually work[ed] on COVID-19"; and (ii) CytoDyn had "requested" EUA, basing its "case for immediate approval of leronlimab" on CD10. ¶¶377-89. However, as CytoDyn ████████████████████████████████████████████

████████████████████████████████████████████████████████████ ¶¶171, 394. As such, Defendants knew ████████████████████████████████████████

███████████████████████████ ¶¶580-84. ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ ¶¶394, 583; *see In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005) ("Defendants committed fraud by publicly reporting [] results" that were "so statistically flawed to lack clinical significance" and "portraying the results" "in an unduly optimistic light.").[15]

---

[15] Plaintiffs allege that Defendants ████████████████████████████████████

███████████████████████ *before* they made statements omitting these facts. ¶¶582-83. Thus, regardless of "opinions" Kelly "genuinely h[e]ld" about CD10 and NEWS2 (DB 15-16), Kelly actionably

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 18
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Statements touting positive trial data are actionable if defendants knew but failed to disclose there was **no** such evidence or the available evidence was "likely unreliable." *Khoja*, 899 F.3d at 1010 (failure to disclose that results had "high degree of uncertainty" made them "appear[] more promising [to investors] than Orexigen allegedly knew they were"). Statements asserting that a trial "demonstrated [] effectiveness impl[y]" that the resulting data is "empirical[ly] valid[] and analytic[ally] sound[];" if that data was instead the result of statistically unreliable analysis, such statements are misleading. *Frater*, 996 F. Supp. 2d at 346. Here, Defendants touted the NEWS2 results without disclosing that ███████████████████████████████████ ███████ *See In re Myriad Genetics, Inc. Sec. Litig.*, 2021 WL 977770, *8-9 (D. Utah Mar. 16, 2021) (statements about product's effectiveness misleading without statistically reliable efficacy evidence); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, *13 (D.N.J. Aug. 28, 2017) (statements claiming data demonstrated drug's efficacy actionable where "prespecified [] analysis *failed to produce such evidence*") (emphasis in original).

Additionally, where the "true data" generated via "prespecified analyses" "fail[s] to support" and "effectively doom[s]" FDA-approval, public statements "attempt[ing] to pass off" post-hoc analyses are actionable where defendants fail to disclose the "true data" and their use of post-hoc analyses. *In re FibroGen, Inc., Sec. Litig.*, 2022 WL 2793032, *4, 11 (N.D. Cal. July 15, 2022). "[P]ost-hoc adjustments to clinical data are no substitute for a well-controlled clinical trial meeting its…endpoints." *PTC*, 2017 WL 3705801 at *13. Accordingly, ████████████ ██████ "the extent to which ████████ relying on post-hoc statistical analysis" to "demonstrate" leronlimab's COVID-19 effectiveness and ████████████████████████████████ ████████████████████████████████████ "lull[ed] investors into thinking that the ██████ ████ was sufficient to meet FDA efficacy standards." *Id.* at *13-14; *Frater*, 996 F. Supp. 2d at 343

omitted material information. ¶¶393-97, 580-84. *See infra* Section III.A.1.d. Notably, Pourhassan does not join this argument. PB 1.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 19
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

(statements touting re-analysis of trial data actionable where defendants did not disclose FDA's position that such post-hoc analysis "would not ordinarily support approval").[16]

**Post-FDA Correspondence CD10 Statements**. ███████████████████████████████████████████████████████████████████ they made additional material misstatements on these topics. For example, ██████████████████████████████████████████████████████████████████████████████ ¶¶171, 585-86, Defendants publicly claimed on September 23, 2020 that "we have hit two endpoints" and CD10 "awarded us a path to an approval," ¶¶398-400. ████████████████████████████████████████████ ¶¶184-86, 587-88, Defendants publicly filed two Forms 10-Q claiming that CD10's "topline report…demonstrated…statistically significant results" for NEWS2, ¶¶401, 406-07. These statements are actionable. *See Khoja*, 899 F.3d 1010 (defendants touting positive trial results have duty to disclose what FDA told them about results); *Arena*, 840 F.3d at 708 (representations that animal studies support approval actionable where defendants failed to disclose FDA's concerns about data); *CV Therapeutics*, 2004 WL 1753251 at *8 (motion denied where defendants "failed to reveal the depth of the FDA's concerns"); *MannKind*, 835 F. Supp. 2d at 811.[17]

---

[16]    These statements also created the misleading impression that FDA approval of leronlimab was a "when not if proposition." *Transkaryotic*, 319 F. Supp. 2d at 160; ¶386. *See also Gerneth*, 2018 WL 935418 at *5 (FDA's nonpublic concerns made statements "that [the company] would [] secure approval" on a shorter timeframe "materially misleading"). Despite Defendants' statements to the contrary (¶¶376, 379), CytoDyn never requested EUA based on CD10. *Khoja*, 899 F.3d at 1008.

[17]    Because Plaintiffs allege that Defendants affirmatively misrepresented that CD10 met the NEWS2 endpoint, Defendants' reliance on *In re Biogen Sec. Litig.*, 179 F.R.D. 25 (D. Mass. 1997) is misplaced. DB 7 & n.8. While that court entered judgment on a pure omissions claim concerning secondary endpoints, 179 F.R.D. at 36-39, the court **denied** summary judgment based on affirmative misrepresentation about study results that did not disclose the missed secondary endpoints. *Id.* at 36.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 20
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants contend they disclosed the relevant truth when they revealed that CD10 missed its primary endpoint. DB 7-8. This TOTM defense fails for several reasons. *First*, Plaintiffs' claims are based on Defendants' affirmative misrepresentations that the NEWS2 results demonstrated leronlimab's efficacy and supported EUA, and their failure to disclose ███████████ ████████████████████████████████████ *See* ¶¶393-97, 403-05, 408-11; *Khoja*, 899 F.3d at 1010; *PTC*, 2017 WL 3705801 at *11-15 (investors misled despite disclosure that study missed endpoints where defendants asserted study demonstrated efficacy); *Myriad*, 2021 WL 977770 at *10 ("it was [materially] misleading to treat [the trial] as a success by downplaying the failure to achieve the primary endpoint and [] elevating the significance of [the] secondary endpoint[]").[18]

*Second*, Defendants told investors to disregard the missed primary endpoint in favor of the "more important" NEWS2 results, which were "statistically significant" and sufficient to seek EUA. ¶¶375-76, 378-81, 385, 387; *see Alphabet*, 1 F. 4th at 703 (defendants' statements "demonstrated the importance" of information "central to Alphabet's business"); *Myriad*, 2021 WL 977770 at *11 (materiality alleged where defendants treated "secondary endpoints as if they were of the same importance as the primary endpoint"). According to Defendants' contemporaneous statements, the missed primary endpoint had little bearing on the success of CD10.[19]

*Third*, Plaintiffs allege the relevant truth about CD10 was not revealed until at least May 17, 2021. █████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ¶185. When

---

[18]    Thus, *Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) is inapposite. DB 7 & n.8. Also, because the information cited by Defendants was not available until August 11, 2020, this argument is inapplicable to claims based on earlier statements. *See Acadia*, 2022 WL 4491093 at *12.

