The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN JOE COURTER, COURTER AND SONS LLC, DIANE M. HOOPER, THOMAS MCGEE, and CANDRA E. EVANS, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CYTODYN INC., NADER Z. POURHASSAN, MICHAEL MULHOLLAND, and SCOTT A. KELLY,

Defendants.

No. 3:21-cv-05190-BHS

**DEFENDANTS CYTODYN INC., MICHAEL MULHOLLAND, AND SCOTT A. KELLY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

**NOTE ON MOTION CALENDAR: MAY 1, 2023**

REPLY IN SUPP. OF MOT. TO DISMISS
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 1

    A.    The SAC Does Not Adequately Allege that Certain Challenged BLA Statements Were Materially False or Misleading .................................... 1

       1.    Pre-RTF Letter Statements ..................................................... 2

       2.    Post-RTF Letter Statements ................................................... 2

    B.    The SAC Does Not Adequately Allege that Certain Challenged COVID-19 Statements Were Materially False or Misleading ................................... 4

    C.    Many Other Challenged Statements Are Inactionable ........................... 5

       1.    Forward-Looking Statements .................................................. 6

       2.    Corporate Optimism and Puffery ........................................... 7

       3.    Statements of Opinion ............................................................ 7

    D.    Scientific Disagreement Fails to State a Claim ...................................... 7

    E.    CytoDyn Is Not Liable for Third-Party Statements ............................... 8

    F.    The Court Should Dismiss Count I in its Entirety as Against Mr. Mulholland and Dr. Kelly ..................................................................... 8

    G.    Plaintiffs Fail to State a Scheme Liability Claim .................................... 9

    H.    Plaintiffs Fail to State a Section 20A Insider Trading Claim Against Mr. Mulholland or Dr. Kelly ..................................................................... 10

III.  CONCLUSION ..................................................................................................... 11

REPLY IN SUPP. OF MOT. TO DISMISS - i
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Aldus Sec. Litig.*,
    1993 WL 121478 (W.D. Wash. Mar. 1, 1993)...........................................................................11

*In re AnaptysBio, Inc. Sec. Litig.*,
    2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ...........................................................................4

*In re AST Research Sec. Litig.*,
    887 F. Supp. 231 (C.D. Cal. 1995)...........................................................................................11

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008)......................................................................................................3

*Callan v. Motricity Inc.*,
    2013 WL 5492957 (W.D. Wash. Oct. 1, 2013)........................................................................3, 7

*SEC v. Chen*,
    2019 WL 652360 (W.D. Wash. Feb. 15, 2019) .........................................................................9

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015)......................................................................................................8

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008)....................................................................................10

*Dresner v. Silverback Therapeutics Inc.*,
    2023 WL 2913755 (W.D. Wash. Apr. 12, 2023) .......................................................................8

*Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015) ......................................................................................................2

*Gammel v. Hewlett-Packard Co.*,
    905 F. Supp. 2d 1052 (C.D. Cal. 2012).....................................................................................6

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015).......................................................................................................8

*In re Impinj, Inc., Sec. Litig.*,
    414 F. Supp. 3d 1327 (W.D. Wash. 2019) .................................................................................9

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ....................................................................................................................8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Jasin v. Vivus, Inc.*,
    2016 WL 1570164 (N.D. Cal. Apr. 19, 2016)..................................................................2, 5

*Jasin v. Vivus, Inc.*,
    721 F. App'x 665 (9th Cir. 2018)....................................................................................7

*In re Karyopharm Therapeutics Inc., Sec. Litig.*,
    552 F. Supp. 3d 77 (D. Mass. 2021)................................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018).............................................................................................5

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) .......................................................................................................9

*Maeve Inv. Co. Ltd. P'ship v. Teekay Corp.*,
    2017 WL 5158059 (W.D. Wash. Nov. 7, 2017) ..........................................................6

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) .............................................................................................................2

*In re Nektar Therapeutics, Inc. Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022)........................................................................................2, 3

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993)...............................................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ...........................................................................................................4

*Padnes v. Scios Nova Inc.*,
    1996 WL 539711 (N.D. Cal. 1996)..................................................................................8

*Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)..........................................................................................6

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)...................................................................................2, 3, 5

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    335 F.R.D. 276 (N.D. Cal. 2020) ...................................................................................11

