The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN JOE COURTER, COURTER AND
SONS LLC, DIANE M. HOOPER, THOMAS
MCGEE, and CANDRA E. EVANS,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiffs,

        v.

CYTODYN INC., NADER Z. POURHASSAN,
MICHAEL MULHOLLAND, and SCOTT A.
KELLY,

                    Defendants.

Case No. 3:21-cv-05190-BHS

**LEAD PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT,
CERTIFICATION OF SETTLEMENT
CLASS FOR SETTLEMENT
PURPOSES, AND AUTHORIZATION
TO DISSEMINATE NOTICE OF
SETTLEMENT TO SETTLEMENT
CLASS**

**NOTE ON MOTION CALENDAR:
APRIL 15, 2026**

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS)

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ..............................................................................................1

II.  FACTUAL BACKGROUND...............................................................................................3

  A.  Overview of the Action.............................................................................................3

  B.  Settlement Negotiations and Proposed Settlement Terms ........................................5

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL...........................................7

  A.  Standards Governing Approval of Class Action Settlements....................................7

  B.  The Court "Will Likely Be Able" to Approve the Settlement Under Rule 23(e)(2) ....................................................................................................................8

    1.  Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) .......................8

      a.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class ......................................................9

      b.  The Settlement Was Reached Through Arm's Length Negotiations Between Experienced Counsel with the Assistance of an Experienced Mediator........................................10

    2.  The Settlement's Terms Are Adequate.........................................................10

      a.  The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation............10

      b.  The Settlement Treats All Settlement Class Members Fairly........13

      c.  The Anticipated Request for Attorneys' Fees is Reasonable.........13

      d.  Lead Plaintiff Has Identified All Agreements in Connection with the Settlement .......................................................................14

IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.....................................14

V.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE.............................................................................................................16

  A.  Rule 23(a)'s Requirements Are Met.......................................................................16

    1.  Numerosity Is Satisfied...............................................................................16

    2.  Commonality Is Satisfied.............................................................................17

    3.  Typicality Is Satisfied .................................................................................17

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - i

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

    4.    Adequacy Is Satisfied ...................................................................18

B.    Rule 23(b)(3)'s Requirements Are Met ......................................................19

    1.    Common Legal and Factual Questions Predominate.................................19

    2.    A Class Action Is Superior to Other Methods of Adjudication .................20

VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS ..........................................................................20

VII.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ..........................22

VIII.    CONCLUSION.........................................................................................22

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - ii

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ...................................................................................7

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ...........................................................11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................19

*Amey v. Cinemark USA Inc.*,
2018 WL 3956326 (N.D. Cal. Aug. 17, 2018) ...........................................................9

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................................................................................................19

*Baker v. SeaWorld Enter., Inc.*,
2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ..........................................................18

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024) ...........................................................19

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ...................................................................................6

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ..........................................................12

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .....................................................................................8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................................14

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ..............................................................................19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................21

*Elliott v. Rolling Frito-Lay Sales, LP*,
2014 WL 2761316 (C.D. Cal. June 12, 2014) ...........................................................7

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - iii

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)....................................................................................................19

*Ferreira v. Funko, Inc.*,
    2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ........................................................10

*Ferris v. Wynn Resorts Ltd.*,
    2025 WL 2308698 (D. Nev. Jan. 31, 2025)........................................................ 13-14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .....................................................................................18

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)....................................................16, 17

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*,
    *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). ...........................................14, 21

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................................................10

*Lamartina v. VMware, Inc.*,
    2024 WL 3286059 (N.D. Cal. July 2, 2024)..............................................................19

*In re LinkedIn User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)...............................................................................20

*Luz Bautista-Perez v. Juul Labs, Inc.*,
    2022 WL 307942 (N.D. Cal. Feb. 2, 2022) .................................................................8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .....................................................................................12

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017) ..............................................................................21

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019).............................................................13

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)...........................................................10

*Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 12-13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .................................................................................17, 18

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .........................................................................................13

*Purple Mountain Tr. v. Wells Fargo Co.*,
   2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ...........................................................14

*Reichert v. Keefe Commissary Network, L.L.C.*,
   2023 WL 8775720 (W.D. Wash. Dec. 19, 2023) ...........................................................10

*Rinky Dink Inc v. Elec. Merch. Sys.*,
   2015 WL 11234156 (W.D. Wash. Dec. 11, 2015) ...............................................7, 11, 18, 20

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .........................................................................................20

*Rosas v. Sarbanand Farms, LLC*,
   2019 U.S. Dist. LEXIS 223059 (W.D. Wash. Dec. 31, 2019)........................................8

*Schultz v. Avenue5 Residential, LLC*,
   2025 WL 2431650 (E.D. Wash. Aug. 22, 2025) ...........................................................17

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020)..........................................................................16, 17, 18

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................................................. 11-12

*In re VeriSign, Inc. Sec. Litig.*,
   2005 WL 7877645 (N.D. Cal. Jan. 13, 2005), *amended by*, 2005 WL 226153
   (N.D. Cal. Jan. 31, 2005) ..........................................................................................17, 20

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
   2016 WL 8201593 (N.D. Cal. July 29, 2016)................................................................14