[19]    Thus, Plaintiffs have "explain[ed] why" even if CD10's failure to meet its primary endpoint was "disappointing," the NEWS2 statements were material and Defendants' CD10 statements were misleading, *see* DB 7 & n.8, and none of Defendants' case law is on point.

the market learned that CD10 was devoid of "clinically meaningful" results on May 17, 2021, the stock price declined sharply, which also is indicative that the relevant truth about CD10 was not already in the marketplace. ¶¶531-35. *See Jaeger v. Zillow Grp., Inc.*, 2022 WL 17486297, *10 (W.D. Wash. Dec. 07, 2022) ("*Zillow*"); *Juno*, 2017 WL 2574009 at *5.

### iii. CD12 Statements and Omissions

Between March 5 and October 13, 2021, Defendants also made materially false and misleading statements about the CD12 trial. ¶¶412-58.

Specifically, between March 5 and April 7, 2021, Defendants told investors that CD12 demonstrated "statistically significant" results in several subgroups of trial participants, and thus, CytoDyn: (i) had "pathways for [FDA] approval" and was "working with" the FDA to "expedite leronlimab's approval [for] COVID-19"; and (ii) had "file[d]" with the FDA a "request" for a COVID-19 "conditional EUA." ¶¶412-25, 439, 442-45. These statements were materially false and misleading because, as Defendants ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ¶¶198-99, 428-38, 440-41, 446-47. Furthermore, Defendants ████████████████████████████████████████████████████████████████████████████████████████████████████████████ ¶207.

Defendants' statements are actionable as they "appreciated the gravity of the FDA's concerns ███████████████████, knew the risks facing ████████, yet downplayed and mischaracterized them in disclosures to the investing public." *Gov't of Guam Ret. Fund v. Invacare Corp.*, 2014 WL 4064256, *7 (N.D. Ohio Aug. 18, 2014); *see also Khoja*, 899 F.3d at 1010; *Acadia*, 2022 WL 4491093 at *10 (failure to disclose disappointing trial data "rendered [d]efendants' positive statements regarding" study results "materially misleading"); *Zak*, 780 F.3d

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

at 610 (defendants' omission of "adverse FDA staff recommendation…mislead investors"); *PTC*, 2017 WL 3705801 at *15 (denying motion where defendants "misrepresented the sufficiency of the [trial] results to meet even the most basic FDA review standards").

Defendants' statements also are actionable because they mischaracterized the FDA's position. For instance, Defendants publicly claimed the FDA "saw" what Defendants "saw" in CD12's results, was "seeing a signal," and "said there is reason [] to go forward" when in reality,

¶¶421, 441, 451. "[T]hese representations are best read as a misstatement of the basic facts regarding [CytoDyn's] ongoing involvement with the FDA, and thus the likelihood of [leronlimab's] approval." *MannKind*, 835 F. Supp. 2d at 809; s*ee also Xoma*, 74 F.3d at 958 (claims based on misrepresentations about "positive forward progress" of FDA review sustained); *Vicuron*, 2005 WL 2989674 at *7 (motion denied where "defendants knew" but "conceal[ed]" "that their Phase III study had weakened the chances for FDA approval").

Defendants' statements likewise are actionable because they omitted material information Defendants received from the FDA. *Arena*, 840 F.3d at 707-08. Here, Defendants told investors that the FDA "said that [CD12's] results" were "good enough" for another trial and to "go ahead and do another trial" without disclosing

¶¶439, 450-52. Defendants likewise publicly touted that the FDA "allow[ed]" CytoDyn to "extend CD12 [] to generate more data" for EUA or "full approval" when the

¶¶418, 436-37; *see also* ¶¶421, 437-38, 450. Defendants' statements are actionable because they included "representations about [leronlimab] that [Defendants] could not, in fact, support at the time they were made." *Arena*,

840 F.3d at 708 (sustaining claims where defendants knew that FDA had asked them "to defend continuation of the clinical testing in light of the nonclinical tumor/cancer data").[20]

Defendants contend their CD12 statements are not actionable because they disclosed CD12 missed its primary endpoint on March 8, 2021. DB 8. This TOTM defense fails for several reasons. *First*, Plaintiffs do not assert that Defendants' statements are misleading because CD12 missed its primary endpoint, but because Defendants failed to disclose that ████████████ ████████████████████████████ TOTM applies only where Defendants can show prior public disclosure of the allegedly omitted information. *See Khoja*, 899 F.3d at 1010, 1013-14.[21]

*Second*, the disclosure that CD12 missed its primary endpoint did not "counter-balance" the "misleading impression created by" Defendants' statements. *Acadia*, 2022 WL 4491093 at *11 (disclosure of "full data set" "not sufficient" to establish TOTM where defendants "emphasiz[ed] cherry-picked positive results" while omitting "disappointing data[] which posed major obstacles to FDA approval"). *Id.* at *9. 11. While certain observers recognized that CD12 had failed, others believed Defendants' reassurances that leronlimab was effective and FDA approval was imminent and issued reports after March 8, 2021 claiming that "[d]espite the shortcomings, the CD12 trial results [] support" leronlimab's effectiveness, the "[t]rial data is supportive of an EUA," and it is "clear" based on CD12 "that *leronlimab works*." *See* ¶¶426-27; *Xoma*, 74 F.3d at 958 (claims sustained where defendants reassured investors following FDA rejection of study about drug's effectiveness and likelihood of FDA approval); *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, *8

---

[20]    Defendants' statements also created the misleading impression that FDA approval "was in the bag," when, in reality, the FDA already had twice-rejected EUA based on CD12. *MannKind*, 835 F. Supp. 2d at 811-12 ("natural effect" of such statements is "to create the impression for the investor that" FDA approval 'was in the bag'"); *Xoma,* 74 F.3d at 959. "Statements pertaining to… the chances of [FDA] approval" are material to investors in drug companies. *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, *10 (S.D.N.Y. June 16, 2020) ("statements 'pertaining the chances of such [FDA] approval…were absolutely essential to the company's prospects'").
[21]    For this reason, Defendants' TOTM affirmative defense also fails with respect to their statements on March 5 and 6, 2021, *before* they disclosed that CD12 missed its primary endpoint. *See Acadia*, 2022 WL 4491093 at *9-11.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 24
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

(C.D. Cal. June 17, 2011) (analyst statements "underscore the plausibility and reasonableness of the false impression that [p]laintiffs allege").