*In re Splunk Inc. Sec. Litig.*,
    592 F. Supp. 3d 919 (N.D. Cal. 2022)............................................................................6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ...........................................................................................................9

REPLY IN SUPP. OF MOT. TO DISMISS - iii
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## REGULATIONS

17 C.F.R. § 240.10b-5(b) ................................................................................................. 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

Plaintiffs' Opposition ("Opp.") confirms the deficiencies of the Second Amended Complaint ("SAC").[1]  Plaintiffs can only argue that certain challenged statements about the Company's BLA submission were materially false and misleading by ignoring the context of those statements—including that CytoDyn never promised that the BLA would be approved and promptly disclosed receipt of the RTF Letter.  Plaintiffs' suggestion that CytoDyn could have phrased its COVID-19-trial disclosures differently also fails to state a securities fraud claim.  The Opposition also glosses over Defendants' arguments regarding forward-looking statements, statements of corporate optimism, and opinion statements, none of which is actionable.

Plaintiffs also improperly attribute to the Company third-party statements and attempt to hold Mr. Mulholland and Dr. Kelly liable for statements others made under the guise of an alleged "scheme" that consists of nothing more than the statements themselves.  Finally, Plaintiffs' control-person and insider-trading claims against Mr. Mulholland and Dr. Kelly fail for similar reasons— the SAC's allegations fail to show the level of control necessary for liability under Section 20(a), and these Defendants have neither the requisite primary liability nor the requisite scienter for a Section 20A claim.  The Court should thus dismiss Counts I, III, and IV against Mr. Mulholland and Dr. Kelly, dismiss Count I in part against CytoDyn, and dismiss Count II against all three Defendants.

# II.    ARGUMENT

## A.    The SAC Does Not Adequately Allege that Certain Challenged BLA Statements Were Materially False or Misleading

Plaintiffs fail to show that certain challenged statements about the BLA submission—both before and after receipt of the RTF Letter—were misleading in light of the context in which those statements were made.

---

[1] Defined terms have the same meaning as in Defendants' opening brief.

REPLY IN SUPP. OF MOT. TO DISMISS - 1
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 1.    Pre-RTF Letter Statements

First, Plaintiffs fault the Company for an alleged failure to disclose that certain data was "missing" from the BLA submission.  Opp. 9-10.  But Plaintiffs make no attempt to demonstrate how more detailed disclosure of what data was (or was not) submitted with the BLA would have "significantly altered the total mix of information made available" to the market.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (internal quotations omitted); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012) ("[E]ven if some investors might have wanted more extensive information … that would not be sufficient to make the alleged original statements false or misleading.").  Plaintiffs further suggest that whether the challenged statements would have led investors to expect the FDA to accept the BLA for filing is somehow "irrelevant" to the assessment of whether those statements were misleading (Opp. 9), all but acknowledging that reasonable investors would *not* have understood CytoDyn's statements to be guarantees of FDA acceptance or BLA approval.  Rather, reasonable investors would have understood not only that acceptance was not guaranteed, but also that the submission was but one part of an ongoing series of interactions between the Company and the FDA—and Plaintiffs plead no facts to support a contrary conclusion.  *See* Mot. 4-5; *see also Jasin v. Vivus, Inc.*, 2016 WL 1570164, *14 (N.D. Cal. Apr. 19, 2016), *aff'd*, 721 F. App'x 665 (9th Cir. 2018) (additional disclosures not required when reasonable investors knew of uncertainty in regulatory approval of weight loss drug); *see also Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 243-44 (1st Cir. 2015) ("There must be some room for give and take between a regulated entity and its regulator."); *In re Nektar Therapeutics, Inc. Sec. Litig.*, 34 F.4th 828, 837-38 (9th Cir. 2022) (no claim for alleged omission of certain clinical trial data because complaint did not plead facts to show reasonable investor would be misled absent such data).