*Zuern v. IDS Prop. Cas. Ins. Co.*,
   2021 WL 735751 (W.D. Wash. Feb. 25, 2021)................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...........................................................................................................13

15 U.S.C. § 78u-4(a)(7) ...........................................................................................................22

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - v

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Lead Plaintiff Brian Joe Courter and Courter and Sons LLC ("Lead Plaintiff") respectfully submits this Motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of Settlement ("Preliminary Approval Order").[1]

## I. PRELIMINARY STATEMENT

After four years of litigation, Lead Plaintiff has agreed to resolve the Settlement Class's claims against defendants CytoDyn, Nader Z. Pourhassan, Michael Mulholland, and Scott A. Kelly (collectively, "Defendants") for consideration of 49 million shares of CytoDyn common stock and $500,000 in cash pursuant to the terms of the Stipulation. At this time, Lead Plaintiff seeks the Court's preliminary approval of the proposed Settlement under Rule 23 so that notice can be provided to the Settlement Class and the Settlement Hearing can be scheduled.

Lead Plaintiff and Lead Counsel believe the Settlement is a favorable result for the Settlement Class. They were aware of the strengths and weaknesses of the Settlement Class's claims and made an informed evaluation of the risks of continued litigation—through the completion of discovery, class certification, summary judgment, and trial, as well as with respect to Defendants' ability to fund a future resolution—and the merits of resolving the Action now. At the time of settlement, Lead Counsel had, among other things: (i) conducted an extensive investigation into the Settlement Class's claims; (ii) consulted with experts; (iii) prepared two detailed complaints; (iv) successfully moved to partially modify the PSLRA's automatic discovery stay and obtained and reviewed over 650,000 pages of documents Defendants provided to the DOJ or SEC; and (v) briefed and defeated Defendants' motions to dismiss. Moreover, the Settlement is the product of protracted, arm's-length negotiations facilitated by an experienced mediator,

---

[1] Unless otherwise stated, all internal citations and quotation marks are omitted. All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated March 18, 2026 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the Declaration of Joshua E. D'Ancona ("D'Ancona Decl.") filed herewith.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Gregory P. Lindstrom of Phillips ADR Enterprises, P.C. (the well-respected alternative dispute resolution firm led by retired U.S. District Judge Layn R. Phillips).

While Lead Plaintiff and Lead Counsel believe the Settlement Class's claims are meritorious, they also recognize that a decision adverse to Lead Plaintiff at class certification or summary judgment could have eliminated any recovery for the Settlement Class. *See* D'Ancona Decl., ¶ 4. Additionally, Lead Plaintiff and Lead Counsel considered CytoDyn's public disclosures concerning its financial condition and the effect this could potentially have on its ability to fund a future judgment or settlement greater than the Settlement Amount. *See* Section III(B)(2)(a) below. *Id.*, ¶5. During the mediation process, Lead Plaintiff and Lead Counsel also determined there to be no other reasonably available sources of substantial funding beyond CytoDyn itself (including from the individual Defendants). *Id.*, ¶ 6.

At the Settlement Hearing, the Court will have before it more extensive, post-notice submissions, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval Order will begin this process by: (i) preliminarily certifying the Settlement Class for purposes of settlement; (ii) preliminarily approving the Settlement on the terms set forth in the Stipulation; (iii) approving the form and content of the notices and Claim Form; (iv) approving the plan for disseminating notice of the Settlement; (v) approving appointment of Strategic Claims Services ("SCS") as the Claims Administrator; and (vi) setting a date and time for the Settlement Hearing.[2]

As detailed below, Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval and requests the Court's entry of the accompanying Preliminary Approval Order.

---

[2] As set forth in Appendix A, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 2

## II.   FACTUAL BACKGROUND

### A.   Overview of the Action

This Action was filed on March 17, 2021. Dkt. 1. Following briefing, the Court appointed Lead Plaintiff pursuant to the PSLRA and approved its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class, and Byrnes Keller Cromwell, LLP ("Byrnes Keller") as Liaison Counsel. Dkt. 65.[3]

Following a significant investigation,[4] Lead Plaintiff, along with additional plaintiffs Diane M. Hooper, Candra E. Evans and Thomas McGee (collectively, "Plaintiffs"), filed the First Amended Complaint asserting claims under: (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 (a, b, and c) promulgated thereunder, against all Defendants on behalf of all persons and entities who purchased or otherwise acquired the common stock of CytoDyn between March 27, 2020 and May 17, 2021 and were damaged thereby; (ii) Section 20(a) of the Exchange Act against the individual Defendants; and (iii) Section 20A of the Exchange Act, on behalf of Lead Plaintiff and all other members of the putative class who purchased shares of CytoDyn common stock contemporaneously with sales of stock by the individual Defendants while they were in possession of material nonpublic information about CytoDyn. Dkt. 83 at ¶¶ 1, 183-87.

In particular, with respect to the Section 10(b) claims, Lead Plaintiff alleged that Defendants' disclosures during the relevant time period misrepresented or omitted material facts regarding CytoDyn's drug leronlimab and its prospects for FDA approval for various applications

---

[3]Kessler Topaz and Byrnes Keller are collectively referred to herein as "Plaintiffs' Counsel."