*Third*, the FDA took the unprecedented step of publicly debunking Defendants' CD12 statements on May 17, 2021, 2.5 months **after** Defendants announced CD12 missed its primary endpoint "given the significant public interest in leronlimab" that Defendants' misrepresentations had created. ¶218. If investors had understood that CD12 was a failure as Defendants claim, the FDA would not have needed to issue the Statement. Likewise, CytoDyn's stock price declines following the FDA's Statement and after CytoDyn's March 30, 2022 disclosure that the COVID-19 IND was under a clinical hold, ¶¶218, 234, undercut Defendants' TOTM defense. *See Frater*, 996 F. Supp. 2d at 347 (materiality demonstrated where stock price "plummeted" after "defendants'…misleading statements were contradicted by the FDA").[22]

*Finally*, Defendants' TOTM defense has no relevance to Pourhassan's May 18, 2021 statements purporting to disclose the contents of non-public FDA correspondence about CD12. ¶¶448-50. These statements are actionable because Pourhassan failed to disclose ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *CV Therapeutics*, 2004 WL 1753251 at *8 ("once [defendant] started to reveal the contents of [his] conversations with the FDA, [he] had the duty to be truthful."). *Acadia*, 2022 WL 4491093 at *11 (motion denied where "[d]efendants' statements touting the results…omitt[ed] the adverse information the FDA" had identified). Pourhassan's commentary about what the "FDA told [Defendants]" and his assertion that Defendants' prior CD12 statements were not "different tha[n] the FDA letter" (¶448) also are actionable because they "fraudulently downplayed the existence and significance" of issues Defendants privately discussed with the FDA. *CV Therapeutics*, 2004 WL 1753251 at *5

---

[22] Thus, Defendants' claim that, read in context, their CD12 statements did not create a misleading impression, DB 8, fails. **None** of their inapposite cases involved the kind of statements alleged in the SAC.

(motion denied where defendants "fraudulently downplayed the existence and significance" of issues discussed privately with FDA).

### c.    No Safe Harbor Protection

Defendants contend that some of their statements are forward-looking and protected by the PSLRA Safe Harbor. DB 8-10. However, the statements upon which Plaintiffs *actually* premise their claims are not forward-looking. *See* ¶¶258 ("requested;" "submitted"), 259 ("does not require"), 266, 278 ("submitted;" "was completed"), 279, 299 ("we have"), 378 ("showed"), 385 ("requests;" "provides"), 414, 417-418 ("demonstrated;" "showed;" "are…allowing"), 421 ("they're seeing").[23] *See Fibrogen, Inc.*, 2022 WL 2793032, at *7 (statements highlighting results "available at the time" not forward-looking). Present tense or historical statements describing a path to FDA approval also are not forward-looking. *Id.* at *8 (statements regarding past interactions with FDA not forward-looking); *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1231 (N.D. Cal. 2009) (statements that "concealed or downplayed known *present* risks related to regulatory approval" not forward-looking); *In re Cell Therapeutics, Inc. Class Action Litig.*, 2011 WL 444676, at *8 (W.D. Wash. Feb. 4, 2011) (statements about drug application status were based on "present facts," not forward-looking); *MannKind*, 835 F. Supp. 2d at 817 (statements referring to past FDA interactions not forward-looking).[24]

Furthermore, Defendants have not properly invoked the Safe Harbor. Where, as here, the plaintiff has alleged actual knowledge as to the material falsity of the alleged misstatement, the Safe Harbor protects only forward-looking statements identified as such that are accompanied by meaningful cautionary language. *In re Quality Sys. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017).[25] Critically, the cautionary language Defendants cite is not "meaningful."

---

[23]    Plaintiffs do not base their claims upon any future-tense language within the statements identified in the Motions. *See* ¶¶258-59, 266 278-79, 299, 378, 385, 414.
[24]    The word "believe" does not transform otherwise present or historical statements into forward-looking statements. DB 9. *Fibrogen, Inc.*, 2022 WL 2793032, at *8 (we "believe" statements not within Safe Harbor).
[25]    Defendants do not contend that Plaintiffs have failed to allege actual knowledge in the

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"[C]autionary statements must be substantive and tailored to the specific future projections, estimates or opinions…which the plaintiffs challenge." *Amylin*, 2003 WL 21500525 at *7. Here, the risk disclosures upon which Defendants rely "are not targeted or tailored to cautioning investors that [Defendants'] statements were qualified, incomplete, untrue, or otherwise misleading." *BioMarin*, 2022 WL 164299 at *8 ("[n]one" of the cautionary language "discredit[s] the [allegedly misleading statement] so obviously that the risk of real deception drops to nil"); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005) (generic warning concerning FDA process risks "does not meaningfully address the risks related to [defendant's] pending FDA approval."). These risk disclosures "amount[] to only a boilerplate listing of generic risks" because they "do[] not mention the specific risk[s] to which [Defendants] had been alerted":

█████████████████████████████████████████████████████████

*Forescout,* 2023 WL 2532061 at *23.[26]

These disclosures also reflect as "risks" events that already had occurred but had not been disclosed. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-98 (9th Cir. 2008) (stating something "might" occur is "quite different" from stating it has "*in fact*" occurred because "[o]ne indicates a risk, the other a certainty" and "investors would treat the two differently") (emphasis in original). "[C]autionary language is not meaningful if it discusses as a mere *possibility* a risk that has already materialized." *Forescout,* 2023 WL 2532061 at *23 ("[d]efendants cannot rely on boilerplate language describing *hypothetical* risks to avoid liability for the failure to disclose that the company *already* had information suggesting the merger might not ensue.") (emphases in original). For example, Defendants warned that CytoDyn "may not be able to provide acceptable evidence of the [] efficacy of" leronlimab (DB 10) when the FDA already had rejected the May

---

SAC.

[26]   Confirming these disclosures are "boilerplate," they refer to "drug candidate*s*" when CytoDyn had one drug, leronlimab, and to "the submission of an *NDA*" when CytoDyn was required to submit a BLA. *See BioMarin*, 2022 WL 164299 at *7 (in assessing adequacy, "courts ask whether the cautionary statements precise[ly] and directly address the alleged misrepresentations").

2020 Submission and Defendants had ████████████████████████ ¶¶116-20, 187-94, 553. Warning that CytoDyn's trial results "may not meet the level of statistical or clinical significance required by the FDA" (DB 10) was not meaningful where Defendants knew that ██ ████████████████████████████████ ¶¶564-94. And telling investors that "products may not receive regulatory approval" during the March 8, 2021 conference call (Dkt. #117 at 70, Ex. J) was not meaningful where ████████████████████████ ██ ¶¶198-201. Thus, the warnings were inadequate. *CV Therapeutics*, 2004 WL 1753251, at *11 (risk disclosures insufficient to invoke Safe Harbor "since they did not indicate that the [c]ompany already knew that the FDA harbored serious doubts about [drug]").