### 2.    Post-RTF Letter Statements

Plaintiffs next contend that certain challenged Company statements made *after* disclosure of the RTF Letter on July 13, 2020 were misleading because those statements continued to refer to the BLA submission as "complete" as of May 11, 2020 (the date CytoDyn submitted additional

REPLY IN SUPP. OF MOT. TO DISMISS - 2
(No. 3:21-cv-05190-BHS)

clinical datasets to the FDA).  Opp. 10.  But Plaintiffs offer no reason to conclude that a reasonable investor would have viewed these statements about the prior BLA submission—on which the FDA *had already taken negative action*—as material, especially where this language largely appears in statements that simply recount the historical BLA timeline.  *See* Mot. 5 & n.4; *Rigel*, 697 F.3d at 881.  Nor does the Opposition establish that it was misleading for the Company to express initial optimism about resubmitting the BLA package without the need for additional clinical trials.  Indeed, Plaintiffs acknowledge that "the FDA never told CytoDyn" one way or the other whether additional trials would be needed.  Opp. 10.  The Company disclosed that additional data was needed, and that it planned to resubmit with additional data.  Plaintiffs fail to demonstrate that this disclosure provided an inaccurate impression of the state of affairs as CytoDyn understood them.  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (statement is misleading only "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists'") (citation omitted).

Plaintiffs also claim the Company's disclosures in the wake of the RTF Letter about potential BLA resubmission must have been misleading because the stock price fell further on September 17, 2020 (when CytoDyn announced there was not a clear timeline for BLA resubmission), and nearly two years later on March 31, 2022 (when the Company announced that the FDA placed a partial clinical hold on the HIV program).  Opp. 13.  This "fraud by hindsight" argument fails.  *Callan v. Motricity Inc.*, 2013 WL 5492957, *7 (W.D. Wash. Oct. 1, 2013) (citation omitted) ("[T]hat [a] prediction proves to be wrong in hindsight does not render the statement untrue when made.").  Nothing supports that these later price fluctuations were anything other than reactions to negative developments that occurred after disclosure of the RTF Letter, or that CytoDyn knew on July 13, 2020 that its initial optimism about potential BLA resubmission was unfounded or that the FDA would ultimately place a hold on the HIV program two years later.  *See, e.g., Nektar*, 34 F.4th at 839 ("factual allegations most plausibly suggest that [subsequent] relatively disappointing test results, not any revelation of earlier falsehoods, caused [the company's] share price to plunge.").

REPLY IN SUPP. OF MOT. TO DISMISS - 3
(No. 3:21-cv-05190-BHS)

**B.        The SAC Does Not Adequately Allege that Certain Challenged COVID-19 Statements Were Materially False or Misleading**

Plaintiffs' claims regarding the COVID-19 statements fail for two primary reasons: *first*, the securities laws do not require issuers to focus on the most negative outcomes or unnecessarily disparage themselves; and *second*, the Company disclosed the most salient (and adverse) information about both the CD10 trial and the CD12 trial, namely, that they both failed to meet their primary endpoints. *See* Mot. 6-8.  The Opposition fails to rebut the main thrust of those arguments, and instead rests on the insufficient premise that the challenged COVID-19 statements were misleading because the Company continued to express general optimism about leronlimab as a treatment for COVID-19. *See* Opp. 14-26.

Plaintiffs repeatedly concede that CytoDyn disclosed, at each stage, the news that a reasonable investor would consider material—*e.g.*, that the FDA would not issue further eINDs (Opp. 16), that the CD10 trial did not meet its primary endpoint (*id.* at 21), and that the CD12 trial did not meet its primary endpoint (*id.* at 24).  Plaintiffs take issue with *how* the Company chose to disclose these negative results.  *See* Opp. 21-22 (criticizing timing of disclosures and characterization of NEWS2 outcome); 24-26 (criticizing relative focus on subgroup analyses).  But the Opposition offers no reason to believe that reasonable investors were misled by the Company's purported focus on a few pieces of what it viewed as positive data given its contemporaneous disclosure of the disappointing news about the studies as a whole.  In short, CytoDyn disclosed salient information from which investors could—and market observers did (*see* Mot. 7-8 & n.8)— draw their own conclusions. *See In re AnaptysBio, Inc. Sec. Litig.*, 2021 WL 4267413, *8 (S.D. Cal. Sept. 20, 2021) (no actionable omission where "Plaintiffs and the analysts had all the information necessary … to assess the outcome of the clinical trials," since investors possessed the information that the trials failed to meet their primary endpoints); *In re Karyopharm Therapeutics Inc., Sec. Litig.*, 552 F. Supp. 3d 77, 87 (D. Mass. 2021), *aff'd sub nom. Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214 (1st Cir. 2022) (statements reporting positive subgroup data not misleading where company disclosed trial would not meet primary endpoint); *see also Omnicare,*