[4]Kessler Topaz's investigation included review and analysis of, *inter alia*: (i) CytoDyn's public filings with the SEC; (ii) research reports by securities and financial analysts and investors; (iii) articles published by the news media; (iv) transcripts of CytoDyn's calls with analysts and investors; (v) CytoDyn investor presentations, press releases, and reports; (vi) online media reports including interviews with Defendant Pourhassan, among others; (vii) analyses of CytoDyn's securities movement and price and volume data; (viii) pleadings, filings, evidentiary matter, and court orders in other litigation involving Defendants; and (ix) other publicly available material and data.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 3

with respect to treating HIV and, alternatively, COVID-19, and caused CytoDyn's share price to be artificially inflated. *Id.* at ¶¶ 1, 6, 250-67. Lead Plaintiff further alleged that CytoDyn investors sustained losses when the truth was revealed and CytoDyn's share price plunged. *Id.* at ¶¶ 268-93. Defendants filed a motion to dismiss the First Amended Complaint on February 25, 2022. Dkt. 95.

Meanwhile, on January 26, 2022, Lead Plaintiff moved to partially modify the PSLRA's automatic discovery stay. Dkt. 90. Upon full briefing, the Court granted the motion on March 3, 2022, and directed Defendants to provide a copy of discovery they provided or would be providing to the DOJ or SEC, pursuant to certain subpoenas. Dkt. 97. In response, Defendants produced over 650,000 pages of documents between April and June, 2022. Lead Counsel reviewed and analyzed these documents and continued its investigation in furtherance of preparing a second amended complaint.

In accordance with a Court-ordered schedule, on June 24, 2022 Lead Plaintiff filed the Second Amended Complaint, relying substantially on documents Defendants had produced in accordance with the Court's partial lift-stay order. Dkt. 103. The Second Amended Complaint asserted claims on behalf of a proposed class consisting of all persons and entities who purchased or otherwise acquired the common stock of CytoDyn between March 27, 2020 and March 30, 2022 and were damaged thereby, under (i) Section 10(b) of the Exchange Act and Rule 10b-5 (a, b, and c); (ii) Section 20(a) of the Exchange Act; and (iii) Section 20A of the Exchange Act (on behalf of investors who purchased shares of CytoDyn common stock contemporaneously with sales of stock by the individual Defendants during the relevant time period).

As discussed below, the Parties began discussing a possible settlement in the summer of 2022 and, on August 19, 2022, the Court granted the Parties' stipulated motion to vacate the existing deadlines for Defendants to respond to the Second Amended Complaint, in order to allow the Parties to explore mediation with a private mediator. Dkt. 107. After this initial mediation did not result in a resolution of the Action, the Court set deadlines for Defendants to file their motion to dismiss. Dkts. 111, 115.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants timely moved to dismiss the Second Amended Complaint, Dkts. 116, 123, and Lead Plaintiff opposed Defendants' motions. Dkt. 133. Defendants filed replies in May 2023. Dkts. 137, 138. On June 25, 2025, the Court issued a comprehensive 41-page opinion and order denying in full Defendants' motions to dismiss. Dkt. 141. Promptly thereafter, the Parties engaged with the private mediator once again to explore the possibility of settlement.

**B.     Settlement Negotiations and Proposed Settlement Terms**

The Parties first settlement discussions before Mr. Lindstrom in the summer of 2022 included full mediation briefing and a remote mediation session September 29, 2022. After those efforts proved unsuccessful, and significant further litigation and the Court's order denying Defendants' motions to dismiss, the Parties re-engaged regarding a potential settlement in the summer of 2025. Mr. Lindstrom again served as mediator. During negotiations in July through November 2025, the Parties sought and received extensions for Defendants to answer the Second Amended Complaint. Dkts. 143, 145, 147, 149, 151. In this period, Mr. Lindstrom conducted several rounds of discussion and negotiation, which culminated in an agreement in principle to settle the Action in November 2025. The Parties filed a stipulated motion to stay all proceedings in order to finalize and file their settlement with the Court, which the Court granted on November 24, 2025. Dkt. 153.

Following negotiations over specific terms, the Parties executed a confidential term sheet, followed by the Stipulation on March 18, 2026.[5]

The Stipulation provides that CytoDyn, on behalf of all Defendants, shall provide: (i) 49 million shares of CytoDyn common stock ("Settlement Shares")[6] and (ii) $500,000 in cash ("Cash

---

[5] Lead Plaintiff and Defendants also entered into a confidential Supplemental Agreement, which gives CytoDyn the right to terminate the Settlement if valid requests for exclusion received from Settlement Class Members exceed an agreed-upon amount. *See* Section III(B)(2)(d) herein.