### d.      Defendants' "Opinion" Statements Are Actionable

Defendants claim certain statements are non-actionable opinions. DB 11-13. But many of these statements "express[] certainty about a thing" or occurrence and are not "opinions." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 176 (2015) ("[A] statement of opinion conveys only an uncertain view as to that thing."); *see* ¶¶260 ("No additional trials will be required;" "all the information the FDA has requested is obtainable."). Plaintiffs also do not bring claims based upon language Defendants identify as "opinions" in the relevant statements. *See, e.g.*, ¶¶364, 383, 398, 451, 455.

Even if certain of Defendants' statements contain "opinions," they are actionable. A plaintiff may allege claims premised upon an opinion where: (i) both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue; (ii) that a fact contained within an opinion statement was untrue; or (iii) "facts going to the basis for the issuer's opinion," the omission of which rendered the statement misleading. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F. 3d 605, 615-16 (9th Cir. 2017) ("*Align*"). Plaintiffs need only satisfy one *Align* prong, *id.*, but for certain statements they satisfy all three.

Most of the statements Defendants challenge as opinions are actionable under either the second or third *Align* prong, or both. For instance, Defendants' misrepresentations contain

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 28
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

embedded statements of fact about what the FDA communicated to Defendants, what regulatory actions the FDA took and why, and ██████████████████████████████████ that can be proven untrue by nonpublic documents Defendants had in their possession when they made each of these statements under the second *Align* prong. ¶¶292, 314-15, 328, 330-31, 341, 345-47, 350, 359, 377-78, 380-82, 385, 394, 400-01, 406-07, 413-14, 418, 421, 445. *See Align*, 856 F.3d at 615. Likewise, Defendants' misrepresentations about the available COVID-19 data omitted material facts "going to the basis" of the purported opinions under the third *Align* prong. *See* ¶¶313-15, 319-21, 325-31, 334-41, 346-47, 349-50, 353-60, 369-74, 377-78, 380-83, 385, 387-90, 393-98, 400-01, 403-11, 413-15, 418-20, 422-25, 428-38, 442-47; *Align*, 856 F.3d at 615.[27] Because Defendants said "one thing" about leronlimab's COVID-19 MoA and efficacy and "held back" other "material facts going to the basis of" these statements, their statements are actionable. *In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *4-5 (N.D. Cal. Sept. 29, 2017).

Defendants seek dismissal of their purported opinion statements under the first *Align* prong because Plaintiffs have not alleged that Defendants "did not subjectively believe the[ir] contents. DB 11-12.[28] However, aside from Kelly's CD10 statements, Defendants do not contend their statements were objectively true—they were not. ¶¶325-26, 335-37, 354-57, 369, 371-73, 394-96, 403-05, 408-09, 428-30, 433-36, 438, 446-47, 456-57.[29]

----

[27] This is "strikingly similar" to the scenario noted in *Omnicare*: because Defendants' "fail[ed] to disclose that the FDA…warn[ed] about" ██████████████████████████████████████████████████████ their COVID-19 statements "did not fairly align[] with the information in [their] possession at the time." *Atossa*, 868 F.3d at 802; *Forescout*, 2023 WL 2532061 at *22 (opinion regarding expectation merger would close actionable where defendants omitted fact that merger partner said it was considering not closing the merger). Because the Ninth Circuit's determination that this fact pattern is actionable is binding, Defendants' reliance on a Second Circuit decision is misplaced. *See* DB 12 (citing *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016).

[28] The Motions do not contend Plaintiffs fail to satisfy the second and third *Align* prongs as to all the statements Defendants claim are "opinions."

[29] That "Plaintiffs' falsity argument" "rests on subsequent developments" (DB 11-12) is simply untrue. Rather than "fraud by hindsight," Plaintiffs allege that Defendants misrepresented historical or current events, including FDA correspondence they already had received. *See supra* Section III.A.1. And, the cases Defendants cite say nothing about opinions and were decided

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 29
Case No. 3:21-cv-05190-BHS

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Moreover, Kelly's contention that his CD10 "opinion[s]" were not "based on false facts" fails (DB 16) because he ignores his undisputed knowledge of and failure to disclose ███████ ████████████████████████████ to achieve what he touted to investors. ¶¶580-84; *Forescout*, 2023 WL 2532061 at *22 (opinion actionable "[e]ven if Forescout's executives sincerely believed that the merger would still close as planned" because defendants' public statements "did not fairly align[] with the information" in defendants' possession"). Moreover, Kelly's limited arguments aside, scienter is sufficiently alleged, including facts showing Defendants did not hold the beliefs they publicly professed (*see* ¶¶61-83, 91-100, 109-10, 113-20, 127, 136-39, 142-47, 157, 170-71, 182-201, 204, 207-09, 212-16, 224, 547-94), which fatally undermines their argument. *See Hufangle v. Rino Int'l. Corp.*, 2013 WL 3976833, *6 n.7 (C.D. Cal. Aug. 1, 2013) ("Because Plaintiffs have adequately pled scienter, their subjective falsity allegations also suffice."); *In re Leapfrog Enter., Inc. Sec. Litig.*, 2017 WL 4877451, *1 (N.D. Cal. Aug. 10, 2017) (same).[30]

### e.    Defendants' Statements Are Not Puffery

Defendants incorrectly assert that certain misstatements are non-actionable "puffery." DB 10-11. *First,* Plaintiffs' claims are not premised upon the "expressions of optimism" Defendants identify as immaterial puffery, *see, e.g.*, ¶260 (claims based on "[n]o additional trials will be required" not "[w]e are 100%…confident"),[31] and as demonstrated above, the actual challenged statements and omissions are material, *see supra* Section III.A.1.

---

before *Omnicare*.

[30]    Defendants claim certain statements are non-actionable opinions because they present "scientific disagreement[s]." DB 12-13. However, many of the cases upon which Defendants rely for this contention pre-date *Omnicare, Align,* and *Atossa*. The two post-*Omnicare* cases do not reconcile with *Align* and *Atossa* or the alleged facts. In *Tongue* the Second Circuit found "no plausible allegation that the FDA's interim feedback conflicted with…Defendants' statements" because the FDA told defendants that "any deficiency could be overcome if the results showed an extremely large effect," which occurred. 816 F.3d at 211-12. Plaintiffs allege the conflict that was missing in *Tongue*. In *Leavitt v. Alnylam Pharms. Inc.*, the Massachusetts district court only assessed the first *Align* prong, 451 F. Supp. 3d 176,184 (D. Mass. 2020), whereas Plaintiffs seek to proceed under the second and third *Align* prongs.

[31]    *See also* ¶¶281 (claims not premised on "beautiful"), 339 (claims not based on "truly

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 30
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Second*, even if the Court finds that any of the challenged statements contain optimistic language, such statements are *not* inactionable puffery" where "defendants were aware of facts that rendered the optimistic statements false or misleading." *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 941 (N.D. Cal. 2022). Each statement Defendants identify is actionable for this reason. *See, e.g.*, ¶297 (statement describing safety "insight" the HIV trials provided where CytoDyn did not have aggregated safety data); *see also BioMarin*, 2022 WL 164299 at *12 ("statements about BioMarin's relationship with the FDA" are not "just empty optimism" but "simply untrue"); *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, *6 (C.D. Cal. Apr. 12, 2016) (statement misleading due to "omission of facts suggesting a possible delay in approval.").