REPLY IN SUPP. OF MOT. TO DISMISS - 4
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) (reasonable investor takes statements in light of all surrounding statements and "takes into account the customs and practices of the relevant industry").[2]

As discussed *supra* at 2, Plaintiffs' desire for additional context or information does not—on its own—render the Company's disclosures misleading. *See Jasin*, 2016 WL 1570164, *14 ("though investors may have preferred to have more information regarding the reports, section 10(b)(5) and Rule 10b-5 do not require such full disclosure as long as that which is disclosed does not misrepresent the remaining contents."); *Rigel*, 697 F.3d at 881 ("[E]ven if some investors might have wanted more extensive information … that would not be sufficient to make the alleged original statements false or misleading."). And Plaintiffs concede the market was not misled. Opp. 24 ("observers recognized that CD12 had failed" when the Company announced that it missed its primary endpoint).

Finally, as discussed *supra* at 3, subsequent decreases in stock price, *see* Opp. 25, do nothing for Plaintiffs' case. Such drops instead reflect subsequent developments, demonstrating at best that those *later* disclosures were material—*not* that the Company's prior disclosures about its failure to meet the CD10 and CD12 primary endpoints were somehow misleadingly incomplete. *See* Dkt. 117 (reflecting Company share price declines on August 11, 2020 and March 8, 2021, the dates the Company disclosed CD10 and CD12 trials did not meet primary endpoints).

**C.    Many Other Challenged Statements Are Inactionable**

The SAC challenges numerous statements that are quintessential examples of inactionable forward-looking statements, statements of corporate optimism, or statements of opinion. Mot. 8-12. The Opposition's attempt to argue otherwise, by recharacterizing allegations and selectively quoting out of context, is unconvincing.

---

[2] Plaintiffs' authorities are distinguishable: in *Schueneman v. Arena Pharms., Inc.* (Opp. 14-15), the company "did more than just express its confidence in [drug's] future," it "claim[ed] that all of the data was running in [a drug's] favor," without disclosing the existence of a trial showing that the drug caused cancer in rats. 840 F.3d 700, 707-08 (9th Cir. 2016); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1015 (9th Cir. 2018) (defendant promoted positive "25 percent" interim results, without disclosing negative "50 percent" results).

REPLY IN SUPP. OF MOT. TO DISMISS - 5
(No. 3:21-cv-05190-BHS)

## 1.    Forward-Looking Statements

The Opposition posits that "the statements upon which Plaintiffs actually premise their claims are not forward looking" because those statements contain words such as "requested" and "we have." Opp. 26. But quoting isolated phrases from paragraphs the Company identified as forward looking does not pull those phrases outside of the scope of the PSLRA's safe harbor. *See Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (statements that "examined as a whole, … relate[] to future expectations and performance" fall within safe harbor); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 936 (N.D. Cal. 2022) ("[F]or a challenged statement to be deemed 'mixed,' [meaning some portion falls outside the safe harbor], the non-forward-looking aspects of the challenged statement must be 'separable' from the forward-looking aspects."). Similarly unavailing is the Opposition's challenge to the adequacy of the accompanying cautionary language. Opp. 26-28. CytoDyn specifically warned about forward looking statements discussing "the possible results of clinical trials, studies or other programs or ability to continue those programs" and risks and uncertainties related to "the Company's ability to achieve approval of a marketable product." Dkt. 117, Ex. G, FY 2020 Form 10-K at 4; *see also* Dkt. 117, Ex. E, July 13, 2020 Press Release at 4 (referring specifically to risks regarding "the ability to obtain regulatory approval" and later to "the Company's ability to achieve FDA approval of a marketable product, … [and] the results of the Company's clinical trials, including the possibility of unfavorable clinical trial results"). Courts deem equivalent (or even less specific) warning language sufficiently detailed to be meaningful. *Maeve Inv. Co. Ltd. P'ship v. Teekay Corp.*, 2017 WL 5158059, *5 (W.D. Wash. Nov. 7, 2017) (warnings that an "inability to secure financing" due to market conditions and "failure of the boards of the daughter companies to approve cash distribution increases could prevent [company] from increasing the dividend" were meaningful); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1066 (C.D. Cal. 2012) (warning that "some information provided during this call may include forward-looking statements that are based on certain assumptions and are subject to a number of risks and uncertainties, and actual future results may differ materially" sufficiently meaningful).