[6] While the value of the Settlement Shares fluctuates, on November 24, 2025 (i.e., the date the Parties notified the Court of their agreement in principle to resolve the Action) CytoDyn common stock closed at a price of $0.33 per share on the OTCQB. *See* https://finance.yahoo.com/quote/CYDY/history/. At the November 24, 2025 closing price, the Settlement Shares had a value of $16,170,000.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 5

Settlement Amount"). CytoDyn will pay/deposit the Settlement Amount into an interest-bearing escrow account maintained on behalf of the Settlement Class. The Settlement is not claims-made. Accordingly, if the Settlement is approved, the Settlement Class will receive the full benefit of the Settlement Amount, plus interest, after deducting any Court-approved attorneys' fees, expenses and costs ("Net Settlement Fund"). ¶ 15. Once final, the Net Settlement Fund will be distributed among eligible Settlement Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. Stip. ¶¶ 23-30. Given the anticipated costs of the administration, Lead Counsel expects that the cash portion of the Settlement Fund will be used to pay for notice to the Settlement Class and the administration of the Settlement (i.e., claims processing and distribution), while distributions to eligible Settlement Class Members will be made in Settlement Shares. Lead Counsel and the Claims Administrator will distribute the Settlement Shares in an efficient and cost-effective manner to Authorized Claimants with the assistance of CytoDyn's transfer agent.

Settlement Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount and the right to participate in the distribution of the Net Settlement Fund. Stip. ¶ 1(nn). The scope of this release is reasonable, as it is limited to claims related to Class Period transactions in CytoDyn common stock and the allegations at issue in the Action.

Importantly, none of the Ninth Circuit's three indicia of potential collusion are present here. *See Briseño v. Henderson*, 998 F.3d 1014, 1019-1020 (9th Cir. 2021).[7] First, once the Settlement is final, Defendants will have no right to the return of the Settlement Fund for any reason. Second, as discussed below, Lead Counsel will request attorneys' fees in an amount not to exceed the Ninth Circuit's 25% percentage fee benchmark. Third, there is no clear sailing agreement.

---

[7] Signs of collusion include: "(1) 'when counsel receive[s] a disproportionate distribution of the settlement;' (2) 'when the parties negotiate a clear sailing arrangement,' under which defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant rather than the class." *Id*. at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

In the Ninth Circuit, established judicial policy favors voluntary settlement of litigation. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). This "strong judicial policy" is applicable "where complex class action litigation is concerned." *Id.*; *see also Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("[J]udicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.").

District court approval of a proposed settlement entails a multi-step process. First, the court performs a preliminary review of the terms of the settlement to determine whether notice should be sent to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, notice of the proposed settlement is disseminated to the class. Finally, after notice to the class and a hearing, the court determines whether to grant final approval. *See* Fed. R. Civ. P. 23(e)(2); *see also, e.g., Rinky Dink Inc v. Elec. Merch. Sys.*, 2015 WL 11234156, at *1 (W.D. Wash. Dec. 11, 2015).

At the first step, a court should grant preliminary approval and authorize notice of a settlement upon a finding that it "*will likely be able to*" (i) finally approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2); and (ii) certify the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

(iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.[8]

Rule 23(e)(2) effectively codifies prior case law, providing that courts should grant preliminary approval after considering whether the "settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *See, e.g.*, *Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022); *see also Rosas v. Sarbanand Farms, LLC*, 2019 U.S. Dist. LEXIS 223059, at *3 (W.D. Wash. Dec. 31, 2019). Because each Rule 23(e)(2) factor is satisfied here, final approval of the Settlement is "likely" and preliminary approval merited. Fed. R. Civ. P. 23(e)(2).

**B.**     **The Court "Will Likely Be Able" to Approve the Settlement Under Rule 23(e)(2)**

     **1.**     **Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's notes to 2018 amendment. In evaluating these factors, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id*. In light of these considerations, the Settlement is a procedurally fair resolution under Rule 23(e)(2).

---

[8] Final approval will also involve an analysis of the Ninth Circuit's approval factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

### a.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

When considering whether class representatives and class counsel "have adequately represented the class" under Fed. R. Civ. P. 23(e)(2)(A), courts assess two components: (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. *Amey v. Cinemark USA Inc.*, 2018 WL 3956326, at *6 (N.D. Cal. Aug. 17, 2018).

Here, Lead Plaintiff has dedicated substantial time to prosecuting the Action on behalf of the Settlement Class. Lead Plaintiff has, *inter alia*: garnered appointment as lead plaintiff in the Action; communicated regularly with Lead Counsel regarding the progress of the case through telephone calls and email; reviewed significant filings and Court orders; consulted with Lead Counsel regarding the possibility of pursuing mediation and the status of the Parties' settlement negotiations; and evaluated and approved the terms of the Settlement. Like all Settlement Class Members, Lead Plaintiff has an interest in obtaining the largest possible recovery from Defendants.