*Third*, where, as here, "[d]efendants' expressions of confidence" via "descriptions [like] 'positive,' 'good,' [and] 'favorable,'" are used "in the context of discussing…existing data," such statements may be actionable. *Fibrogen*, 2022 WL 2793032, at *10. Each of the statements underlying Plaintiffs' claims that included purportedly "optimistic" language concerned the eIND and trial data. *See, e.g.*, ¶¶317-18, 328 (describing fact that eIND data "show[ed] immunological benefit"), 361-62 (describing fact that eIND data showed leronlimab had "effect" in 100% of patients); *see also Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) ("statements [that] include superlatives" actionable because they contain "factual representations at their core").

*Finally*, the Ninth Circuit recently reaffirmed that "general statements of optimism, ***when taken in context***, may form a basis for a securities fraud claim." *Forescout,* 2023 WL 2532061 at *14. Thus, if any of the challenged statements are found to be "general statements of optimism," they are actionable because they were "made in response to market fears about [CytoDyn] securing FDA approval on [CytoDyn's only] product." *Id.* (quoting *Xoma*, 74 F.3d at 959-60).

---

amazing"), 399 (claims not premised upon "fantastic"), 452 (claims not based on "really strong"). Defendants also have not identified any purportedly "optimistic" language in certain statements cited in DB 10-11 & n.10. None exists. *See* ¶¶313, 315, 319-21 (reporting what eIND data demonstrated).

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 31
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## 2. Defendants' Rule 10b-5(a&c) Conduct

Together with "making" BLA and COVID-19 misrepresentations, Defendants' dissemination and promotion of these statements comprise a fraudulent scheme to maintain or increase inflation in CytoDyn's stock price in violation of Section 10(b). Plaintiffs allege with particularity, for example, that during the first week of the Class Period:

- Defendants issued seven COVID-19 PRs that contained misrepresentations. ¶475 & Exhibit A (identifying each Defendants' role in these and other PRs); *see also* ¶¶312-13, 319. ███████ ¶476. CytoDyn paid promotional outlets to amplify the PRs. ¶477.

- CytoDyn paid Proactive Investors to interview Pourhassan and Patterson three separate times about the COVID-19 PRs. ¶478. Pourhassan and Patterson made additional misrepresentations during these and other interviews. ¶¶314-18, 320-22.

- Market participants repeated and emphasized these misrepres███ H.C. Wainwright doubled its price target to $3/share. ¶¶322-23. ████ ¶479. ████ ¶480.

- Due to these deceptive acts, CytoDyn's st███ December 2011 on April 1, 2020. ¶481. ████ ¶482.

- When the relevant truth obscured by Defendants' misrepresentations and promotional scheme was revealed, CytoDyn's stock price declined, damaging investors. ¶¶495-545.

Plaintiffs allege that this scheme continued throughout the Class Period, ¶¶461-94, each Defendant "committed fraudulent acts that created misleading information about [leronlimab]" and "[t]hat information…publicized by [Defendants]…factored efficiently into share prices." *In re FirstEnergy Corp.*, 2022 WL 681320, *14 (S.D. Ohio Mar. 7, 2022). Plaintiffs thus have stated Section 10(b) claims. *See Lorenzo*, 139 S. Ct. at 1103 ("using false representations to induce the purchase of securities would seem a paradigmatic example of securities fraud").

Defendants seek dismissal claiming that (i) Plaintiffs impermissibly use the same theory of causation for all of their Section 10(b) claims, (ii) Plaintiffs have not alleged Rule 10b-5(a&c)

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 32
Case No. 3:21-cv-05190-BHS

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

conduct, and (iii) Plaintiffs have not alleged scienter as to Kelly and Mulholland for their Rule 10b-5(a&c) conduct.

*First*, there is no requirement that Plaintiffs allege "distinct" causation for certain deceptive acts under Section 10(b). DB 16-18. In fact, "[t]he premise of [Defendants'] argument [] that each [subsection of Rule 10b-5] should be read as governing different, mutually exclusive, spheres of conduct," has been rejected by the Supreme Court. *Lorenzo*, 139 S. Ct. at 1097. Instead Plaintiffs' allegations of scienter, reliance, causation, and damages may support liability under Section 10(b) are relevant to one or all of Rule 10b-5's sub-sections. *FirstEnergy*, 2022 WL 681320 at *26 ("Defendants' misrepresentations and omissions—and the presumptions that attach to them—are relevant for scheme liability").

Moreover, the PSLRA does not require plaintiffs to plead "distinct" causation under Section 10(b). 15 USC § 78u-4(b)(4). The courts that have sustained claims premised upon both Rule 10b-5(b) and (a&c) conduct have not required it. *See In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1193 n.41 (D. Or. 2015) (finding sufficiently pled loss causation in context of Rule 10b-5(b) conduct also applied to Rule 10b-5(a&c)); *Rabkin v. Lion Biotechs, Inc.*, 2018 WL 905862, at *13-18 (N.D. Cal. Feb. 15, 2018) (same). Defendants have not identified any court—pre- or post-*Lorenzo*—that has required it.[32]

Plaintiffs have alleged causation for their Section 10(b) claims. The SAC details six corrective events, each of which partially revealed the relevant truth regarding the false and

---

[32]    Defendants' reliance on *In re MindBody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188 (S.D.N.Y. 2020) and *SEC v. Chen*, 2019 WL 652360 (W.D. Wash. Feb. 15, 2019) is misplaced. DB 17-18. Neither case requires Plaintiffs to plead "distinct" causation. Moreover, *Chen* was decided before *Lorenzo*, which expressly overruled the Ninth Circuit decision upon which *Chen* relied. *Lorenzo*, 139 S. Ct. at 1100. *MindBody* similarly relied on pre-*Lorenzo* decisions to reject Section 10(b) claims premised upon "dissemination" of false and misleading statements. 489 F. Supp. 3d at 216-17. *But see Lorenzo*, 139 S. Ct. at 1104. Separately, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009) and Defendants' other cases (DB 17-18) do not require "distinct" causation.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 33
Case No. 3:21-cv-05190-BHS

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

misleading statements Defendants made, disseminated, and/or promoted in violation of Section 10(b):

- On May 4, 2020, Defendants revealed that the April 2020 Submission was not complete, causing CytoDyn's stock price to decline. Shortly thereafter, Defendants claimed the May 2020 Submission was complete. ¶¶501-03.

- On July 13, 2020, Defendants revealed the FDA's July 8, 2020 RTF Letter, causing CytoDyn's stock price to decline. However, Defendants continued to mislead investors as to the reasons for the RTF Letter and CytoDyn's ability to resubmit the BLA. ¶¶504-09.