REPLY IN SUPP. OF MOT. TO DISMISS - 6
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 2.   Corporate Optimism and Puffery

Plaintiffs argue their claims are "not premised upon" any statements that are expressions of corporate optimism.  Opp. 30.  This concession warrants dismissal of any claims tied to the statements of optimism identified in Defendants' opening brief.  *See* Mot. 10-11 & n.10.  Moreover, Plaintiffs' suggestion that a statement made in the context of discussing clinical trials cannot qualify as "puffery" (Opp. 31) is incorrect.  *See Jasin v. Vivus, Inc.*, 721 F. App'x 665, 667-68 (9th Cir. 2018) ("[G]eneric statement that the chances of approval" for application to market drug "were 'looking good' falls in the category of 'mildly optimistic, subjective assessment[s]' that are insufficient for a securities fraud claim.").  But even assuming statements of corporate optimism "when taken in context" could in some circumstances form the basis for a claim, Plaintiffs do not identify which statements or what "context" would make these statements actionable.  Opp. 31.  Plaintiffs offer only rhetoric, which does not convert the language identified in Defendants' opening brief from puffery to actionable statements.

### 3.   Statements of Opinion

The Opposition also fails to respond meaningfully to Defendants' arguments about the challenged opinion statements, in which the speaker used phrases such as "[t]hat's my guess" and "[i]n my humble opinion."  *See* Mot. 11.  Nor can Plaintiffs show that the speaker did not genuinely believe the contents of the statement at the time of each challenged opinion—that some of these opinions were later shown to be incorrect does not make them actionable.  *Callan*, 2013 WL 5492957, at *7 (predictions later proven wrong do not render the statements untrue when made).

### D.   Scientific Disagreement Fails to State a Claim

Many challenged statements reflect opinions regarding conclusions drawn from scientific data; such statements are not false or misleading simply because a third party (including the FDA) draws a different conclusion from that data.  *See* Mot. 12-13.  Plaintiffs' only response is to offer a single footnote in which they note that certain cases Defendants cite in this regard pre-date *Omnicare* and two Ninth Circuit cases (*Align* and *Atossa*).  Opp. 30 n.30.  But Plaintiffs concede Defendants do cite post-*Omnicare* cases, which remain good law and are factually relevant.  *See*

REPLY IN SUPP. OF MOT. TO DISMISS - 7
(No. 3:21-cv-05190-BHS)

Mot. 12-13.  And notably, this Court held just last month that even if plaintiffs "disagree with [a company's] conclusion and the import of the data used in support of these conclusions, … it does not make the statements false or misleading."  *Dresner v. Silverback Therapeutics Inc.*, 2023 WL 2913755, *12 (W.D. Wash. Apr. 12, 2023).

### E.   CytoDyn Is Not Liable for Third-Party Statements

In response to Defendants' argument that CytoDyn is not liable under Section 10(b) for statements outside actors made (*see* Mot. 13-14), Plaintiffs argue that the Company is liable under agency principles.  Opp. 36-38.  But even assuming a showing of an agency relationship could satisfy the ultimate authority test set forth in *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), the SAC offers no facts to establish that the speakers in question (Dr. Dhody of Amarex; Dr. Patterson, CEO of IncellDX; and Dr. Lalezari, CEO of Quest Clinical Research) were speaking for CytoDyn or were otherwise acting as agents for the Company.  *Compare with Padnes v. Scios Nova Inc.*, 1996 WL 539711, *10 (N.D. Cal. 1996).  Plaintiffs' cases are inapposite as they concern corporate liability for statements by directors, officers, and employees.  *See, e.g.*, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 472 (9th Cir. 2015) (founder and former CEO, former CFO, and outside directors); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426 (7th Cir. 2015) (employees).  Because nothing in the SAC supports an inference that CytoDyn controlled the content of these third-party statements or the decision to make them, CytoDyn is not liable.