Likewise, Lead Counsel and Liaison Counsel litigated this Action for over four years against Defendants and their counsel at Wilmer Cutler Pickering Hale and Dorr LLP and Linklaters LLP. Throughout the litigation and during settlement negotiations, Lead Counsel analyzed Defendants' arguments and weighed the costs and risks of continued litigation against the benefits of settlement. *See Zuern v. IDS Prop. Cas. Ins. Co.*, 2021 WL 735751, at *5 (W.D. Wash. Feb. 25, 2021). Lead Counsel—a firm with extensive experience litigating securities class actions—was well informed of the strengths and weaknesses of the claims and defenses in the Action and conducted the settlement negotiations seeking to achieve the best result for the Settlement Class.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 9

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

      **b.**     **The Settlement Was Reached Through Arm's Length Negotiations Between Experienced Counsel with the Assistance of an Experienced Mediator**

Courts next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A presumption of fairness attaches where a settlement was reached after arm's-length negotiations between experienced counsel assisted by an experienced mediator. *See Reichert v. Keefe Commissary Network, L.L.C.*, 2023 WL 8775720, at *5 (W.D. Wash. Dec. 19, 2023). *See also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Parties began discussing a possible resolution of the Action following Lead Plaintiff's filing of the Second Amended Complaint in the summer of 2022. Nearly three years later, upon significant further developments in the case, the Parties resumed negotiations before Mr. Lindstrom. These discussions ultimately culminated in a resolution of the Action in November 2025.[9] These facts support a finding that the Settlement is non-collusive.

      **2.**     **The Settlement's Terms Are Adequate**

      **a.**     **The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation**

An important factor courts consider in determining whether to approve a class action settlement is the plaintiff's risks or likelihood of success on the merits, assessed against the relief provided in the settlement. *See* Rule 23(e)(2)(C). The Settlement provides for a certain, near-term recovery of 49 million shares of CytoDyn common stock and $500,000 in cash. The Settlement

---

[9] *See Hicks v. Morgan Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.")

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 10

Amount (after deduction of fees and costs) will be distributed to the Settlement Class pursuant to a Court-approved plan of allocation.

In contrast, if the Action had continued, Lead Plaintiff faced substantial risks that could have eliminated any recovery. Most fundamentally, Defendants' ability to fund a future judgment or settlement was unclear. As noted in the Company's SEC Form 10-Q for the quarterly period ended August 31, 2025 (issued during the Parties' settlement negotiations), CytoDyn's total liabilities were $112,988,000, against total assets of $13,483,000; CytoDyn had operated at a loss of $5 million, with a net income loss of $5.5 million; CytoDyn had just $9 million in cash and cash equivalents; and critically, its financial statements were prepared on a "going concern basis," meaning that it acknowledged "substantial doubt about the Company's ability to continue as a going concern," based on its losses in multiple consecutive periods and its accumulated deficit of approximately $893.3 million. In addition, Lead Plaintiff investigated and determined that there were no other reasonably available sources of substantial funding beyond CytoDyn itself—for example, because the relevant directors' and officers' insurance policy had been essentially depleted in the related criminal trial in the United States District Court for the District of Maryland, *United States v. Pourhassan.*, No. 8:22-cr-00440. *See generally* D'Ancona Decl., ¶ 6.

In light of the foregoing, Lead Plaintiff determined that obtaining a recovery promptly would serve to protect the Settlement Class's interest in obtaining some present recovery rather than risking a future recovery due to financial deterioration, e.g., a Company bankruptcy. *See Rinky Dink*, 2015 WL 11234156, at *5 (finding likelihood that defendants would not be able to pay larger settlement to weigh in favor of preliminary approval); *See also, e.g.*, *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *8 (E.D. Pa. Nov. 21, 2008) ("[c]ontinuing to trial in the hopes of [obtaining] a higher penalty would merely deplete the insurance policy proceeds . . . leaving the class, if successful, with a lesser judgment, not a greater one. This factor weighs heavily in favor of settlement"); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *4 (S.D.N.Y. May 14, 2004) (limitations on the individual defendants' ability to pay and the

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

likely depletion of D&O insurance before trial were the "overriding consideration driving the settlement negotiations" and supported approval of settlement).

Beyond the funding risk given CytoDyn's continuing financial difficulties, Lead Plaintiff would confront other risks if the Action continued, including at the class certification stage, where Defendants were expected to raise significant challenges (as their counsel had represented in the course of discovery meet-and-confers). While Lead Plaintiff was confident in its ability to obtain certification, Defendants' challenges would certainly present risk of loss, or that the class would be trimmed. Moreover, if Lead Plaintiff was successful, it would have likely faced a Rule 23(f) interlocutory appeal to the Ninth Circuit delaying recovery further.

Lead Plaintiff would also face risks at summary judgment and trial.  For example, even if liability were established for certain or all Defendants, Lead Plaintiff could still face significant challenges to establishing loss causation and damages, given the myriad pieces of information entering the market regarding CytoDyn during the relevant time period, and the relatively volatile market for its stock. These issues would be contested and the outcome unpredictable. *See In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored settlement approval). Any pretrial and trial rulings on expert damages issues would likely be challenged on appeal. This would all take place under the continuing overhang that CytoDyn could cease to function as a going concern and have little or no resources to fund a future judgment or settlement in the Action.

In light of the foregoing, the Settlement provides a favorable result for the Settlement Class. Lead Plaintiff's damages expert estimated that the Settlement Class's maximum theoretically possible damages would be approximately $870 million—however, this assumes Lead Plaintiff's complete success in all phases. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

each give up something they might have won had they proceeded with litigation." *Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair."). Here, given the circumstances of this case and corporate defendant, the Settlement is reasonable despite that it represents a small percentage of maximum putative damages.