- On September 16, 2020, Defendants revealed that CytoDyn had never requested and the FDA had advised it would deny EUA based on CD10 and there was no timeline for resubmitting the BLA. Although CytoDyn's stock price declined on the news, Defendants continued to mislead investors as to the CD10 results and CytoDyn's ability to resubmit the BLA. ¶¶510-21.

- Beginning March 5, 2020, Defendants revealed that CD12 had missed its primary endpoint, leading to stock price declines on March 8 and 9, 2020. Defendants also told investors that CD12 subgroup analyses had positive results and supported EUA ███ ████████████████████████████████████████████████ ¶¶522-30.

- On May 17, 2021, the FDA issued a public rebuke of Defendants' CD10 and CD12 statements, leading to a stock price decline. In addition to continuing to mislead investors about CytoDyn's ability to resubmit the BLA, Defendants also continued to tout the progress of the COVID-19 IND. ¶¶531-35.

- On March 30, 2022, CytoDyn disclosed that the FDA had placed clinical holds on its HIV and COVID-19 INDs, revealing that Defendants never had sufficient statistically reliable data to support their BLA and COVID-19 statements. Another stock price decline followed. ¶¶536-46.

Nothing more is required to plead causation for Section 10(b) claims, including claims based on both Rule 10b-5(b) and Rule 10b-5(a&c) conduct. *See Smith v. Lifevantage Corp.*, 341 F.R.D. 82, 107-08 (D. Utah 2022) (citing *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018)); *FirstEnergy*, 2022 WL 681320 at *29 (finding causation for Rule 10b-5(a&c) conduct over "a series of disclosing events").

*Second*, Defendants' contention that their promotional activities constituted common corporate conduct that is not inherently deceptive (DB 17) fails. Drafting, editing, and disseminating nearly 75 press releases that Defendants knew contained false and misleading

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 34
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

statements are deceptive acts. ¶464 & Exhibit A to the SAC; *Lorenzo*, 139 S. Ct. at 1100 ("dissemination of false or misleading statements with [scienter]" violates Rule-10b-5(a&c)). Demanding, paying for, and engaging in conference calls and interviews to publicize or amplify statements Defendants knew were misrepresentations are deceptive acts. ¶¶466-67; *see Lion,* 2018 WL 905862, at *17 (allegations defendants "edited, approved, and controlled the content of articles [which contained misrepresentations] before payment and publication" sufficient). Utilizing third-party promoters to publicize, amplify, and endorse statements Defendants knew were misrepresentations are deceptive acts. ¶¶468-73, 476-77, 491-92;[33] *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *12 (C.D. Cal. July 13, 2015) (hiring of promoters who released articles with false information sufficient); *accord Xoma*, 74 F.3d at 959. Likewise, disseminating such deceptive messages to ███████████ are themselves deceptive acts. ¶472; *Lorenzo*, 139 S. Ct. at 1096 ("[b]y sending e-mails [defendant] understood to contain material untruths" defendant employed a fraudulent scheme).[34] And Plaintiffs have pled all of this with particularly, alleging "specific actors, dollar amounts, [text and email] contacts, meetings," and the content of multiple nonpublic communications. *FirstEnergy*, 2022 WL 681320 at *14 (plaintiffs need only "show 'representative samples' of a complex and far-reaching fraudulent scheme").

*Third*, Kelly and Mulholland claim they did not engage in deceptive acts or have intent to deceive investors. DB 18, n.20.[35] But this ignores myriad allegations detailing their specific acts.

---

[33] Plaintiffs allege that Defendants ***did not*** properly disclose CytoDyn's third-party promoter relationships, including in CytoDyn's OTCQB Certifications. ¶¶473, 489, 491. Defendants' contrary claim (DB 17) is a premature factual dispute.

[34] *See also* ¶¶485-94 (SEC stock promotion red flags at CytoDyn). In arguing that these allegations "do[] not allege any losses caused by promoting, as opposed to simply making, the challenged statements," DB 18, n.21, Defendants further undermine their "distinct" causation requirement, conceding Plaintiffs allege a unified theory of fraud that includes deceptive acts tied to the "challenged statements."

[35] Defendants claim that because Mulholland did not have "ultimate authority" over others' statements, Kelly genuinely held his CD10 opinions, Mulholland and Kelly's stock sales were not suspicious, and Pourhassan's termination is not relevant to his state of mind, Plaintiffs have not alleged Rule 10b-5(a&c) scienter. DB 15-16; PB 2-3. Whether Mulholland is liable under Rule 10b-5(b) and *Janus* for making statements has no bearing on his scienter. Kelly's subjective beliefs are not supported by the SAC or, indeed, relevant where he knowingly omitted material

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 35
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

¶¶88, 163, 276, 378, 464, 468, 476, 482, 489. ████████████

████████████████████████████

████████████████████████████ ¶¶564-

94. ████████████████████

████████████ ¶¶464, 476. ████████

████████████████████████████

████████████████ ¶¶558, 560, 562, 565-67. *FirstEnergy,* 2022 WL 681320 at *15 (CFO and Regulatory Affairs Officer involved in scheme where CFO made statements, signed SEC filings, and "reviewed and determined" accounting for bribes and Regulatory Affairs Officer oversaw regulatory activities and interactions with regulators). Furthermore, Kelly and Mulholland ***knew*** their statements and the statements they promoted were false and misleading and ***knew*** the material information these statements omitted. ¶¶547-94. Defendants do not challenge the sufficiency of these allegations and thus concede that Plaintiffs allege scienter for their Section 10(b) claims. *FirstEnergy*, 2022 WL 681320 at *22-24.

### 3. CytoDyn is Liable for its Agents' Acts

CytoDyn claims it is not liable under Rule 10b-5(b) for materially false and misleading statements Lalezari, Dhody, and Patterson made. DB 13-14.[36] CytoDyn "can only act through its employees and agents." *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015). To assess corporate liability under Section 10(b), courts "look[] to agency principles" under which

_____

information from his statements. Plaintiffs can establish scienter for their Section 10(b) claims even if Kelly and Mulholland did not sell stock. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003). And Plaintiffs' establish scienter without Pourhassan's termination even if the Court was able to consider his arguments, which are based on accepting for their truth materials outside of the SAC, at the pleading stage (it cannot).