### F.   The Court Should Dismiss Count I in its Entirety as Against Mr. Mulholland and Dr. Kelly

In their opening brief, Mr. Mulholland and Dr. Kelly argued that the Section 10(b) claim against them fails because the SAC premises the claim on statements that (with limited exceptions) they did not make.  The Opposition concedes Plaintiffs "do not seek to hold Kelly and Mulholland liable under Rule 10b-5(b) for statements they did not make."  Opp. 11 n.7.  This concession requires dismissal of Count I as against Mr. Mulholland—the SAC does not attribute any challenged statement to him, and playing "some role in the drafting, approving, and/or

REPLY IN SUPP. OF MOT. TO DISMISS - 8
(No. 3:21-cv-05190-BHS)

publishing of" statements "is not enough to create liability under Section 10(b)." *In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327, 1335 (W.D. Wash. 2019). As for Dr. Kelly, Plaintiffs challenge only two statements he made (one opinion statement and one statement that reflects a scientific difference of opinion regarding the interpretation of clinical trial data) that are inactionable for the reasons discussed above and in Defendants' opening brief. *See* Mot. 15-16.

### G.    Plaintiffs Fail to State a Scheme Liability Claim

Plaintiffs' argument regarding purported scheme liability rests on a misreading of *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019). Under *Lorenzo*, "disseminating false or misleading information to prospective investors with the intent to defraud" can form the basis for a scheme liability claim under Section 10b-5(a&c), "assuming other here-irrelevant legal requirements are met." *Id*. at 1100-01. Those "other" elements include causation, as addressed in *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157-58 (2008). *Stoneridge* requires Plaintiffs to demonstrate loss causation for each actor's alleged participation in the scheme—thus, for Mr. Mulholland and Dr. Kelly, for example, the SAC must allege loss related to their role in disseminating the challenged statements that others made. *Id.* at 157-58. While Plaintiffs assert the SAC sufficiently alleges loss attributable to the purported scheme (Opp. 34), they do not articulate any loss suffered as a result of the "promotional scheme" itself that goes beyond the loss purportedly realized upon the "correction" of the purportedly misleading statements. *See* Mot. 16-18.

The scheme claim as against Mr. Mulholland and Dr. Kelly fails for the additional reason that Plaintiffs fail to establish that these Defendants engaged in "inherently deceptive" conduct. *SEC v. Chen*, 2019 WL 652360, *18 (W.D. Wash. Feb. 15, 2019) (quoting *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011)). The Opposition acknowledges that a scheme claim requires such conduct, and argues that "[d]emanding, paying for, and engaging in conference calls and interviews to publicize or amplify statements Defendants knew were misrepresentations are deceptive acts." Opp. 35. But the SAC does not allege adequately that Mr. Mulholland or Dr. Kelly "publicize[d] or amplifie[d]" the challenged statements. *See* SAC ¶¶ 464, 468, 470, 482,

REPLY IN SUPP. OF MOT. TO DISMISS - 9
(No. 3:21-cv-05190-BHS)

489 (allegations limited to passive behavior).[3]  The one possibly relevant allegation is that "Pourhassan and/or Mulholland sent the final versions [of press releases] to various news and promotional outlets and potential investors."  SAC ¶ 476.  This vague assertion, which does not connect the alleged dissemination to any specific challenged statement—and does not even definitively allege that it was Mr. Mulholland, as opposed to Dr. Pourhassan, who sent the press releases—is insufficient to state a claim for scheme liability.[4]

### H.   Plaintiffs Fail to State a Section 20A Insider Trading Claim Against Mr. Mulholland or Dr. Kelly

The Opposition fails to salvage Plaintiffs' insider trading claim against Mr. Mulholland or Dr. Kelly.[5]  As explained in the opening brief (Mot. 20-21), the SAC fails to plead that Mr. Mulholland or Dr. Kelly "actually used" purported material nonpublic information in making the challenged trades.  Plaintiffs assert that they need to establish only that the insider "knew" the nonpublic information at the time of the challenged trade—and not that he actually "used" the information to trade.  Opp. 41.  But Plaintiffs must allege "specifically what information [defendant] obtained, when and from whom he obtained it, *and how he used it for his own advantage*."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (emphasis added); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202-203 (C.D. Cal. 2008) (Section 20A claim "requires that the insider *actually use … * the inside information in deciding to make the trade").  Thus, Plaintiffs' failure to show *actual use* of nonpublic information for trading requires dismissal of the Section 20A claim.  Regardless, Plaintiffs do not dispute that (1)

[3] Plaintiffs are incorrect that Defendants "do not contest that they knew the allegedly material information omitted from their statements and otherwise knew their statements were materially false and misleading when made."  Opp. 9 n.6.  Because Mr. Mulholland did not make any of the challenged statements and Dr. Kelly only made two statements that are otherwise inactionable (*see supra* at 8-9), the Court can dismiss the SAC as against them without assessing the adequacy of Plaintiffs' scienter allegations.