### b.      The Settlement Treats All Settlement Class Members Fairly

The Court must also ultimately assess whether the Settlement equitably distributes relief to the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). Here, too, the Court should find the Settlement will likely earn approval. The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class.[10] All Settlement Class Members will be eligible to receive a distribution in accordance with a plan of allocation approved by the Court. *See infra* Section IV.

### c.      The Anticipated Request for Attorneys' Fees is Reasonable

The notices provide that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund. Lead Counsel will submit detailed information in support of its fee motion, thirty-five (35) days before the Settlement Hearing.[11] A 25% fee request is the Ninth Circuit's benchmark fee award, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989), and fee percentages of 25% (and greater) are commonly awarded by courts in this Circuit. *See, e.g., Ferris v. Wynn Resorts Ltd.*, 2025 WL 2308698, at *1 (D. Nev. Jan. 31,

---

[10] Lead Counsel's request for Litigation Expenses may include a request for Lead Plaintiff's reasonable costs incurred in representing the Settlement Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) (allowing "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

[11] In its motion, Lead Counsel will, *inter alia*, present its lodestar (time expended multiplied by hourly rates) as well as case law addressing fee awards in this Circuit.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

2025) (one-third fee); *Purple Mountain Tr. v. Wells Fargo Co.*, 2023 WL 11872699, at *4 (N.D. Cal. Sept. 26, 2023) (25% fee); Order & Final Judgment, *Shotwell v. Zillow Grp., Inc.*, No. 2:17-cv-01387-JCC (W.D. Wash. Aug. 8, 2023), Dkt. 186, at ¶ 18 (33.3% fee).[12] Lead Counsel will also seek payment of Litigation Expenses of no more than $300,000, which includes charges for experts, document hosting, mediation, and online research. This amount may also include a request of Lead Plaintiff's reasonable costs in an amount not to exceed $10,000. Settlement Class Members will have an opportunity to weigh in on the fee and expense request before the Settlement Hearing, after counsel has made submissions in support.

### d.   Lead Plaintiff Has Identified All Agreements in Connection with the Settlement

In addition to the term sheet and Stipulation, the Parties entered into a confidential Supplemental Agreement that gives CytoDyn the option to terminate the Settlement in the event that requests for exclusion exceed certain agreed-upon conditions. Stip. ¶ 38. Such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). While the Supplemental Agreement is identified in the Stipulation and Notice, and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.

### IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

The proposed Plan of Allocation ("Plan") (see Appendix A to Notice) is governed by the same standards of review applicable to the Settlement itself—the Plan must be fair and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). The Plan, which was

---

[12] Any attorneys' fees awarded by the Court will be paid to Lead Counsel upon award, which is appropriate and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Plaintiff's Counsel will refund or repay the subject amount to the Settlement Fund. *See* Stip. ¶ 18; *see In re Vocera Commc'ns, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this Order").

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 14

developed with the assistance of Lead Plaintiff's damages expert, provides a fair, reasonable, and equitable basis to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claims.[13] Lead Plaintiff will ask the Court to approve the Plan in connection with final approval.

The Plan will calculate "Recognized Loss Amounts" for the transactions provided in each Claim. The Plan is based on the alleged corrective disclosures sustained by the Court and provides two calculation methods—one for Section 10(b) losses and one for Section 20A losses. To have a Section 10(b) loss, a Claimant must have purchased/acquired shares of CytoDyn common stock during the Class Period and held them through an alleged corrective disclosure that partially removed artificial inflation from the stock. This calculation will depend on several factors, including the date(s) the shares were purchased and whether the shares were sold, taking into account the PSLRA's statutory limitation on recoverable damages. Section 20A losses, on the other hand, are based on the amounts Lead Plaintiff alleges Defendants improperly gained from stock sales made by the individual Defendants while in possession of material nonpublic information about CytoDyn. In order to have a Section 20A loss, a Claimant must have purchased CytoDyn common stock during one or more of the following periods: (i) April 28, 2020 through May 6, 2020, inclusive; (ii) July 29, 2020 through August 4, 2020, inclusive; and (iii) December 15, 2020 through December 24, 2020, inclusive. Per the Plan, "[f]or shares of CytoDyn common stock eligible for a recovery under both Section 10(b) and Section 20A, the Recognized Loss Amount for such shares will be *the greater of*: (i) the Recognized Loss Amount under Section

---

[13] The Settlement will be effectuated with the assistance of an experienced claims administrator. SCS has successfully administered numerous complex securities class action settlements throughout the country, including in this Circuit. *See* https://www.strategicclaims.net/. If approved as Claims Administrator, SCS will employ a standard and well-tested protocol for processing claims in securities class actions. Settlement Class Members will submit Claims, either by mail or online and, based on the information submitted, SCS will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip. ¶ 23. Claimants will be notified of (and given the chance to remedy) any defects in their Claims.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 15

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

10(b); or (ii) the Recognized Loss Amount under Section 20A." *See* Notice, App. A. Distributions to Authorized Claimants will occur following Settlement approval. Stip. ¶ 29.

## V.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

When determining whether a pre-certification class settlement should be preliminarily approved, courts also consider whether they will "likely be able to" certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B). The Settlement Class, which has been stipulated-to by the Parties for purposes of settlement only, consists of: all persons and entities that purchased or otherwise acquired the common stock of CytoDyn between March 27, 2020 and March 30, 2022, and were damaged thereby.[14]

Because all of Rule 23(a)'s and 23(b)(3)'s requirements are satisfied, the Court will "likely be able to" certify the Settlement Class at final approval.

### A.   Rule 23(a)'s Requirements Are Met

#### 1.   Numerosity Is Satisfied

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] proposed class of at least forty members presumptively satisfies the numerosity requirement." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016). Here, as of July 15, 2021 (a point during the Class Period), CytoDyn had approximately 632,586,877 shares of common stock issued and outstanding, owned by thousands of persons, and was actively traded on the OTCQB. *See* Dkt. 104, ¶ 631. This easily establishes numerosity. *See SEB Inv. Mgmt. AB*

---

[14] Excluded from the Settlement Class are Defendants, members of Defendants' immediate families (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)), any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest, or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 16

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

*v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020) (numerosity satisfied with "over six-hundred thousand outstanding shares of Symantec common stock during the class period").

## 2.      Commonality Is Satisfied

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class." Lead Plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Schultz v. Avenue5 Residential, LLC*, 2025 WL 2431650, at *3 (E.D. Wash. Aug. 22, 2025) ("Rule 23(a) requires only a single significant question of law or fact be common."). "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and which [Lead Plaintiff] here, satisf[ies] very easily." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005), *amended by*, 2005 WL 226153 (N.D. Cal. Jan. 31, 2005).

Here, Settlement Class Members have suffered a common injury—losses on their investments in CytoDyn stock—and their claims depend upon numerous common issues capable of class-wide resolution. As Courts in this Circuit have "recognize[d,] . . . public disclosures alleged to contain material misrepresentations and omissions, like those at issue here, present common questions of law and fact." *Hatamian*, 2016 WL 1042502, at *4; *see also, e.g.*, *SEB*, 335 F.R.D. at 283 ("plaintiff's allegations that investors were defrauded by the same misrepresentations . . . over the same period of time, and suffered similar losses as a result are sufficient"). Accordingly, commonality is satisfied.

## 3.      Typicality Is Satisfied

Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the class's claims. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons*, 754 F.3d at 685. "The purpose of the typicality requirement is to assure that the interest of the named representative

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685.

Here, Lead Plaintiff's claims are "typical" of other Settlement Class Members' claims because they all arise out of the same alleged course of conduct. Further, like other Settlement Class Members, Lead Plaintiff alleges that it purchased CytoDyn common stock during the Class Period at artificially inflated prices due to Defendants' material misstatements and omissions, and suffered injury when the truth emerged. Thus, Lead Plaintiff and the Settlement Class assert the same legal claims and will rely on the same facts and legal theories to establish liability.

### 4.    Adequacy Is Satisfied

Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the interests of the class." The adequacy prerequisite concerns two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *SEB*, 335 F.R.D. at 284-85 (citing *Hanlon*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

First, based upon its purchases of CytoDyn common stock during the Class Period and the losses suffered as a result of Defendants' alleged misconduct, Lead Plaintiff's interests are directly aligned with—rather than "antagonistic" to—the interests of other Settlement Class Members, who were injured by the same alleged conduct. Second, there is no evidence of conflicts between Lead Plaintiff and the Settlement Class. *See Rinky Dink*, 2015 WL 11234156, at *3.

Lead Plaintiff has also retained counsel who satisfy the adequacy requirement. *See Baker v. SeaWorld Enter., Inc.*, 2017 WL 5885542, at *8 (S.D. Cal. Nov. 29, 2017) (finding Lead Counsel qualified to represent the proposed class). Lead Counsel has committed considerable time and resources to prosecuting this Action and has vigorously represented the Settlement Class's interests. Thus, the adequacy requirement is satisfied.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 18

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

**B.      Rule 23(b)(3)'s Requirements Are Met**

Lead Plaintiff seeks to certify the Settlement Class pursuant to Rule 23(b)(3), under which certification is appropriate where: (1) questions of law or fact common to class members predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**1.      Common Legal and Factual Questions Predominate**

Rule 23(b)(3) asks whether "questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *14 (C.D. Cal. July 19, 2024). As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

This securities fraud action is no different. The common questions identified in Section V(A)(2) above clearly predominate over individual questions. *See Lamartina v. VMware, Inc.*, 2024 WL 3286059, at *5 (N.D. Cal. July 2, 2024) (finding common questions predominate where same operative facts apply). Virtually all of the elements under Section 10(b) involve common questions of law and fact that predominate over individualized issues. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (loss causation); *see also In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 640-41 (C.D. Cal. 2009) (all elements). Indeed, "when a common nucleus of misrepresentations, material omissions and market manipulations exists, the common questions predominate over any differences between individual class members with respect to damages, causation or reliance." *Cooper*, 254 F.R.D. at 639-40 (citation modified). This Action satisfies the predominance inquiry.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also asks whether class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." In cases like this one, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis," a class action is the superior method of adjudication. *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *see also VeriSign*, 2005 WL 7877645, at *9 ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."); *Rinky Dink*, 2015 WL 11234156, at *4 (court must determine "whether the objectives of the particular class action procedure will be achieved in the particular case"). Moreover, Lead Plaintiff is not aware of any other pending actions seeking similar relief for Exchange Act violations.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues that would prevent the Court from certifying the Settlement Class for settlement purposes, appointing Lead Plaintiff as class representative, and appointing Lead Counsel as class counsel pursuant to Rule 23(g).

## VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Courts evaluating proposed notices have held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 20

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

If the Settlement is preliminarily approved, the Claims Administrator will mail and/or email the Postcard Notice (Ex. A-1 to the Stip.) to those set forth in the records to be provided by CytoDyn, or who otherwise may be identified through further reasonable effort.[15] The Postcard Notice provides important information regarding the Settlement, along with the rights of Settlement Class Members in connection therewith, and directs recipients to the Settlement Website (i.e., www.CytoDynSecuritiesSettlement.com) and the long-form Notice for more information. In addition, the Claims Administrator will post downloadable copies of the Notice and Claim Form (Exs. A-2 and A-4 to the Stip.), as well as other important documents, on the Settlement Website and will cause the Summary Notice (Ex. A-3 to the Stip.) to be published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See* Stip., Ex. A ¶ 7(d). The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Hefler*, 2018 WL 6619983, at *5.

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the notices collectively will apprise recipients of: (i) the nature of the Action; (ii) the Settlement Class definition; (iii) the claims and issues involved in the Action; (iv) that a Settlement Class Member may enter an appearance through an attorney if desired; (v) that the Court will exclude any Settlement Class Member who requests exclusion (and the procedures and deadlines for doing so); and (vi) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B). The Notice also satisfies the PSLRA's additional notice requirements by stating: (i) the Settlement amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intends to apply for attorneys' fees

---

[15] SCS will utilize its proprietary list of the largest and most common banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice. SCS will send notice to all Nominees on its list. Nominees who purchased or otherwise acquired shares of CytoDyn common stock during the Class Period on behalf of other beneficial owners will be required to either mail the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to SCS, which will then promptly send the Postcard Notice by first-class mail (or email, if provided) to such identified beneficial owners.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. § 78u-4(a)(7).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notices satisfy the requirements of Rule 23(h)(1), as they collectively notify recipients that Lead Counsel will apply to the Court for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and Litigation Expenses not to exceed $300,000 (which amount may include reimbursement to Lead Plaintiff in an amount not to exceed $10,000), to be paid from the Settlement Fund.

In sum, the proposed notice program satisfies all applicable requirements. Accordingly, in granting preliminary approval of the Settlement, the Court should also approve the proposed forms and method of providing notice to the Settlement Class.

## VII.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval, the Court must also set dates for certain future events (i.e., the Settlement Hearing, mailing of notice, and deadlines for submitting Claims, requesting exclusion and objecting to the Settlement). Lead Plaintiff respectfully proposes the schedule set forth in Appendix A, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order.

## VIII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the accompanying Order.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 22

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

DATED this 18th day of March, 2026.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
Bradley S. Keller, WSBA #10665
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206), 622-2522
Email: bkeller@byrneskeller.com

*Liaison Counsel for the Class*

KESSLER TOPAZ
   MELTZER & CHECK, LLP
Jennifer L. Joost *(Pro Hac Vice)*
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

Joshua E. D'Ancona *(Pro Hac Vice)*
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jdancona@ktmc.com

*Attorneys for Lead Plaintiff Brian Joe Courter
and Courter and Sons LLC, Named
Plaintiffs Diane M. Hooper, Thomas McGee
and Candara E. Evans and Lead Counsel for
the Putative Class*

I certify that this memorandum contains 7,709 words, in compliance with the Local Civil Rules.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## APPENDIX A

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Postcard Notice to potential Settlement Class Members and the Notice and Claim Form to nominees ("Notice Date") | No later than 20 calendar days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶ 7.b) |
| Publication of the Summary Notice | No later than 10 calendar days after the Notice Date (Preliminary Approval Order, ¶ 7.d) |
| Deadline for filing papers in support of the Settlement, the Plan of Allocation, and Lead Counsel's motion for fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 28) |
| Deadline for requesting exclusion from the Settlement Class or submitting objections | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶ 14, 18) |
| Deadline for submission of reply papers in support of the Settlement, the Plan of Allocation, and Lead Counsel's motion for fees and expenses | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 28) |
| Claim submission deadline | 75 calendar days after the Notice Date (Preliminary Approval Order, ¶ 11) |
| Date for the Settlement Hearing | At least 110 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶ 5) |

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 24

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 18th day of March, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Bradley S. Keller
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT (No. 3:21-cv-05190-BHS) - 25