[36] CytoDyn incorrectly attributes five statements Pourhassan made to Lalezari, Dhody, and Patterson. ¶¶265, 314, 330-31, 375. CytoDyn is liable for Pourhassan's statements under Rule 10b-5(b). Additionally, ¶¶154, 160, 174-75, 268 reflect facts that support Plaintiffs' claims, not challenged statements. Lalezari's statements alleged in ¶575 are from a nonpublic email to the FDA.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 36
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"principals generally are responsible for the acts of agents committed within the scope of their authority." *Id.* at 475-76. "In the context of Rule 10b-5, [the Ninth Circuit] ha[s] adopted the general rule of imputation" and holds a "corporation is responsible…'for a misleading statement made by an employee or other agent who has actual or apparent authority.'" *Id.* at 476 (quoting *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990)). Plaintiffs need only satisfy Rule 8(a) when pleading that Lalezari, Dhody, and Patterson were CytoDyn's agents and acting within the scope of that authority when they spoke on investor calls and in interviews hosted and paid-for by CytoDyn. *Norris v. Dreyfuss*, 2008 WL 11419062, at *9 (C.D. Cal. Nov. 11, 2008); *SEC v. OwnZones Media Network, Inc.*, 2020 WL 13311398, at *5 (C.D. Cal. Sept. 17, 2020) (company liable for its agent's statements where its agent used the company's platforms to make statements).[37] Plaintiffs have done this. *See* ¶¶49, 93, 113, 339-41, 358-62, 375, 379, 382-83, 389, 520, 575-76, 578, 580 (Lalezari); ¶¶46, 174-75, 263-64, 266, 288-89, 512-14 (Dhody); ¶¶48, 315, 331, 342, 344, 346-47 (Patterson).[38]

CytoDyn claims that Plaintiffs have not satisfied *Janus* as to these statements. DB 13-14. But *Janus* articulates who can be liable for "making" a statement; it does not discuss or alter the agency principles under which Plaintiffs proceed. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426 (7th Cir. 2015) ("Nothing in *Janus* undid the long-standing rule that 'a corporation is liable for statements by employees who have apparent authority to make them.'"). Even if *Janus* is the correct framework, Plaintiffs allege that each statement was explicitly attributable to CytoDyn because Lalezari, Dhody, and Patterson were CytoDyn's agents. *In re Allstate Life Ins. Co. Litig.,* 2012 WL 1900560, at *4 (D. Ariz. May 24, 2012) (attribution

---

[37] CytoDyn's unsupported assertion that Rule 9(b) applies, DB 13, should be rejected. Moreover, CytoDyn's claim that Dhody spoke for Amarex when describing a meeting between the FDA and CytoDyn about CytoDyn's BLA, DB 13, contradicts the SAC. ¶512; *see also* ¶341 (Lalezari: "we wrote" the FDA asking about CytoDyn's compassionate use protocol). To the extent it is still good law (or precedential), CytoDyn's authority is, thus, distinguishable.
[38] *Accord In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1047, 1064 (D. Or. 2015) (company liable "for a third-party's statements" if it "intentionally used the third-party to disseminate false or misleading information); *see also Xoma*, 74 F.3d at 959.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 37
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

demonstrates "requisite 'ultimate authority' over those disclosures"); *SEC v. Daifotis,* 874 F. Supp. 2d 870, 880-81 (N.D. Cal. 2012) (same).

Moreover, ***all*** Defendants can be liable for these statements as deceptive acts in furtherance of a scheme under Rule 10(b)-5(a&c). *See supra* Section III.A.2. *Alphabet, Inc.*, 1 F. 4th at 699 ("Persons 'who do not make statements [under *Janus*], but who disseminate [them] to potential investors with [scienter], can be [liable under] *other* parts of Rule 10b-5'") (quoting *Lorenzo*, 139 S. Ct. at 1099). Accordingly, even if Kelly and Mulholland did not have "ultimate authority" for statements they did not make, DB 14-16, they are still liable under Rule 10b-5(a&c) because disseminating or promoting these statements constituted deceptive action in the overall fraudulent scheme.

### B.   Plaintiffs' Section 20(a) Claims

To plead Section 20(a) claims, Plaintiffs must allege (i) a Section 10(b) violation and (ii) the defendant controlled the person liable for that violation. *Alphabet*, 1 F. 4th at 701-702. "The relatively lenient standards of Rule 8(a)" apply to Section 20(a) claims. *Petrie v. Elec. Game Card Inc.*, 2011 WL 165402, *6 (C.D. Cal. Jan 12, 2011).[39] Whether a defendant is a control person "is an intensely factual question." *Howard*, 228 F.3d at 1065. "Allegations concerning an individual's title and responsibilities" are "sufficient to establish control." *Zillow*, 2022 WL 17486297, at *10

Plaintiffs sufficiently allege each Defendant's liability under Section 10(b), *see supra* Section III.A.1-2, and that each Individual Defendant controlled CytoDyn as corporate officers. *See Zillow*, 2022 WL 17486297, at *10 (Section 20(a) claims sustained where "as corporate officers, the Executive Defendants exercised control"); *Immune Response,* 375 F. Supp. 2d at 1031–32 (same).

---

[39]   Defendants contend, wrongly and without support, that Plaintiffs must plead control with particularity. DB 19; *see Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367 (N.D. Cal. 2020) ("district courts in the Ninth Circuit have concluded that because fraud is not a necessary element of a control person claim" only Rule 8(a) must be satisfied).

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 38
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The Individual Defendants respond that Plaintiffs failed to allege Section 10(b) violations. DB 19, PB 3. They are wrong. *See supra* Section III.A.1-2. Mulholland and Kelly separately claim their alleged "duties and responsibilities" including "review[] and approv[al]" of press releases, do not demonstrate control. DB 19. But, such facts regularly support control person claims in the Ninth Circuit. *Nguyen v. Radient Pharms. Corp.*, 2011 WL 13141630, at *8 (C.D. Cal. Oct. 26, 2011) (Section 20(a) alleged when defendants "were involved in the drafting, producing, reviewing, and/or dissemination of the allegedly false and misleading statements"); *Amgen*, 544 F. Supp. 2d at 1037.[40]

Indeed, Mulholland and Kelly's primary case citation supports Plaintiffs' position. *See* DB 19 (citing *Howard*, 228 F.3d at 1065 (Ninth Circuit **reversed** a JMOL granted in favor of Everex's CEO on a Section 20(a) claim because he "had authority over the process of preparing and releasing the financial statements" and signed those statements)). Mulholland (CFO) and Kelly (CMO) are factually akin to Everex's CEO. ¶¶664-66.

Although not required as explained in *Howard*, Plaintiffs also satisfy the "day-to-day oversight" standard. ¶¶88 ██████████████████████████ 213, 556 ████████ ████████ 464 ████████████ 468 ████████████ ████████ 489 (Mulholland executed CytoDyn's OTCQB Certifications), 560-63 ████████████████████████████ 564-594 ████████ ████████████████████ 578 ████████████ ████████

## C. Plaintiffs' Section 20A Claims

Section 20A of the Exchange Act creates primary liability for anyone who purchases or sells "a security while in possession of material, nonpublic information" ("MNPI"). 15 U.S.C. §

---

[40] Pourhassan concedes the SAC's control allegations as to him. PB 3. Mulholland and Kelly argue that **only** Pourhassan controlled CytoDyn because he pushed out people who clashed with him, DB 19, but this is a factual question that cannot be resolved now. Notably, Kelly was CMO and a director when CytoDyn terminated Pourhassan. ¶¶615-17.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

78t-1(a). To satisfy Section 20A, a plaintiff must plead (1) a predicate violation of the securities laws; and (2) facts showing contemporaneous trading activity. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 711 (9th Cir. 2012).

Plaintiffs allege a violation of the securities laws, *see supra* Section III.A.1-2, and that the Individual Defendants were in possession of MNPI showing the BLA was not "complete" and ███ ███████████████ did not support Defendants' COVID-19 statements. ¶¶618-19. These allegations suffice. *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605 (N.D. Cal. 2019) ("*McKesson*") (sustaining 20A claim where the individual defendants possessed MNPI when trading).

The Ninth Circuit has not defined "contemporaneous" trading, but district courts have found it where plaintiffs purchased the same day, within one trading day, or even several days after defendants sold. *See Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, *12 (N.D. Cal. Feb. 27, 2018) ("trading on the same day or the day after is contemporaneous"); *Johnson v. Aljian*, 257 F.R.D. 587, 595 (C.D. Cal. 2009) (trading within *four days* is contemporaneous); *McKesson*, 411 F. Supp. 3d at 605-06 (trading within *six days* is contemporaneous). Plaintiffs allege that they traded the same day or within one trading day of each Defendant: (i) Named Plaintiff Hooper purchased 1,000 shares on May 1, 2020 – the *same day* Kelly sold 1,200,000 shares and *one day* after Pourhassan sold 2,219,837 shares; (ii) Named Plaintiff Evans purchased 100 shares on August 3, 2020 – the *next trading day* after Pourhassan sold 156,570 shares on July 31, 2020; and (iii) Named Plaintiff McGee purchased 1,700 shares on December 22, 2020 – the *same day* on which Mulholland sold 245,704 shares. ¶¶621-28. Moreover, Plaintiffs need only have standing for one trade for each Defendant in order to represent a class asserting claims premised upon multiple transactions by each Defendant. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 285-86 (N.D. Cal. 2020).

Defendants claim Plaintiffs must *separately* allege scienter for their Section 20A claims. DB 19. Not so. Scienter only is a required element of the predicate Section 10(b) claim, not the

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 40
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

derivative Section 20A claim. Thus, if Plaintiffs establish that the Individual Defendants violated Section 10(b) with scienter, the Court should sustain Plaintiffs' Section 20A claims. *See Verifone*, 704 F.3d at 711 (reversing dismissal of Section 20A claims because plaintiffs pled scienter for Section 10(b) claims); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("[s]41enter is an essential element of a § 10(b)" claim "[a]nd to prevail on their [§ 20(a)] claims…Plaintiffs must first allege a [§ 10(b)] violation…pleading scienter with particularity" or "there can be no liability").[41]

The Individual Defendants also claim they only have Section 20A liability if they actually used the MNPI to trade. DB 20. But, Section 20A "requires only that a party ***know*** the inside information while making the trade, not that she actually used that information." *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1050 (N.D. Cal. 2016) (rejecting analysis from *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) upon which Defendants rely); 15 U.S.C. § 78t-1(a) (proscribing "purchasing or selling a security while in possession of material, nonpublic information"); *see also Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 (2d Cir. 2014) ("it is not necessary to show that corporate insiders ***used*** the nonpublic information; it is sufficient to prove that they traded their corporation's securities while knowingly in possession of [MNPI]").[42]

Finally, Mulholland claims he is not liable because he traded under a Rule 10b5-1 plan, after investors knew that CD10 missed its endpoint and CytoDyn had no timeline to resubmit the BLA, and at prices below the Class Period intraday high. DB 20. Courts that have considered a Rule 10b5-1 plan in the context of Section 20A claims have refused to dismiss because it would

---

[41]   None of Defendants' cited case law supports a separate Section 20A scienter requirement. DB 19. In fact, the full *Lipton* quote makes clear that the scienter requirement is tied to Section 10(b), not Section 20A.

[42]   *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) is a Section 10(b) case premised upon insider trading. While the *Neubronner* panel refers to using nonpublic information to trade for a defendant's "own advantage," they clearly meant the defendant traded for his "own benefit" and not the benefit of a third party. *Id.* at 672.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 41
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

require accepting "proof of the disputable conclusion that [the Rule 10b5-1 plan] rule[s] out the possibility of trading based on nonpublic material information." *McKesson*, 411 F. Supp. 3d at 605, n.3 (citing *Khoja*, 899 F.3d at 999).[43] Mulholland's assertion that TOTM absolves him of Section 20A liability fails because investors were not aware of the MNPI he possessed when he traded. *See supra* Section III.A.1. As for the comparison of the prices at which Mulholland (and Kelly) sold to the intraday Class Period high, this is not relevant to pleading Section 20A claims as Defendants' case law makes clear.

Kelly separately contends he is not liable under Section 20A because he was unaware the April 2020 Submission did not have "clinical datasets" and he traded at the behest of Pourhassan. DB 21 & n.24-25. Whether Kelly knew the April 2020 Submission included "clinical datasets" is irrelevant; it is undisputed he possessed MNPI about both the BLA and the COVID-19 IND when he traded. ¶¶618-20. Nor is *why* Kelly traded a relevant inquiry under Section 20A. Whether Pourhassan asked him to sell—a highly disputed fact which only is before the Court via a YouTube video of a paid-for Proactive Investor "interview" that is not capable of judicial notice or incorporated by reference in the SAC (*see Khoja*, 899 F.3d at 999)—is not relevant to Section 20A liability.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny the Motions.

\* \* \*

I certify that this memorandum contains 14,947 words, in compliance with the Local Civil Rules and the March 13, 2023 Order Granting Stipulated Motion for Leave to File Omnibus Brief in Opposition to Defendants' Motions to Dismiss.

---

[43]    Defendants' cases discuss how Rule 10b-5 plans impact scienter under Section 10(b), not Section 20A.

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 42
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

DATED: March 31, 2023

Respectfully submitted,

**BYRNES KELLER CROMWELL LLP**

By: S/ Bradley S. Keller
Bradley S. Keller, WSBA #10665
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206), 622-2522
Email: bkeller@byrneskeller.com

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Jennifer L. Joost (*Pro Hac Vice*)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: jjoost@ktmc.com

and

Joshua E. D'Ancona (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: jdancona@ktmc.com

***Attorneys for Lead Plaintiff Brian Joe
Courter and Courter and Sons LLC,
Named Plaintiffs Diane M. Hooper,
Thomas McGee, and Candra E. Evans, and
Lead Counsel for the Putative Class***

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 43
Case No. 3:21-cv-05190-BHS

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on the 31st day of March, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Bradley S. Keller
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

PLAINTIFFS' OMNIBUS OPPOSITION TO
MOTION TO DISMISS – PAGE 44
Case No. 3:21-cv-05190-BHS

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000