[4] The control person claim against Mr. Mulholland and Dr. Kelly also fails: the Opposition fails to show that either individual exercised the requisite control over the challenged conduct to state a claim under Section 20(a).  The Opposition confirms that Plaintiffs rest their control-person claim on Defendants' titles and alleged corporate responsibilities, but this is insufficient, especially where Plaintiffs specifically allege it was Dr. Pourhassan who exercised substantial control over the Company's operations.  *See* Mot. 18-19.

[5] The Section 20A claim against Mr. Mulholland or Dr. Kelly also fails because the SAC does not establish that either of them committed an independent violation of the securities laws.  *See* Opp. 40 (Section 20A claim requires a "predicate violation of the securities laws.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Mr. Mulholland's challenged sales were made in accordance with a pre-existing Rule 10b5-1 trading plan, and (2) the SAC does not establish that Dr. Kelly knew at the time of his challenged sale the BLA was missing certain clinical datasets—all of which rebuts an inference that either Defendant was aware of material adverse information and acted with scienter in connection with the challenged trades.  *See* Mot. 20-21.

Finally, Plaintiffs recognize their Section 20A requires a showing of contemporaneous trading, but argue that trades need not occur on the same day to be deemed "contemporaneous." Opp. 40.  The Court should adopt the same-day standard articulated in the cases Defendants cited in their opening brief (*see* Mot. 21-22 & n.26), as this approach is more consistent with the purpose of the contemporaneous trading requirement, which "functions as a substitute for privity."  *In re Aldus Sec. Litig.*, 1993 WL 121478, *7 (W.D. Wash. Mar. 1, 1993); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) ("[t]he same day standard is the only reasonable standard given the way the stock market functions.").  Under that standard, the SAC fails to plead the required contemporaneous trading between Plaintiffs and Dr. Kelly or Mr. Mulholland for the vast majority of the transactions on which Plaintiffs premise this claim.[6]

### III.    CONCLUSION

The Court should dismiss: (1) Count I in its entirety as against Mr. Mulholland and Dr. Kelly, and in part as against CytoDyn; (2) Count II against all three Defendants; and (3) Counts III and IV against Mr. Mulholland and Dr. Kelly.

---

[6] Plaintiffs assert they "need only have standing for one trade for each Defendant in order to represent a class asserting claims premised upon multiple transactions by each Defendant."  Opp. 40.  But *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 285-86 (N.D. Cal. 2020), on which Plaintiffs rely, addresses the sufficiency of a named plaintiff's trading *once a class is certified*.  Until and unless the Court certifies a class, the claim can only proceed as to those trades for which Plaintiffs allege contemporaneous trading.

REPLY IN SUPP. OF MOT. TO DISMISS - 11
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 1st day of May, 2023.

I certify that this reply brief 4,097 words, in compliance with the Local Civil Rules.

DAVIS WRIGHT TREMAINE LLP

By: /s/ Fred B. Burnside
Fred B. Burnside, WSBA #32491
Brendan T. Mangan, WSBA #17231
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Tel: 206-622-3150
Fax: 206-757-7700
Email:  fredburnside@dwt.com
          brendanmangan@dwt.com

WILMER CUTLER PICKERING
  HALE and DORR LLP
Michael G. Bongiorno (*Pro Hac Vice*)
Kevin P. Muck (*Pro Hac Vice*)
Peter J. Kolovos (*Pro Hac Vice*)
60 State Street
Boston, MA  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Emails:  michael.bongiorno@wilmerhale.com
            kevin.muck@wilmerhale.com
            peter.kolovos@wilmerhale.com

*Attorneys for Defendants CytoDyn, Inc.
Michael Mulholland, and Scott A. Kelly*

REPLY IN SUPP. OF MOT. TO DISMISS - 12
(No. 3:21-cv-05190-BHS)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax